UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

                      :

UNITED STATES OF AMERICA

                      :

       - v -

                      :           S1 22 Cr. 692 (LGS)

LAMOR WHITEHEAD,

                      :

            Defendant.

                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO DEFENDANT LAMOR WHITEHEAD'S PRETRIAL MOTIONS**


DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007


Hagan Scotten
Celia Cohen
Andrew Rohrbach
Assistant United States Attorneys
   *Of Counsel*

# Table of Contents

**PRELIMINARY STATEMENT** ................................................................................................. 1

**ARGUMENT** ............................................................................................................................ 2

**I.    Whitehead's Motion to Suppress his False Statements to Law Enforcement Should Be Denied** ....................................................................................................................................... 2

    A.   Relevant Facts ................................................................................................................. 3

    B.   Applicable Law ............................................................................................................... 4

    C.   Discussion ....................................................................................................................... 7

**II.   The Warrant Affidavits Demonstrated Probable Cause** .................................................. 9

    A.   Relevant Facts ................................................................................................................. 9

    B.   Applicable Law ............................................................................................................. 12

    C.   Argument ....................................................................................................................... 14

**III.  There Is No Basis For a *Franks* Hearing** ...................................................................... 19

**CONCLUSION** ...................................................................................................................... 23

## PRELIMINARY STATEMENT

As explained in the Superseding Indictment (the "Indictment"), this case involves Lamor Whitehead's multi-year effort to enrich himself through threats and falsehoods, and to conceal evidence of his fraud schemes with further false statements.   Specifically, in 2018 and 2019, Whitehead used fabricated bank statements in an attempt to obtain various loans, including a business loan and a mortgage.   Indictment ¶ 2.   For these fraudulent statements, Whitehead is charged in Count Five with wire fraud.   In 2020 and 2021, Whitehead convinced an individual ("Victim-1") and her son to lend him $90,000, which he falsely explained that he would use to assist Victim-1 in obtaining a home.   Instead, Whitehead used the money for his own purposes, including to purchase luxury goods.   *Id.* ¶ 3.   For these fraudulent statements, Whitehead is charged in Count One with wire fraud.   In 2022, Whitehead used threats to attempt to extort money from a businessman ("Victim-2"), and also attempted to convince Victim-2 to give him $500,000 and a stake in certain real estate transactions by falsely claiming that Whitehead would obtain favorable actions from New York City government.   *Id.* ¶¶ 4-5.   For these fraudulent statements and threats, Whitehead is charged in Counts Two and Three with attempted wire fraud and attempted extortion.   And also in 2022, when law enforcement executed a search warrant for cellphones on Whitehead's person, Whitehead falsely denied possession of more than one cellphone.   *Id.* ¶ 6.   For these fraudulent statements, Whitehead is charged in Count Four with making false statements to law enforcement.

Whitehead now moves to suppress the statements he made to law enforcement and dismiss Count Four.   He also moves to suppress evidence gathered from executing many of the search warrants obtained in the course of this investigation.   And he requests a *Franks* hearing regarding the Victim-2, who is described in the warrants as "CS-1."

These challenges should be rejected.   Whitehead was not in custody at the time he made material false statements to law enforcement, so there is no basis for suppression.   His challenge to the search warrants fails at each turn: he lacks standing to challenge the warrants, his challenges are otherwise largely conclusory and identify no error in the magistrate judge's finding of probable cause, and in any event, the Government relied on the warrants in good faith.   Finally, there is no need for a *Franks* hearing for multiple reasons, including that a *Franks* hearing is not a basis to challenge a non-affiant's credibility and that the search warrant affiant did not ask a magistrate judge to rely on CS-1's uncorroborated statements.   The very facts Whitehead identifies as requiring a *Franks* hearing show the opposite: the affiant acted with the kind of good faith and care that *Franks* endorses.

## **ARGUMENT**

I.   **Whitehead's Motion to Suppress his False Statements to Law Enforcement Should Be Denied**

Whitehead moves to suppress the false statements underlying Count Four of the Indictment as having been "taken in violation of the defendant's rights."   (Mot. 1).   The defense argument appears to be that, despite never being placed under arrest, Whitehead was in custody as soon as his interactions with law enforcement commenced and that, as a result, after Whitehead told law enforcement that he did not want to speak to them without an attorney present, law enforcement should have ceased speaking with him.   (Mot. 3-5).   Whitehead argues, in the alternative, that even if he was not in custody, and even though law enforcement was not required to Mirandize him, "the rights mentioned in *Miranda* still apply."   (Mot. 5).   These arguments are contrary to black letter law and should be rejected, and the motion denied without a hearing.

### A.  Relevant Facts

On June 7, 2022, the Honorable Michael A. Hammer, United States Magistrate Judge, District of New Jersey, issued a warrant authorizing law enforcement to seize all Apple iPhones on Whitehead's person, including in any garments worn by him or any bags or containers carried by him, and to search those devices (the "Whitehead Personal Warrant").

Attached as Exhibit A is a declaration from Special Agent Thomas Ford of the Federal Bureau of Investigation, who participated in the execution of the Whitehead Personal Warrant the following day.

On June 8, 2022, four members of law enforcement were in two vehicles in the vicinity of Whitehead's home in Paramus, New Jersey when Whitehead came out of his home and approached them.  (Ex. A ¶ 2).  Law enforcement served Whitehead with the Whitehead Personal Warrant, conducted a pat down of Whitehead for officer safety, and seized a single Apple iPhone from the Whitehead's pants pocket (the "Seized Phone").  (*Id.*).  Whitehead read the warrant and conveyed to law enforcement that he did not want to talk to them without an attorney present. Whitehead was then given the opportunity to obtain phone numbers from the Seized Phone.  (*Id.*). A member of law enforcement held the phone as Whitehead scrolled through it to write numbers down.  (*Id.*).  At the conclusion of this process, law enforcement informed Whitehead that a separate search warrant had been obtained for Whitehead's church location in Brooklyn, New York, and asked Whitehead to assist with opening that premises so that forced entry would not have to be made.  (*Id.*).  Whitehead agreed.  (*Id.*).

For approximately the next 20 minutes, Whitehead told law enforcement that he was attempting to make contact with someone who could open the Brooklyn premises.  (Ex. A ¶ 3). During this time period, Whitehead —whose movements were never restricted—came in and out

of his home freely, coming outside to obtain phone numbers from the Seized Phone that law enforcement was holding while standing outside in the driveway, and returning inside, ostensibly to make phone calls.   (*Id.*).   When law enforcement asked whose phone Whitehead was using to make phone calls, Whitehead responded that he was using his 14-year-old daughter's phone. When law enforcement asked if Whitehead had another phone on which he could be reached so that the agents did not have to continue to stand in his driveway, Whitehead responded that he did not.   (*Id.*).   When law enforcement asked a second time, in sum and substance, "You don't have a second cell phone that belongs to you that we could call you on?", Whitehead again denied owning another phone.   (*Id.*).   Law enforcement then asked for the phone number of the landlord for the Brooklyn premises, which Whitehead gave them.   (*Id.*).   Law enforcement then left. (*Id.*).

At no time was Whitehead placed under arrest or told that he was under arrest.   At no time was Whitehead handcuffed.   (Ex. A ¶ 4).   At no time did law enforcement draw their weapons. (*Id.*).   Other than the brief initial pat down of Whitehead, at no time were Whitehead's movements restricted.   (*Id.*).   At no time did law enforcement enter Whitehead's home.   (*Id.*).

Whitehead was arrested on December 19, 2022, and first appeared in court on the charges in the Indictment on that date.   (Ex. A ¶ 5).

### B.  Applicable Law

#### i.  Fifth Amendment

The Fifth Amendment requires that, prior to custodial questioning, law enforcement must inform a suspect of the rights to remain silent and to have an attorney present.   *See Miranda v. Arizona*, 384 U.S. 436, 444, 479 (1966).   To be clear, "*Miranda*'s warning requirements apply only to 'custodial interrogation.'" *United States v. Newton*, 369 F.3d 659, 669 (2d Cir. 2004);

*accord Miranda*, 384 U.S. at 444 ("[T]he prosecution may not use statements, whether exculpatory or inculpatory, *stemming from custodial interrogation* of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." (emphasis added)). Because the Fifth Amendment right to counsel does not attach prior to custodial interrogation, a defendant cannot "invoke" that right before he is in custody. *Bobby v. Dixon*, 565 U.S. 23, 27-28 (2011) (court of appeals was "plainly wrong" in concluding that a defendant's invocation in a noncustodial setting prevented law enforcement from questioning him); *Montejo v. Louisiana*, 556 U.S. 778, 795 (2009) ("If the defendant is not in custody then those decisions [*Miranda* and *Edwards v. Arizona*, 451 U.S. 477 (1981)] do not apply; nor do they govern other, noninterrogative types of interactions between the defendant and the State . . . ."); *id.* at 797 ("We have in fact never held that a person can invoke his Miranda rights anticipatorily, in a context other than 'custodial interrogation.'" (quoting *McNeil vs. Wisconsin*, 501 U.S. 171, 182, n. 3 (1991))).

"The 'ultimate inquiry' for determining *Miranda* custody . . . is . . . 'whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *Newton*, 369 F.3d at 670 (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983). In determining whether there was a "restraint on freedom of movement of the degree associated with a formal arrest," courts look first to "whether a reasonable person would have thought he was free to leave the police encounter at issue. If the answer is yes, the *Miranda* inquiry is at an end." *Id.* at 672. "On the other hand, if a reasonable person would not have thought himself free to leave, . . . a court must ask whether, in addition to not feeling free to leave, a reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest." *Id.* "Only if the answer to this second question is yes was the person in custody for

5

practical purposes and entitled to the full panoply of protections prescribed by *Miranda*." *Id.* (internal quotations and citations omitted).   The court's analysis of both of these questions is an objective one.   *Id.*

In determining whether "a reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest," *id.*, "[r]elevant considerations include: (1) the interrogation's duration; (2) its location (e.g., at the suspect's home, in public, in a police station, or at the border); (3) whether the suspect volunteered for the interview; (4) whether the officers used restraints; (5) whether weapons were present and especially whether they were drawn; and (6) whether officers told the suspect he was free to leave or under suspicion." *United States v. Faux*, 828 F.3d 130, 135 (2d Cir. 2016).

### ii.  Sixth Amendment

The Sixth Amendment right to counsel "attaches only at or after the initiation of adversary judicial proceedings against the defendant." *United States v. Medunjanin*, 752 F.3d 576, 585 (2d Cir. 2014) (quoting *United States v. Gouveia*, 467 U.S. 180, 187 (1984)); *accord McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (Sixth Amendment right to counsel "does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.").   "The Supreme Court has never held that the right to counsel attaches at the time of arrest."   *Medunjanin*, 752 F.3d at 585 (internal citations and modifications omitted). "[B]efore proceedings are initiated a suspect in a criminal investigation has no constitutional right to the assistance of counsel."   *Id.* (quoting *Davis v. United States*, 512 U.S. 452, 457 (1994)).

### iii.  Suppression Hearing

In the Second Circuit, "[a] defendant is entitled to an evidentiary hearing on a motion to suppress only if the defendant establishes a contested issue of material fact."  *United States v. Washington*, 2012 WL 5438909, at *8 (S.D.N.Y. Nov. 7, 2012) (quoting *United States v. Noble*, 2008 WL 140966, at *1 (S.D.N.Y. Jan. 11, 2008)); *see also United States v. Banks*, 2021 WL 2290841, at *1 (S.D.N.Y. June 4, 2021).   "A defendant seeking a hearing on a suppression motion bears the burden of showing the existence of disputed issues of material fact."  *Washington*, 2012 WL 5438909, at *8.   "To create a factual dispute, a defendant must submit sworn factual allegations from a person with personal knowledge of the underlying facts."  *Id.*; *see also United States v. Cook*, 348 F. Supp. 2d 22, 28 (S.D.N.Y. 2004); *United States v. Viscioso*, 711 F. Supp. 740, 745 (S.D.N.Y. 1989).   "Statements submitted by an attorney in motion papers before a district court cannot by themselves create a factual issue."  *Washington*, 2012 WL 5438909, at *8 (citing cases).

### C.  Discussion

Whitehead was never in custody on June 8, 2022, and therefore there is no Fifth Amendment basis to suppress his false statements to law enforcement.   *Dixon*, 565 U.S. at 27-18; *Montejo*, 556 U.S. at 795; *Newton*, 369 F.3d at 669.   There is no dispute that Whitehead was not, in fact, arrested that day.   The motion nonetheless claims that Whitehead was in custody because "[n]o reasonable person in [Whitehead's] position would have believed they were free to leave." (Mot. 3).   The only circumstances cited in the motion to support this claim—that the agents "began searching [Whitehead's] home" and that Whitehead "was told he could not leave," *id*.— are fabricated.   Whitehead's home was not searched on June 8; in fact, law enforcement never entered his home on that date.   Instead, law enforcement remained in Whitehead's driveway.

Moreover, other than an initial pat down for officer safety preceding seizure of the Seized Phone, Whitehead's movements were never restricted. Indeed, during much of the time that law enforcement was outside his home, Whitehead was inside his own home, undisturbed, coming outside to interact with law enforcement only to obtain phone numbers from the Seized Phone before freely returning to his house. Whitehead thus plainly felt free to leave the presence of law enforcement, as he did so multiple times during the 20-minute encounter. Such freedom of movement is hardly akin to formal arrest. Other notable circumstances undermining any claim of "custody" include that there were only four law enforcement officers present, Whitehead was never in handcuffs, and agents never drew their weapons. *See, e.g.*, *United States v. Familetti*, 878 F.3d 53, 60-61 (2d Cir. 2017) (defendant not in custody despite the fact that pre-questioning he had been physically restrained and nine agents were "swarming" his apartment executing a search warrant while he was questioned in his bedroom because he was not restrained when questioned or otherwise advised that he was not free to leave, no weapons were drawn, and the interview was conversational); *United States v. Faux*, 828 F.3d 130, 138-139 (2d Cir. 2016) (defendant not in custody despite the fact that 10 to 15 agents "swarmed" her home executing a search warrant while she was questioned at her dining room table for two hours because she was not handcuffed, she was never told she was not free to leave, the tone of the questioning was conversational, and no weapons were displayed).

The Court further need not hold a hearing before rejecting Whitehead's Fifth Amendment claim because Whitehead has failed to submit an affidavit from a person with personal knowledge of the underlying facts. *Washington*, 2012 WL 5438909, at *8.

To the extent Whitehead is also attempting to make a Sixth Amendment claim, *see* Mot. 5 (arguing that even if the defendant was not in custody, "the rights mentioned in *Miranda* still

apply"), such a claim is meritless in light of the fact that adversary judicial proceedings had not yet been initiated against Whitehead in June 2022.   *Medunjanin*, 752 F.3d at 585.

## II.   The Warrant Affidavits Demonstrated Probable Cause

### A.   Relevant Facts

Whitehead challenges eight warrants as overbroad and lacking in probable cause.   Those applications are attached as Exhibits B through I, and are as follows:[1]

1.   A warrant signed by Magistrate Judge Jennifer E. Willis on June 17, 2022, for prospective and historical cell site location information and pen register information for a cellphone using call number 917-330-9839 (the "9839 Cellphone," and for the warrant, the "9839 Cellsite Warrant").   (Exhibit B).   This warrant was signed after Whitehead falsely told law enforcement that he had turned over his only cellphone.   (*Id.* at USAO_00014485).   The affidavit explains that law enforcement believed that Whitehead had an additional cellphone, and the basis for that belief.   (*Id.* at USAO_ 14484-86).   Location information for the 9839 Cellphone was therefore evidence of Whitehead's false statement to law enforcement.   (*Id.* at USAO_00014486).

2.   A warrant affidavit signed Magistrate Judge Valerie Figueredo on September 21, 2022, to search the contents of the 9839 Cellphone and another cellphone with the call number 917-345-3314 (the "3314 Cellphone," and for the warrant, the "Phones Search Warrant"). (Exhibit C).   At the time this warrant was signed, the Government had already obtained a warrant to seize and search these two phones for evidence of the conduct that ultimately led to the charges in Counts Two through Four in the Indictment.   (*Id.* at USAO_00014639).   This warrant application sought and obtained permission for the Government to search the same devices for

---

[1]  The Government respectfully submits Exhibits B through I under seal to protect the identity and privacy of Victim-1, Victim-2, witnesses, and third parties discussed in the warrant affidavits.

evidence of the fraud that ultimately led to the charges in Count One of the Indictment.   (*Id.* at USAO_00014638-41).[2]

3.      A warrant signed by Magistrate Judge Michael A. Hammer of the District of New Jersey on June 7, 2022, to search iPhones seized on the person of Lamor Whitehead (the "Whitehead Personal Warrant").   (Exhibit D).   This warrant authorized the Government to search Whitehead's person for any iPhones, and to search those iPhones for evidence of the conduct that ultimately led to the charges in Counts Two and Three of the Indictment.   (*Id.* at USAO_00014782-93).

4.      A warrant signed by Magistrate Judge Robert W. Lehrburger on August 8, 2022, for historical cell phone location information for the 9839 Cellphone, the 3314 Cellphone, and two other phones used by Victim-2 (the "Victim-2 Cellsite Warrant").   (Exhibit E).   The warrant sought information between April 1 and June 29, 2022—that is, the general period during which Whitehead was communicating with Victim-2 regarding the extortion and attempted fraud in Counts Two and Three and the false statements in Count Four, up to the seizure of both of his cellphones.   (*Id.* at USAO_00014528-37).

5.      A warrant signed by Magistrate Judge Ona T. Wang on November 23, 2022 for historical cell phone location information for the 3314 Cellphone and a phone believed to be used by the son of Victim-1 (the "Victim-1 Cellsite Warrant"). (Exhibit F).   The warrant sought information between May 1, 2020 and June 15, 2021—the period during which Whitehead was

---

[2] Although Whitehead refers to this as a warrant for location information and pen register data (Def. Mot. at 10), the warrant he identifies by Bates number, which is attached as Exhibit C, is instead a warrant to search the contents of two cellphones.

dealing with Victim-1 and her son regarding the fraud ultimately charged in Count One.   (*Id.* at USAO_00014551-53).

6.     A warrant signed by Magistrate Judge Cathy L. Waldor of the District of New Jersey on June 27, 2022 to search a home in Paramus, New Jersey (the "Paramus Residence"), which the Government believes to be Whitehead's home (the "June Premises Warrant").   (Exhibit G).   This warrant was signed after Whitehead falsely told law enforcement that he had turned over his only cellphone, despite retaining the 9839 Phone, and it used toll records cell site location information obtained using the warrant attached as 9839 Cellsite Warrant to show probable cause that the 9839 Phone would be at Whitehead's home during overnight and early-morning hours (*Id.* at USAO_00014607-11).

7.     A warrant signed by Magistrate Judge Michael A. Hammer of the District of New Jersey on December 16, 2022, to search the Paramus Residence (the "December Premises Warrant").   (Exhibit H).   This warrant was obtained after Whitehead had been indicted by a grand jury sitting in this District, and sought evidence of the crimes charged in the original indictment and conduct the Government was continuing to investigate.   (*Id.* at USAO_00014567-73).

8.     Finally, a warrant signed by Magistrate Judge Robert M. Levy of the Eastern District of New York on June 7, 2022, to search a location in Brooklyn, which the Government believes to be Whitehead's church (the "Brooklyn Location," and for the warrant, the "Brooklyn Premises Warrant").   (Exhibit I).   The warrant application explains that Whitehead, who is a convicted felon, made a recorded statement that "I got guns in the church."   (*Id.* at USAO_00014626).   The warrant sought evidence that Whitehead was unlawfully in possession

of a firearm, in violation of 18 U.S.C. § 922(g)(1).   (*Id.* at USAO_00014625).   The Government did not recover a firearm during the search.

## B.  Applicable Law

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."   U.S. Const. amend. IV.   "Probable cause 'is not a high bar.'" *United States v. Jones*, 43 F.4th 94, 109 (2d Cir. 2022) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018).   The "issuing magistrate must make a practical, common sense decision whether, given all the circumstances set forth in an affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place."   *Id.* (alterations and internal quotation marks omitted).   This standard "requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act."   *Id.* (internal quotation marks omitted).

Review of a warrant "must accord considerable deference to the probable cause determination of the issuing magistrate."   *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (quotation marks omitted); *see Jones*, 43 F.4th at 109 (similar).   "Such deference derives not only from the law's recognition that probable cause is a fluid concept that can vary with the facts of each case, but also from its strong preference for searches conducted pursuant to a warrant, and its related concern that a grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." *Clark*, 638 F.3d at 93 (alterations, citations and internal quotation marks omitted).   Accordingly, the question for the reviewing court is whether the "totality of the circumstances afforded the magistrate a substantial basis for making the requisite probable cause determination."   *Id.*

(internal quotation marks omitted); *see United States v. Boles*, 914 F.3d 95, 102 (2d Cir. 2019)

(explaining that the inquiry is limited to whether the "officer had a 'substantial basis' for his

determination").

Even where a reviewing court determines that a warrant issued without probable cause,

suppression of the resulting evidence "is not automatic."   *Boles*, 914 F.3d at 102; *see also Hudson*

v. *Michigan*, 547 U.S. 586, 591 (2006) ("Suppression of evidence . . . has always been our last

resort, not our first impulse.").   "[B]ecause the remedy exacts a heavy toll on the justice system,

the exclusionary rule will apply only to deter 'deliberate, reckless, or grossly negligent conduct'

by law enforcement."   *Boles*, 914 F.3d at 102 (quoting *Herring v. United States*, 555 U.S. 135,

144 (2009)).   When "an officer genuinely believes that he has obtained a valid warrant[,] and

executes that warrant in good faith, there is no conscious violation of the Fourth Amendment, and

thus nothing to deter."   *Id.* (alteration and internal quotation marks omitted); *see Jones*, 43 F.4th

at 110-11 ("Police conduct must be sufficiently deliberate that exclusion can meaningfully deter

it, and sufficiently culpable that such deterrence is worth the price paid by the justice system"

(alteration and internal quotation marks omitted)).

This good-faith exception applies so long as the officer's reliance on a warrant was

"objectively reasonable."   *Boles*, 914 F.3d at 103.   Accordingly, the doctrine has at least four

exceptions: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing

magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in

indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is

so facially deficient that reliance upon it is unreasonable."   *Id.* (quoting *United States v.*

*Raymonda*, 780 F.3d 105, 118 (2d Cir. 2015)).   This limits the application of the exclusionary rule

13

to "intentional" or "flagrant" conduct that was "patently unconstitutional." *Herring*, 555 U.S. at 143-44.

Not every individual may bring a motion to suppress evidence derived from a warrant. Rather, the "capacity to claim the protection of the Fourth Amendment depends upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Untied States v. Watson*, 404 F.3d 163, 166 (2d Cir. 2005) (alterations and internal quotation marks omitted). The burden to establish Fourth Amendment standing is "on the defendant," and requires the defendant to "submit an affidavit from someone with personal knowledge demonstrating sufficient facts to show that he had a legally cognizable privacy interest in the searched premises at the time of the search." *United States v. Tartaglione*, No. 16 Cr. 832 (KMK), 2023 WL 2237903, at *10 (S.D.N.Y. Feb. 27, 2023) (internal quotation marks omitted). "The Government's efforts to connect a defendant to the subject of a search do not suffice to establish standing," nor does a defendant's "unsworn assertion." *Id.*; *see, e.g.*, *United States v. Pizzaro*, No. 17 Cr. 151 (AJN), 2018 WL 1737236, at *7 (S.D.N.Y. Apr. 10, 2018) (denying a motion to suppress cell site location information because "[t]he anticipated argument by the Government at trial that some of the phone numbers belonged to the Defendants does not lend them standing.").

### C. Argument

Whitehead's challenge to the search warrant affidavits fails at each step of the analysis: he lacks standing to challenge them, he has not identified any error in the magistrate judges' probable cause analysis, and in any event, the Government conducted its searches in good faith reliance on the warrants. There is no basis for suppression, and the motion should be denied.

14

*First*, Whitehead lacks standing to challenge the search warrants.  Whitehead has not offered any affidavit or sworn statement establishing his reasonable expectation of privacy in any of the information sought by the warrants or any of the evidence recovered by the Government. Although the Government believes that some of the warrants concerned items in which Whitehead likely could establish a privacy interest—such as his home and phones—he has not done so through an affidavit.   The law prohibits him from establishing standing based on the Government's assertions—assertions which Whitehead implicitly challenges (*see, e.g.*, Def. Mot. at 6, 13, 16-17 (saying that certain items "allegedly belong[] to Lamor Whitehead").  *See, e.g.*, *United States v. Dore*, 586 F. App'x 42, 46 (2d Cir. 2014) (affirming denial of a motion to suppress historical cell-site information because the defendant "did not submit an affidavit establishing that the cellphones in question belonged to him or that he had a subjective expectation of privacy in them," nor did he assert a privacy interest "in some other manner").   For the other warrants, Whitehead likely could not establish standing if he tried, because he does not have a reasonable expectation of privacy in, for instance, the location data of someone else's cellphone. Accordingly, at least on the present record, and the Court can deny Whitehead's motion at the threshold.

*Second*, Whitehead has identified no defects in the probable cause articulated in the warrants.   He acknowledges that his "basis for suppression" for all eight warrants is "the same," and the warrants share "a number of allegations and factual bases."   (Def. Mot. at 6 n.1.).   Yet, over the course of the investigation, seven different magistrate judges across three judicial districts found that the warrants adequately demonstrated probable cause.   Whitehead generally argues that the warrant affidavits were "lacking in particularity" or "overbroad."   (Def. Mot. at 6, 10, 12,

13, 14, 17, 18).   These conclusory statements identify no manner in which any of the eight warrants, much less all eight, were insufficiently particular or excessively broad.

Whitehead raises a small number of specific objections, but each is unavailing.   His primary argument is that the warrants rely on information from CS-1, who Whitehead alleges is "not trustworthy."   (Def. Mot. at 7).   Whitehead acknowledges that the warrant affidavits did not ask any magistrate judge to rely on any of CS-1's statements to law enforcement.   (*See* Exh. B at USAO_00014484; Exh. D at USAO_00014784, Exh. E at USAO_00014528, Exh. G at USAO_00014599, Exh. I at USAO_00014625).[3]   He argues, however, that "the tie to any kind of criminality comes from CS-1 stating initially that Mr. Whitehead had allegedly stated that CS-1 should go into business with him because of his close relationship with Official 1."   (Def. Mot. at 7).   As the warrant affidavits explain, however, CS-1's statements are "provided as context for later recorded statements made by Whitehead, on which the Court is asked to rely."   (Exh. E at USAO_00014528).   That is, CS-1's statement provides background and context for the relationship between CS-1 and Whitehead, including how the Government came to possess recordings of Whitehead, but the evidence of Whitehead's criminality are his recorded statements, for instance, that Official-1 would "sit down with whoever I need him to sit down with" (*Id.* at USAO_00014529) or that "We could make so much money together.   It's unreal, bro.   My connections, even with [Official-1], but underneath connections. . . . But bro, we gotta be all in."

---

[3] Three warrants are not listed herein.   Exhibits C and F concern Victim-1 and do not directly discuss CS-1.   Exhibit H was signed after Whitehead had been indicted, largely relies on the Indictment to establish probable cause, and contains no statements by CS-1.

(*Id.* at USAO_00014534).   The warrant affidavits were explicit that they did not rely on CS-1's uncorroborated statements for their truth.[4]

Whitehead also suggests that the affidavit in the 9839 Cellsite Warrant is contradicted by other evidence.   (Def. Mot. at 8).   Specifically, he notes that an FBI report explains that Whitehead went to a body shop where CS-1 works, but the "warrant application states that the discussion occurred over phone calls recorded by CS-1, but [has] no mention of Mr. Whitehead showing up."   That is, Whitehead complains that the warrant affidavit said that Whitehead and CS-1 discussed their fraud on recorded calls, but—in truth—they also met once in person.   This argument misses the mark for at least two reasons.   The warrant affidavit at issue is explicit that it "does not include all the facts that [the affiant has] learned during the course of this investigation."   (Exh. B at USAO_00014482).   Nor is the fact that Whitehead and CS-1 met in person once in any way to the magistrate judge's probable cause analysis.   Whitehead hardly suggests otherwise, saying only that the fact "would seem to be important."   (Def. Mot. at 8).

Whitehead next specifically challenges the Victim-1 Cellsite Warrant because it relied on a civil complaint arising out of the same facts.   (Det. Mot. at 14-16).   Whitehead argues that "[t]he mere fact that a civil case was filed does not provide probable cause that a crime was committed, probable cause is a much higher bar than that required to file a civil complaint."   (Def. Mot. at 16).   This argument too fails at each step.   As the warrant affidavit makes clear, it is not based simply on the civil complaint, but based on "interviews with [Victim-1] and her son . . . and [the affiant]'s review of text messages between [Victim-1], [her son] and WHITEHEAD."   (Exh.

---

[4] Whitehead further suggests that "an impossibility to ask the Court to ignore parts of the warrant affidavit" and asking the Court to "selectively read the affidavit, rather than read and rely upon the entire document."   (Def. Mot. at 7-8).   But Whitehead provides no support for the notion that this task, which is commonly asked of judges and juries, is a mental impossibility.

F at USAO_00014551).   That Victim-1 has sued Whitehead is not the sole basis for probable cause in the warrant.   It is simply further evidence that Whitehead never lived up to his representations to Victim-1 or returned the stolen funds. And in any event, a civil complaint *can* show probable cause, especially where, as here, it is a verified complaint containing detailed allegations.   Although the beyond-a-reasonable-doubt standard for the jury's decision in a criminal trial may be higher than in a civil trial, there is no reason that detailed complaint could not meet the much lower bar of establishing probable cause.   Whitehead cites no case to suggest that a court may not rely on any facts in a civil complaint—or the fact that a complaint was filed— when making its probable cause determination.[5]

Finally, Whitehead challenges the June Premises Warrant, arguing that the warrant is "overbroad as it authorized a search of the entire house."  (Def. Mot. at 17).   That warrant, however, provided probable cause to believe that 9839 Cellphone was within the house, which was the premises to be searched, and authorized the seizure of just that phone.  (Exh. G at USAO_00014595, USAO_00014610-11).   There is nothing unusual about the issuance of a search warrant for a house, and Whitehead provides no authority for the proposition that a warrant need be any more particular than that.   *See generally, e.g.*, *United States v. Hadden*, No. 20 Cr. 468 (RMB), 2022 WL 1409600 (May 4, 2022).

*Third*, even if Whitehead identified some defect in the magistrate judge's finding of probable cause, the Court still should deny the suppression motion.   For each of these searches,

---

[5] Whitehead also claims that his interactions with Victim-1 are an "dispute over a business deal that did not pay dividends" and is a "matter for the civil courts."   That argument is not an issue for this Court.   It is also wrong.   Acting with intent to defraud, Whitehead abused his position of trust and lied to Victim-1 in order to steal her money.   That is a criminal fraud, as a grand jury found.   Whether it *additionally* gives rise to civil liability is the matter for the civil courts.

18

law enforcement brought its evidence of probable cause to a magistrate judge, and relied in good faith on the warrant signed by that judge.   Many of the warrants incorporated by reference the probable cause from a prior warrant or repeated that probable cause in substantial similarity—as Whitehead notes (*see, e.g.*, Def. Mot. at 17)—and were yet again approved by a magistrate judge.

These warrants are not so wholly lacking in support that law enforcement could not have reasonably relied on them.   Even if the magistrate judges could possibly have been confused about whether to consider CS-1's statements, as Whitehead suggests, they were not *knowingly* misled—indeed, the affiants actively attempted to avoid misleading them by expressly disclaiming CS-1's statements in footnotes.   Repeatedly, law enforcement relied on the findings of multiple magistrate judges that the nexus of facts in this case justified searches of Whitehead's phones and residence.   Accordingly, there is no law enforcement culpability to deter, and no basis for application of the exclusionary rule.

## III.   There Is No Basis For a *Franks* Hearing

### A.   Applicable Law

"A search warrant affidavit is presumed reliable. 'In certain circumstances, however, a defendant may challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search or seizure.'"   *United States v. Klump*, 536 F.3d 113, 119 (2d Cir. 2008) (quoting *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003)); *see Franks v. Delaware*, 438 U.S. 154, 171 (1978) ("There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant.").

Under *Franks*, "[t]o suppress evidence obtained pursuant to an affidavit containing erroneous   information, the defendant must show that: '(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the

alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding.'" *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000) (citing *Franks*, 438 U.S. at 164-72). The defendant must establish both components—materiality and intent—by a preponderance of the evidence. *See Klump*, 536 F.3d at 119. "The *Franks* standard is a high one." *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991).

The intent component of the *Franks* inquiry, "which looks to the mental states of mind of government officials, is said to be a 'subjective' test rather than an 'objective' one." *United States v. Rajaratnam*, 719 F.3d 139, 153 (2d Cir. 2013) (reversing suppression order "because the District Court failed to consider the actual states of mind of the wiretap applicants"). To demonstrate the existence of intentional misrepresentations or omissions, the defendant must present the reviewing court with "credible and probative evidence" that any misrepresentations and omissions were "'designed to mislead'" or were "'made in reckless disregard of whether [they] would mislead.'" *Rajaratnam*, 719 F.3d at 154 (quoting *Awadallah*, 349 F.3d at 68). "To prove reckless disregard for the truth, the defendant[] [must] prove that the affiant in fact entertained serious doubts as to the truth of his allegations." *Id.* (quoting *United States v. Whitley*, 249 F.3d 614, 621 (7th Cir. 2001)).

Even to merit a hearing on the issue, a defendant must make "'a substantial preliminary showing' that a 'deliberate falsehood' or a statement made with 'reckless disregard for the truth' was included in the warrant affidavit, *and* the statement was 'necessary to the judge's probable cause finding.'" *United States v. Falso*, 544 F.3d 110, 134 (2d Cir. 2008) (quoting *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998)); *see United States v. Carter*, 2009 WL 765004, at *2 (2d Cir. Mar. 25, 2009) (summary order) ("Carter was not entitled to a hearing because he made no substantial preliminary showing that a deliberate falsehood or statement made with reckless

disregard for the truth was included in the warrant affidavit and the statement was necessary to the judge's finding of probable cause.") (internal quotation marks omitted).

The Second Circuit has made clear that a defendant is not entitled to a hearing absent "an offer of proof" of deliberate falsehood or reckless disregard for the truth:

> To avoid fishing expeditions into affidavits that are otherwise presumed truthful, the Court in [*Franks*] held that to mandate an evidentiary hearing: '[T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.'

*Falso*, 544 F.3d at 125-26 (quoting *Franks*, 438 U.S. at 171).

## B. Discussion

Whitehead's request for a *Franks* hearing fails at every possible step, but one point is dispositive.  A *Franks* hearing serves to determine the credibility of the *affiant* on a warrant. Whitehead does not—and could not—challenge the credibility of the affiant on the warrants, FBI Special Agent Thomas Ford.  Instead, he asks for a hearing to examine the credibility of an informant, CS-1, who is discussed in the warrants.   That is a legally improper purpose to request the hearing, and Whitehead's motion should be denied solely for that reason.  *See, e.g.*, *Franks*, 438 U.S. at 171 ("The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant."); *United States v. Smith*, 9 F.3d 1007, 1014 (2d Cir. 1993) ("The rule in this circuit is that as long as the applicant for the warrant accurately represents the information provided by an informant, probable cause is not defeated because the informant erred, or even lied, in his description of events."); *United States v. Cook*, 348 F. Supp. 2d 22, 29 (S.D.N.Y. 2004) ("*Franks* is implicated only when the false

statement is made by, or the reckless disregard is that of, the affiant. There is no right to a hearing when the challenge is to information provided by an informant or other source." (internal quotation marks omitted)).

Whitehead's motion also fails at multiple other thresholds.   For example, even with respect to CS-1, Whitehead does not make "allegations of deliberate falsehood or of reckless disregard for the truth . . . accompanied by an offer of proof." *Falso*, 544 F.3d at 125-26 (internal quotation marks omitted).   Whitehead's proffered excuse for this is absurd:   He claims that he does not know the identity of CS-1.   (Mot. 20).   But as discussed above, CS-1—identified as Victim-2 in the Indictment—is well known to Whitehead, as this Court has repeatedly found. (*See* Dkt. 46 at 2; Dkt. 62 at 7).   Moreover, the assertions attributed to CS-1 in the warrants are based on conversations *with Whitehead*, and so even assuming Whitehead had somehow forgotten with whom he had spoken—and refused to review the videotapes recording those conversations— he has firsthand knowledge about the accuracy of the statements in question.   And far from being suspect, that the affiant to the warrants asked the reviewing magistrates not to rely on CS-1's statements is also dispositive of the *Franks* motion: to obtain relief under *Franks*, a defendant must show that *"*the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding."   *Canfield*, 212 F.3d at 717-18 (internal quotation marks omitted).   Where the affiant expressly told the issuing judge not to rely on CS-1's statements, Whitehead cannot hope to show that CS-1's statements were necessary to the finding of probable cause.

For all the above reasons, Whitehead does not to advance his case by citing *People v. Darden*, 34 N.Y. 2d 177 (1974).   (*See* Mot. 20-21).   Even assuming that state case had some application here, *Darden* provides a device for in camera inquiry of a confidential informant whose identity is unknown to the defendant, in order to examine the credibility of a law enforcement

officer who relied on the informant.   *See generally Vasquez v. New York*, No. 2020 WL 2859007, at *3 n.3 (S.D.N.Y. Feb. 27, 2020), *report and recommendation adopted*, 2020 WL 1271363 (S.D.N.Y. Mar. 16, 2020).   But here: (1) Agent Ford's credibility has not been called into question, (2) the informant's identity is known, (3) Agent Ford specifically did not rely on the informant, and (4) no allegations of deliberate falsehood or of reckless disregard for the truth, accompanied by an offer of proof, have been made even with respect to CS-1.   Whitehead's legally misguided and factually baseless *Franks* motion is thus entirely without merit.

## CONCLUSION

For the foregoing reasons, the motions should be denied.

Dated: New York, NY
       March 29, 2023

                              Respectfully submitted,

                              DAMIAN WILLIAMS
                              United States Attorney for the
                              Southern District of New York

                    By:      _____/s/_____
                              Hagan Scotten
                              Celia Cohen
                              Andrew Rohrbach
                              Assistant United States Attorneys
                              (212) 637-2410 / 2466 / 2345