UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA

                                                  **MEMORANDUM IN SUPPORT OF MOTION**
       -against-                                  **IND# 22-CR-692 (LGS)**

**LAMOR WHITEHEAD,**

Defendant.
------------------------------------------------------------------X
Your Honor,

**PRELIMINARY STATEMENT**

      Defendant Lamor Whitehead submits this Motion Reply pursuant to Federal Rules of Criminal Procedure Rule 12, on the schedule set by the Court. Oral argument is requested.

This motion includes requests:

1. That Charge Four of Indictment 22-CR-892 (LGS) be dismissed as the allegedly false statements were taken in violation of the Defendant's constitutional rights.

2. That any warrant be controverted and that all evidence seized thereby be suppressed.

3. That the Court hold a <u>Franks</u> hearing in camera

4. That the Court hold an inquiry regarding CS-1.

5. That all issues not specifically addressed here, but raised in prior motions, be considered sufficiently briefed.

6. The right to make additional motions if necessary.

A. **MOTION TO SUPPRESS STATEMENT**

The Government has not made a showing that the motion to suppress the statement should be denied. The argument that Mr. Whitehead was in custody even though he was not arrested is correct based upon the facts. An individual is considered "seized" for the purposes of invoking constitutional protections against unreasonable search and seizure when, "by means of physical force or a show of authority, his freedom of movement is restrained." United States v. Mendenhall, 446 U.S. 544, 553 (1980). More specifically the Supreme Court of the United States concluded that "a person has been 'seized' within the meaning of the Fourth Amendment… if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Id at 554. Mr. Whitehead was seized. No individual in his situation would have felt that they could have just walked away unimpeded.

The phrase "the rights mentioned in Miranda still apply" may be slightly inartful, but is not, as the Government contends, "contrary to black letter law[.]" For example in Dunaway v. New York, 442 U.S. 200, n. 12 (1979) the Supreme Court discussed the concurrence by Justice White in Terry v. Ohio, 392 U.S. 1 (1968), stating that in the context of a Terry stop, which is not custodial, "the person stopped is not obliged to answer" the questions put to them by police. Dunaway citing Terry at 34. While there are important differences in the specific application of rights in a custodial and non-custodial situation a person has rights such as the right to remain silent in both. United States v. Ramos, 685 F.3d 120 (2d. Cir 2012) states that the right to remain silent "permits a person to refuse to answer questions, in formal or informal proceedings[.]" An individual is free to refuse to answer questions from law enforcement at any point, though, see e.g. Salinas v. Texas, 570 U.S. 178 (2013), there may be additional requirements or limits on invocation. This statement that the rights discussed in Miranda do not apply pre-arrest is directly

2

contrary to the Second Circuit's holding in United States v. Okatan, 728 F.3d 111 (2d Cir. 2013). In Okatan the Second Circuit, citing to United States v. Nunez-Rios, 622 F.2d 1092 (2d Cir. 1980), stated that "the right to remain silent exists independently of the fact of arrest." The Court further held, citing to Fare v. Michael C., 442 U.S. 707 (1979), that "because of 'the unique role the lawyer plays in the adversary system of criminal justice in this country,' a request for a lawyer in response to law enforcement questioning suffices to put an officer on notice that the individual means to invoke the privilege." (citations omitted). Fare held that "in the context of custodial interrogation, 'an accused request for an attorney is *per se* an invocation of his Fifth Amendment rights, requiring that all interrogation cease." Okatan extends this to a request for a lawyer "even when an individual is not in custody."

The reliance on Bobby v. Dixon, 565 U.S. 23 (2011) is misplaced, the facts in these cases are not at all similar. In Dixon the defendant had a "chance encounter" with police on November 4 where he declined to answer questions without a lawyer, then, on November 9, was arrested and interrogated. This is different than a situation where an individual is questioned immediately after requesting counsel. Additionally in Salinas v. Texas the Supreme Court of the United States specifically discusses invocation of the right to remain silent in a non-custodial interrogation stating "it would have been a simple matter for [the defendant] to say that he was not answering the officer's questions on Fifth Amendment grounds." Montejo v. Louisiana, 556 U.S. 778 (2009) is likewise not applicable here. In Montejo the Supreme Court stated, directly after the section quoted in the Government's brief, that "[w]hen a defendant is not in custody, he is in control, and need only shut his door or walk away to avoid police badgering." That was not the case here. Law enforcement was executing a warrant, Mr. Whitehead would not have been free to "shut his door" or "walk away." Additionally the context of Montejo is in overruling Michigan v. Jackson, in

stating that the fact that an individual's Sixth Amendment right to counsel has attached by way of indictment does not mean that said individual cannot waive their rights to silence and counsel. That is fundamentally different from situations involving active invocation of a right. The Government's argument seems, if taken to its logical conclusion, to propose that an individual does not have a right to refuse to answer questions unless they are in custody. In addition the invocation of the right to counsel, as in Okatan, is a *per se* invocation of other rights such as the right to remain silent.

In addition this situation mirrors that of Salinas v. Texas. In Salinas an individual came to a police station willingly to speak with law enforcement in what was explicitly *not* a custodial interrogation. The Supreme Court eventually ruled that "it would have been a simple matter" for Salinas "to say that he was not answering the officer's questions on Fifth Amendment grounds." Further Salinas states that "[a] witness' constitutional right to refuse to answer questions depends on his reasons for doing so, and courts need to know those reasons to evaluate the merits of a Fifth Amendment claim." The reason for not answering questions here was known to the Government and is clear to this Court: the Defendant stated he did not want to speak with investigators without an attorney present. He specifically, clearly, and unambiguously invoked his right to counsel. While these rights are not "unqualified" outside of a custodial situation an individual can clearly invoke them as discussed *supra*.

The fact that Mr. Whitehead requested counsel is not in dispute, the report in Bates Number 15202, clearly states that Whitehead "decided he did not want to speak with investigators without an attorney present." At this point law enforcement should not have spoken to Mr. Whitehead without counsel present. It should be noted that the statement that law enforcement searched the home on that date was erroneously included, law enforcement did not search Mr. Whitehead's

4

home on that date. The error was an accident, with no bad faith intended, for which counsel does apologize. Counsel contends that the error is not relevant to the legal matters raised in the motion.

The crux of this motion is that when Mr. Whitehead stated that he did not want to speak with investigators without an attorney present any questioning should have ceased.

Regarding the arguments related to a testimonial hearing one is not required, though oral argument is still requested, if the Government clarifies that both parties agree that (a) Mr. Whitehead stated he did not want to speak without a lawyer present and (b) that law enforcement continued to question him anyways. Given that Mr. Whitehead's rights were violated, and the statement was taken illegally, the statement should be suppressed. The statement here is the only evidence related to Count Four. Therefore, if the statement is suppressed, Count Four should be dismissed.

### B. MOTION TO CONTROVERT WARRANTS AND SUPPRESS EVIDENCE SEIZED THEREBY

We move to controvert the warrants in this case. The initial motion papers make out sufficient basis to controvert that is not overcome by the Government's response.

The Government's allegation that one of the cell phone related to the false statements does not pass muster, given that the falsity of the statements given is, at best, disputable. According to the report written by Special Agent Ford related to that date agents "asked if [Whitehead] had another phone *he could be reached on* so the agents didn't have to stand in his driveway. Whitehead responded that he did not. SA Ford asked a second time stating 'You don't have a second cell phone that belongs to you *that we could call you on?*'." (emphasis added). The emphasized sections are important here. The question "do you have another phone" is fundamentally different from "do you have another phone that I can call you on." For example any

5

number of individuals may have a work phone and a personal phone, and decline to give out the personal number.

The statements that the defense have not shown reckless disregard for the truth *by the affiant* is not correct. The affiant took the strange and unique step of specifically stating that CS-1 should not be relied upon, the only rationale that defense counsel can think of for doing so is that there is some issue with CS-1's credibility so severe that it would imperil the warrant. It shows reckless disregard for the truth to submit a warrant affidavit based upon an individual that the affiant obviously does not trust. This is buttressed by USAO 9922, wherein SA Ford stated that "SA Ford told BELMONTE that in no way was the FBI or USAO instructing him to start a fraudulent LLC." The fact that such great lengths are gone to regarding the lack of Belmonte/CS-1's credibility should give any court pause. This is relevant because such information was not available to the magistrate.

The statement that we do not know who CS-1 is could most accurately read that it was not confirmed who CS-1 was, for which the impact is the same. Counsel is not able to make a representation that CS-1 is a particular individual before that has been confirmed even if there is a very strong supposition. The idea that by stating that CS-1 should not be relied upon the Government can just avoid this issue is troubling. It would allow the Government, through a simple footnote, to essentially invalidate the "reckless disregard for the truth" language from Franks. By putting in a footnote stating that a particular individual who is the source for at least some information should not be relied upon only proof of deliberate falsity.

The Government states "[w]here the affiant expressly told the issuing judge not to rely on CS-1's statements, Whitehead cannot hope to show that CS-1's statements were necessary to the

finding of probable cause." This is incredibly troubling. If an individual is not trustworthy, if they cannot or should not be relied upon to provide probable cause, why is the Government using that individual as a source of information?

The Government further claims that "Agent Ford specifically did not rely on the informant," this is not correct. Agent Ford asked the *Magistrate* not to rely on the informant, Agent Ford obviously did considering that the investigation was predicated on CS-1 coming to law enforcement.

Further the idea that even if these warrants were flawed, which they are, that they are covered by the good faith error exception is incorrect. The affiant knew that there were issues with CS-1 and specifically stated they should not be relied upon in making a finding of probable cause, this is not within the good faith error exception. The affiant knew there were issues with CS-1, if they did not they would not have stated that CS-1 should not be relied upon. The issue with the warrant is not that law enforcement thought there was probable cause for the warrant and later it turned out to be incorrect, the issue is that the problem with the warrant applications was known to law enforcement.

The affidavit submitted here provided no evidentiary basis for the court to conclude that Mr. Whitehead's phone was involved in or would contain evidence of criminal activity. The affiant alleges that criminal activity was afoot on the basis of a confidential informant, CS-1, who is not trustworthy. Footnote Three of this warrant affidavit states, in relevant part, "[t]he Government is not asking the Court to rely on CS-1's statements to law enforcement in making its probable cause

7

determination[.]"[1] Counsel cannot recall another case where law enforcement explicitly asked a court not to rely on the statements of the confidential source. While the affiant alleges that a number of the allegations supporting the affidavit are based on recorded statements made by Mr. Whitehead, the tie to any kind of criminality comes from CS-1 stating initially that Mr. Whitehead had allegedly stated that CS-1 should go into business with him because of his close relationship with Official 1. The basis for the warrant affidavit is an individual that the Government specifically asks the court not to rely upon.

It must be asked why the Government contends that CS-1 should not be relied upon. If CS-1 is trustworthy and reliable why not ask that the Court rely upon those statements in making a probable cause determination as the Government does in countless cases? Or why not leave the issue unaddressed? Why specifically and explicitly ask the court *not* to rely on those statements? It is not unreasonable for an individual to conclude, from these statements, that there is some issue with the trustworthiness or veracity of CS-1 and/or the statements they have made to law enforcement, here or in the past. In addition it is an impossibility to ask the Court to ignore parts of the warrant affidavit, the Government is essentially asking the Court to selectively read the affidavit, rather than read and rely upon the entire document. If this information should not be relied upon why was it included? Additionally CS-1's information, including uncorroborated information, is all over the applications in this case. By counsel's count CS-1 is mentioned *53 times* in the 19 page application here, yet the Government contends that CS-1 should not be relied upon. If CS-1 cannot or should not be relied upon then how can their information serve as the basis for the warrant?

---

[1] While not the subject of this motion it should be noted that any information in possession of the Government or any of their agents as to *why* CS-1's information should not be relied upon would constitute Brady material, and should be handed over immediately

8

As a result of the lacking particularity and facts to support probable cause the warrants in this case should be controverted and the evidence seized thereby suppressed. Any renewal of said warrant is similarly flawed, the information leading to any renewal was based on information gained from the prior warrant. Since any evidence recovered pursuant to the initial warrant was illegally seized any renewal is based upon illegally seized information, and should likewise be controverted as fruit of the poisonous tree. When evidence has been seized in violation of a Defendant's constitutional rights the remedy is for that evidence to be suppressed and inadmissible at trial. <u>Mapp v. Ohio</u>, 367 U.S. 643 (1961). This extends not just to the direct results of the unlawful search or seizure, but also to its fruits, "the exclusionary prohibition extends as well to the indirect as the direct products" of an unlawful search. <u>Wong Sun v. United States</u>, 371 U.S. 471, 484 (1963).

### C. MOTION FOR AN IN CAMERA INQUIRY REGARDING CS-1

The warrants that are the subject the motions made herein were based, at least in part, on information furnished by an individual identified as "CS-1." Counsel believes that the issues related to the request for an in camera inquiry regarding CS-1 have been sufficiently briefed.

### D. ISSUES RAISED IN THE INITIAL BRIEF NOT DISCUSSED HEREIN

Counsel intends to maintain any issue or point raised in the initial motion papers that is not addressed in the reply. We believe that any issues raised in the initial motion papers, but have not been addressed here, have been sufficiently briefed in those initial motion papers and ask the Court to rely on those papers.

### E. LEAVE TO MAKE ADDITIONAL MOTIONS IF NECESSARY

The defense also wishes to reserve the right to make additional motions should any future disclosure, discovery, production, evidence or item that has not been provided to the defense at this time and which may require a motion become known to the defense at a later date. This is apart from the motion schedule set on the additional charges added in Superseding Indictment from March 7, 2022.

### CONCLUSION

Based upon the foregoing, it is respectfully submitted that relief requested in the Preliminary Statement be granted, as well as any just and further relief this court deems necessary.

Dated: 4/5/2023

*Respectfully Submitted,*

*Dawn M. Florio*
Dawn M. Florio Law Firm P.L.L.C.
By DAWN M. FLORIO
Attorney for Defendant
Lamor Whitehead
488 Madison Ave, 20th
New York, NY 10022
(212) 939-9539

To: Clerk of the District Court
   Southern District of New York
   The Honorable Judge Lorna G. Schofield

   Assistant United States Attorney Andrew Rohrbach
   Assistant United States Attorney Celia V. Cohen
   Assistant United States Attorney Hagan Cordell Scotten