UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
    UNITED STATES OF AMERICA,                                :
                                                             :
                          -against-                          :          22 Crim. 692 (LGS)
                                                             :
    LAMOR WHITEHEAD,                                          :          **OPINION & ORDER**
                                        Defendant.   :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

    The Superseding Indictment (the "Indictment") charges Defendant Lamor Whitehead

with wire fraud, attempted wire fraud, attempted extortion and making false statements to federal

law enforcement officials, all in connection with a series of allegedly fraudulent schemes to

enrich himself from approximately 2018 through 2022.  Defendant seeks (1) suppression of

statements made to law enforcement and dismissal of Count Four of the Indictment, which is

based on those statements; (2) suppression of evidence gathered from nine search warrants and

(3) hearings regarding the credibility of the Government's confidential informant, and the

veracity of the warrant affidavits.  For the reasons below, the motions are denied.

## I.      BACKGROUND

    The investigation of Defendant began on or about April 22, 2022, when a businessman --

eventually called "Victim-2" in the Indictment -- contacted the U.S. Attorney's Office for the

Southern District of New York regarding a real estate partnership proposed by Defendant.

Under this partnership, Defendant promised Victim-2 benefits based on Defendant's relationship

with various state and local government officials in exchange for a stake in real estate

transactions and a $500,000 loan to Defendant.

    The Federal Bureau of Investigation ("FBI") then conducted an investigation from

around April 2022 to December 2022, when an indictment was filed.  During the investigation,

the FBI recorded communications between Defendant and Victim-2, which took place via phone, FaceTime and in-person meetings.  The Government also collected evidence pursuant to nine search warrants, all of which Defendant challenges on this motion.  Defendant's statements in the recorded conversations were in part the basis for the probable cause assertions in most of the Government's search warrant applications.  Each of the warrants was issued by a Magistrate Judge who found probable cause to believe that the anticipated fruits of the search would reveal evidence of specified crimes.  Eight different Magistrate Judges, across three judicial districts, issued the nine warrants.

Most relevant to this motion, the Indictment charges (1) a count of attempted wire fraud, alleging that Defendant attempted to convince Victim-2 to lend Defendant approximately $500,000 and give Defendant a stake in certain real estate transactions in exchange for securing favorable actions by the New York City government for Victim-2, when Defendant knew that he had no ability to obtain these actions, and (2) a count of wire fraud, alleging that Defendant obtained approximately $90,000 from Victim-1, an individual who attended his church, with the false promise that he would use the money to assist Victim-1 in obtaining a home.  The Indictment also charges Defendant with attempted extortion for using threats of force to try to obtain $5,000 from a business owned by Victim-2, with making false statements to federal officials, as discussed below, and with wire fraud for Whitehead's efforts to obtain a $250,000 business loan based on allegedly material misrepresentations regarding the finances of Anointing Management Services LLC.

## II.   MOTION TO SUPPRESS DEFENDANT'S STATEMENTS

Defendant moves to suppress statements that are the basis for Count Four of the Indictment, which charges Defendant with making allegedly false statements to the Federal

Bureau of Investigation ("FBI") in violation of 18 U.S.C. § 1001.  He argues that use of the statements violates his Fifth Amendment privilege against self-incrimination because he previously said that he did not want to speak with law enforcement without an attorney present. This motion is denied because Defendant was not in custody and was free to leave or refuse to answer the questions that elicited the statements.

### A.    Background

On June 8, 2022, four FBI agents drove to Defendant's home in Paramus, New Jersey to execute a warrant authorizing the seizure and search of all Apple iPhones on Defendant's person (the "Personal Warrant").  After seeing their vehicles, Defendant came out of his home and approached them.  The agents then served the Personal Warrant, conducted a pat-down search and seized from Defendant's pants pocket an iPhone with a call number ending in 3314 ("the "3314 Phone").  After reading the Personal Warrant, Defendant stated that he did not want to speak with law enforcement without an attorney present.  One of the agents then held the 3314 Phone as Defendant scrolled through it to write numbers down.  Afterwards, the agents informed Defendant that a separate search warrant had been issued for Defendant's church in Brooklyn, New York (the "Brooklyn Church Warrant") and requested Defendant's assistance with opening the premises to avoid forced entry.  Defendant agreed.

For roughly the next twenty minutes, Defendant came in and out of his house, coming outside to obtain phone numbers from the seized phone and returning inside, ostensibly to call someone who could open the Brooklyn church.  When the agents asked Defendant whose phone he was using to make the calls, Defendant said he was using his daughter's phone.  One of the agents then asked if Defendant had another phone he could be reached on so that they did not need to stand in his driveway.  Defendant said he did not.  An agent then asked a second time, in

essence, "You don't have a second cell phone that belongs to you that we could call you on?" Defendant again said he did not.  The agents left after obtaining from Defendant the phone number of the landlord of the Brooklyn church.  Defendant's statements that he had only the 3314 Phone and no second phone are the basis for the false statements charge in Count Four of the Indictment.

### B.    Discussion

#### 1.    Standard

The Fifth Amendment guarantees that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  Under this right against self-incrimination, "the prosecution may not use statements . . . stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."  *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  "A person must both be in custody and subject to interrogation for *Miranda* safeguards to apply." *United States v. Familetti*, 878 F.3d 53, 57 (2d Cir. 2017).[1]  An interrogation occurs when a suspect "is subjected to either express questioning or its functional equivalent and his statements are the product of words or actions on the part of the police that were reasonably likely to elicit an incriminating response."  *Id.*

"Determining whether an individual is in custody is an objective inquiry that asks (1) whether a reasonable person would have thought he was free to leave the police encounter at issue and (2) whether a reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest."  *Zuniga-Perez v. Sessions*, 897 F.3d

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes and citations are omitted.

114, 124 (2d Cir. 2018).  "Although both elements are required, the second is the ultimate inquiry because a free-to-leave inquiry reveals only whether the person questioned was seized." *United States v. Faux*, 828 F.3d 130, 135 (2d Cir. 2016).  Considerations relevant to the second inquiry include: "(1) the interrogation's duration; (2) its location (e.g., at the suspect's home, in public, in a police station, or at the border); (3) whether the suspect volunteered for the interview; (4) whether the officers used restraints; (5) whether weapons were present and especially whether they were drawn; and (6) whether officers told the suspect he was free to leave or under suspicion."  *United States v. Jabar*, 19 F.4th 66, 83 (2d Cir. 2021).

## 2.  Non-Custodial Interrogation

That Defendant was questioned does not mean that he was in custody.  Even assuming he was "interrogated," the law enforcement members did not subject Defendant to a custodial interrogation when they executed the Personal Warrant.  The agents remained in the driveway during the entire encounter and never entered Defendant's home.  *See Familetti*, 878 F.3d at 60 ("Absent an arrest, interrogation in the familiar surroundings of one's own home is generally not deemed custodial.").  They did not place Defendant under arrest, handcuff him or draw their weapons.  *See Faux*, 828 F.3d at 138 (finding no custody occurred when defendant "was not handcuffed during the interrogation and was not arrested at its conclusion" and "agents did not display their weapons").  Defendant walked in and out of his home freely.  *See id.* at 137 (finding no custody even when defendant "was not permitted to move freely about her home during the two-hour interrogation").  Only four agents executed the search warrant.  *See Familetti*, 878 F.3d at 61-62 (finding questioning non-custodial even when nine agents accompanied search warrant execution); *Faux*, 828 F.3d at 132 (finding same with ten to fifteen agents).  A reasonable person

in Defendant's shoes would have "felt free to leave under the circumstances." *See Familetti*, 878 F.3d at 60.

As Defendant was not subject to a custodial interrogation during the execution of the Personal Warrant, Defendant's cited cases do not apply. *See, e.g.*, *Minnick v. Mississippi*, 498 U.S. 146, 150 (1990) ("[W]hen an accused has invoked his right to have counsel present *during custodial interrogation* . . . (emphasis added)). For the same reason, the agents' request for assistance in opening the Brooklyn church was not an unconstitutional custodial interrogation.

Defendant's statement that he did not want to speak with law enforcement without an attorney present does not mandate suppression of the statements he made afterwards. Defendant argues the agents should not have questioned him after he made this statement, but the Supreme Court has "never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than custodial interrogation." *See Montejo v. Louisiana*, 556 U.S. 778, 797 (2009). As Defendant was not in custody at the time, he remained "in control" and only needed to "shut his door or walk away to avoid police badgering." *See id.* at 795. While a person is not obligated to answer questions by law enforcement, whether in custody or not, Defendant willingly chose to answer questions after saying that he did not want to do so without an attorney. Defendant's cited cases are inapposite as they concern the right to remain silent. *See, e.g.*, *United States v. Okatan*, 728 F.3d 111, 120 (2d Cir. 2013) ("[W]here, as here, an individual is interrogated by an officer, even prior to arrest, his invocation of the privilege against self-incrimination and his subsequent silence cannot be used by the government in its case in chief as substantive evidence of guilt."). Here, Count Four rests on Defendant's *lack* of silence -- his affirmative and allegedly false statements. A person may remain silent but does not have a constitutional right to lie. *See Brogan v. United States*, 522 U.S. 398, 404 (1998) ("[N]either the text nor the spirit of the Fifth

6

Amendment confers a privilege to lie."); *accord United States v. Kumar*, 617 F.3d 612, 624 (2d Cir. 2010).  Defendant's argument that the agent should not have questioned him given that the agent likely knew it would elicit an incriminating response also fails.  *See Brogan*, 522 U.S. at 399-400 (affirming liability for false statements when federal agents questioned defendant knowing that defendant might lie).

Defendant's argument that Whitehead did not make a false statement because he did have a second phone but not one that the FBI agents "could call [him] on" is also unavailing.  This is an issue for the jury and is not a basis to suppress the statement.  As no Fifth Amendment violation occurred, Defendant's motion to suppress his allegedly false statements and to dismiss Count Four of the Indictment is denied.

## III.   MOTIONS TO SUPPRESS SEIZED EVIDENCE

Defendant moves to suppress evidence from nine search warrants, challenging each on grounds of lack of probable cause, lack of particularity and overbreadth.  For the following reasons, these motions are denied.

### A.   Standard

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  "Because the rights assured by the Fourth Amendment are personal, courts suppress evidence only at the instance of one whose own protection was infringed by the search and seizure."  *United States v. Lewis*, 62 F.4th 733, 741 (2d Cir. 2023).  In other words, a defendant must "have standing to bring a suppression motion." *Id.*  A defendant seeking to suppress evidence based on an alleged Fourth Amendment violation must show a "reasonable expectation of privacy" in the place or object searched.  *See id.*; *United*

*States v. Santillan*, 902 F.3d 49, 62 (2d Cir. 2018).  It is Defendant's "burden to establish that the search violated his Fourth Amendment rights" as "the proponent of the motion[s] to suppress." *Lewis*, 62 F.4th at 741.  "To satisfy this burden, the defendant . . . must submit an affidavit from someone with personal knowledge demonstrating sufficient facts to show that he had a legally cognizable privacy interest in the searched premises at the time of the search." *United States v. Tartaglione*, No. 16 Crim. 832, 2023 WL 2237903, at *10 (S.D.N.Y. Feb. 27, 2023); *see also United States v. Dore*, 586 F. App'x 42, 46 (2d Cir. 2014) (summary order) (finding defendant failed to establish standing in his motion to suppress historical cell-site records because he neither submitted "an affidavit establishing that the cell phones in question belonged to him or that he had a subjective expectation of privacy in them" nor "assert[ed] a privacy interest in the cell phones in some other manner").

"Probable cause exists when the totality of circumstances indicates a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Bodnar*, 37 F.4th 833, 841 (2d Cir. 2022).  "Probable cause is not a high bar." *United States v. Jones*, 43 F.4th 94, 109 (2d Cir. 2022).  "Courts should pay great deference to a magistrate judge's determination of probable cause." *Id.*

"To satisfy the Fourth Amendment's particularity requirement, a warrant must meet three criteria: (1) it must identify the specific offense for which the police have established probable cause; (2) it must describe the place to be searched; and (3) it must specify the items to be seized by their relation to designated crimes." *United States v. Purcell*, 967 F.3d 159, 178 (2d Cir. 2020).  "Resort to an affidavit to remedy a warrant's lack of particularity is only available when it is incorporated by reference in the warrant itself and attached to it." *Id.* at 179.

"A warrant that comports with the particularity requirements may, however, be defective due to overbreadth.  Breadth and particularity are related but distinct concepts.  An otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based."  *Id.*

Lastly, even where a defective warrant was issued, "the good-faith exception to the exclusionary rule applies when the agents executing a search warrant act with an objectively reasonable good-faith belief that their conduct is lawful."  *Jones*, 43 F.4th 94 at 111.  "The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance on an invalidated warrant," but there is a "presumption of reasonableness."  *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011); *accord United States v. Ray*, 541 F. Supp. 3d 355, 378 (S.D.N.Y. 2021).  "The animating principle of the exclusionary rule is deterrence of police misconduct."  *Clark*, 638 F.3d at 99; *accord Ray*, 541 F. Supp. at 377.  The good-faith exception does not apply in four situations: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable."  *Purcell*, 967 F.3d at 179-80.

**B.  Standing**

Defendant has established standing to challenge each of the search warrants except for the Brooklyn Church Warrant.  Defendant has shown that he has a "reasonable expectation of privacy" in a cell phone with an assigned number ending in 9839 (the "9839 Phone"), the 3314 Phone and his New Jersey home as he has claimed ownership of them in a supporting affidavit. *See Lewis*, 62 F.4th at 741; *Dore*, 586 F. App'x at 46.

Defendant does not have standing to challenge the Brooklyn Church Warrant.  He has not claimed ownership of the church, nor any other "legally cognizable privacy interest in the searched premises at the time of the search."  *Tartaglione*, 2023 WL 2237903, at *10.  He does not assert "his legitimate expectation of privacy rather than that of a third party" with respect to the church.  *See Santillan*, 902 F.3d at 62.  Absent a showing of ownership or other privacy interest in the church, Whitehead has no basis to challenge the Brooklyn Church Warrant on Fourth Amendment grounds.  His motion to suppress the fruits of the search from the Brooklyn Church Warrant is denied for lack of standing, and in the alternative, for the reasons discussed below.

C.     **Warrants**

1.   **Warrants Relating to Victim-2**

a.  **Personal Warrant**

On June 7, 2022, the Personal Warrant was issued, authorizing the search of "any Apple iPhones carried by Lamor Whitehead or in clothing, bags, or containers worn or carried by him at the time of the search."  The affidavit supporting the Personal Warrant establishes probable cause.  The affidavit details the weekslong investigation at that point of Defendant, including multiple recorded phone conversations with Victim-2 in which Defendant discussed leveraging his relations with New York state and local officials for monetary gain in real estate transactions. The affidavit states that during one FaceTime exchange, Defendant spoke with Victim-2 using the 3314 Phone but showed Victim-2 a second iPhone with documented contacts between Defendant and a New York City government official ("Official-1").  Contrary to Defendant's assertion, there was a "fair probability" that a search of iPhones on Defendant's person would reveal evidence of crimes.  *See Bodnar*, 37 F.4th at 841.  Defendant challenges the

trustworthiness of the confidential informant, but the warrant affidavit explicitly asks the court to consider Victim-2's statements to law enforcement only "as context for later recorded statements made by Whitehead," and not for making the probable cause determination itself. The credibility of the confidential informant is irrelevant since probable cause was sufficiently established by Defendant's own recorded incriminating statements.

The warrant is sufficiently particularized. It (1) identifies the "specific offense[s]" for which probable causes is established -- wire fraud, extortion under color of official right, aiding and abetting and conspiracy, (2) describes the property to be searched as "any Apple iPhones carried by Lamor Whitehead" and (3) specifies the types of evidence targeted by the ESI review of the iPhones based on those alleged crimes, including "[c]ommunications with or about New York government officials," "[e]vidence concerning real estate investments or transactions" and "[e]vidence concerning the finances of Lamor Whitehead." *See Purcell*, 967 F.3d at 178.

Contrary to Defendant's arguments, this warrant is not overbroad. Defendant contends this warrant is overbroad because agents were less certain it authorized the seizure of evidence related to schemes involving Victim-1, who was not a part of the probable cause recitation, which addressed Victim-2. This argument fails because the Personal Warrant enumerates the types of evidence to be seized from Whitehead's iPhones, including "[e]vidence concerning real estate . . . transactions," and these items are not "wholly unrelated to the crimes for which probable cause was established," which expressly included wire fraud. *Cf. United States v. Romain*, 678 F. App'x 23, 25-26 (2d Cir. 2017) (summary order) (upholding warrant where the supporting materials but not the warrant itself referenced the criminal offenses being investigated). Defendant cites no case law that requires a warrant to limit the relevant crimes to those involving a particular victim. Here, the agents properly seized "[e]vidence concerning real

estate investments or transactions" relevant to wire fraud, which involved both Victim-1 and Victim-2. (Defendant repeats the same argument and fails for similar reasons concerning the June Home Warrant.)

### b. Brooklyn Church Warrant

On June 7, 2022, the Brooklyn Church Warrant was issued, authorizing the search of a Brooklyn church believed to be run by Defendant. The Brooklyn Church Warrant is supported by probable cause. The warrant affidavit describes Defendant's recorded statements to Victim-2 that he keeps guns in the church, and it identifies the church location based on the church's online page, in-person surveillance and telephone confirmation. *See Bodnar*, 37 F.4th at 841 ("[T]he totality of circumstances indicates a fair probability that contraband or evidence of a crime will be found in a particular place.").

The warrant satisfies the three criteria of the Fourth Amendment's particularity requirement. It (1) identifies the "specific offense" for which probable cause is established, unlawful possession of a firearm, (2) describes the property to be searched as the location for Whitehead's alleged church and (3) specifies the types of evidence targeted by the search based on the alleged crime, including "[e]vidence concerning occupancy or ownership" of the Brooklyn church and "[f]irearms, ammunition, and firearms accessories." *See Purcell*, 967 F.3d at 178. The warrant is not overbroad, as none of the descriptions are "broader than can be justified by the probable cause upon which the warrant is based." *See id.* at 179.

### c. 9839 Phone Location Warrant

On June 17, 2022, a warrant was issued, authorizing the release of "prospective and historical location information" for the 9839 Phone (the "9839 Phone Location Warrant"). The Government sought historical location information from June 7, 2022, to the time of the

warrant's issuance, as well as prospective information for the next 45 days.  The warrant also

authorizes the release of toll records and pen register information.  The affidavit supporting the

warrant establishes probable cause that this information would reveal evidence of false statement

and obstruction of justice crimes.  It recounts Whitehead's denial of a second cell phone during

the execution of the Personal Warrant and notes that law enforcement believed the 9839 Phone

to be Defendant's second phone based on (1) at least one text message from Defendant's 3314

Phone that identified the 9839 Phone as a second phone number for the user of the 3314 Phone,

(2) a saved contact for "My Phone" on the 3314 Phone that listed the 9839 Phone and (3) a

Facebook page of Defendant's alleged church that listed the 9839 Phone as the church's phone

number.  *See Bodnar*, 37 F.4th at 841.

Defendant challenges the 9839 Phone Location Warrant on the basis that the supporting

affidavit omits the fact that a conversation between Defendant and Victim-2 may have taken

place in person rather than over the phone.  But Defendant has not shown how this omission,

even if true, would affect the probable cause analysis.  *See United States v. Canfield*, 212 F.3d

713, 718 (2d Cir. 2000) ("The ultimate inquiry is whether, after putting aside erroneous

information and material omissions, there remains a residue of independent and lawful

information sufficient to support probable cause."); *accord United States v. DiTomasso*, 932 F.3d

58, 66 (2d Cir. 2019).

The warrant is sufficiently particularized and not overbroad.  It (1) identifies the "specific

offense[s]" for which probable causes is established -- false statements and obstruction of justice,

(2) describes the property to be searched as the 9839 Phone and (3) specifies the types of

evidence targeted by the warrant -- the phone's location, toll records and pen register

information.  *See Purcell*, 967 F.3d at 178.  None of the descriptions are "broader than can be

justified by the probable cause upon which the warrant is based."  *See id.* at 179.  The warrant

seeks information about the 9839 Phone for the period from June 7, 2022, to forty-five days after

the warrant's issuance date.  June 7, 2022, is only one day before the FBI agents executed the

Personal Warrant and questioned Defendant about his ownership of a second phone.

### d.  June Home Warrant

On June 27, 2022, a warrant was issued, authorizing the search of Defendant's residence

(the "June Home Warrant").  The warrant authorizes the seizure of the 9839 Phone, Defendant's

second iPhone.  The June Home Warrant is supported by probable cause, as the supporting

affidavit notes that (1) the 9839 Phone is listed as the phone number for the church allegedly led

by Defendant, (2) a phone call was placed from the 9839 Phone to Official-1 after the 3314

Phone was seized and (3) location data for the 9839 Phone revealed its presence at Defendant's

residence.  *See Bodnar*, 37 F.4th at 841.

The June Home Warrant is sufficiently particularized.  It (1) identifies the "specific

offense[s]" for which probable cause is established -- wire fraud, extortion under color of official

right, aiding and abetting, conspiracy, false statements and obstruction of justice, (2) describes

the property to be searched as Whitehead's New Jersey residence and (3) specifies the types of

evidence targeted by the ESI review of the 9839 Phone based on those alleged crimes, described

in nine categories similar to the ones in the Personal Warrant.  *See Purcell*, 967 F.3d at 178.

Defendant's argument that the June Home Warrant is overbroad because it authorizes the

search of an entire house, instead of only the areas where cell phones are likely to be found, fails.

*See United States v. Ulbricht*, 858 F.3d 71, 102 (2d Cir. 2017) ("[A] warrant may allow the

government to search a suspected drug dealer's entire home where there is probable cause to

believe that evidence relevant to that activity may be found anywhere in the residence."),

*abrogated in part on other grounds by Carpenter v. United States*, 138 S. Ct. 2206 (2018);

*accord United States v. Arias-Casilla*, No. 21 Crim. 218-1, 2022 WL 2467781, at *6 (S.D.N.Y.

July 6, 2022).

### e.   9839 and 3314 Phone Locations Warrant

On August 8, 2022, a warrant was issued, authorizing the release of historical location

information for the 9839 Phone, 3314 Phone and two phones used by Victim-2 (the "9839 and

3314 Phone Locations Warrant").  The Government sought historical location information from

April 1, 2022, to June 29, 2022.  The warrant also authorizes the release of the phones' toll

records.  The supporting affidavit establishes probable cause that this information would reveal

evidence of wire fraud, conspiracy, false statements and obstruction of justice, as it recounts (1)

the investigation launched after Victim-2 approached law enforcement about Whitehead's

proposed real estate ventures with Victim-2 and (2) the role of these phones in the alleged

crimes.  *See Bodnar*, 37 F.4th at 841.

The warrant is sufficiently particularized.  It (1) identifies the "specific offense[s]" for

which probable cause is established, as listed above, (2) describes the property to be searched as

the 9839 Phone, 3314 Phone and two phones used by Victim-2 and (3) specifies historical

location information and toll records as the evidence targeted by the warrant.  *See Purcell*, 967

F.3d at 178.  The warrant is not overbroad, as the warrant authorizes historical location

information for the period when Defendant allegedly spoke with Victim-2 regarding the real

estate ventures.  *See id.* at 179.

### 2.   Warrants Relating to Victim-1

#### a.   September 9839 and 3314 Phone Contents Warrant

On September 21, 2022, a warrant was issued, authorizing the review of ESI contained on the 9839 and 3314 Phones for "evidence, fruits, and instrumentalities" of violations of wire fraud, conspiracy and money laundering statutes (the "September 9839 and 3314 Phone Contents Warrant"), as described in nine categories focused on the alleged scheme to defraud Victim-1 of the $90,000 she sent Whitehead to help her purchase a home.  The affidavit supporting the September 9839 and 3314 Phone Contents Warrant establishes probable cause that this information would reveal evidence of the alleged crimes, as it notes that (1) the case team had reviewed a verified civil complaint alleging that Defendant had defrauded Victim-1 of her life savings, (2) the allegations in the complaint are consistent with Whitehead's prior criminal conduct and (3) review of the 9839 and 3314 Phones based on prior warrants had confirmed Defendant as the user of both phones.

Defendant challenges this warrant -- along with the 3314 Phone Location Warrant and October 9839 and 3314 Phone Contents Warrant, defined below -- on the grounds that the supporting affidavit references the civil suit filed by Victim-1 against Defendant in support of its probable cause finding.  This civil suit arises out of the same events described in the Indictment. Contrary to Defendant's argument, a civil complaint can provide the basis for probable cause if its allegations are "reliable enough to establish probable cause" -- the "core question" when assessing the existence of probable cause based on an informant's information.  *See United States v. McKenzie*, 13 F.4th 223, 237-38 (2d Cir. 2021).  The reliability of the civil complaint is "further supported" here by the fact that it was verified, meaning that Victim-1 made her allegations "under threat of the criminal sanction for perjury."  *See United States v. Martin*, 801

F. App'x 803, 806 (2d Cir. 2020) (summary order).  The civil complaint did not need to plead

each of the elements of the federal wire fraud charge for the issuing judge to have found

probable cause, as the probable cause analysis is based on the "totality of circumstances,"

*Bodnar*, 37 F.4th at 841, and probable cause is "not a high bar."  *Jones*, 43 F.4th at 109.

Defendant also challenges the references to Defendant's "[p]rior convictions" in the

affidavits supporting both this warrant and the October 9839 and 3314 Phone Contents Warrant,

but these convictions "are a relevant consideration in determining probable cause."  *See United*

*States v. Wagner*, 989 F.2d 69, 73 (2d Cir. 1993); *accord United States v. Rocha-Gomez*, 412 F.

Supp. 3d 369, 375 (S.D.N.Y. 2019).  However, even assuming Defendant's prior convictions are

too "stale" to establish probable cause, *see United States v. Raymonda*, 780 F.3d 105, 114 (2d

Cir. 2015), the other facts in the supporting affidavits establish probable cause.

The warrant is sufficiently particularized and not overbroad.  It (1) identifies the "specific

offense[s]" for which probable cause is established, as listed above, (2) describes the property to

be searched as the 9839 and 3314 Phones and (3) specifies the types of evidence targeted by the

ESI review of the iPhones based on the alleged crimes, including "[a]ll communications with or

about [Victim-1] or [Victim-1's son] or about money obtained from them," "[a]ll

communications or documents regarding the finances of Lamor Whitehead and all entities

associated with Whitehead" and "[a]ll communications or documents regarding allegations of

fraud by Lamor Whitehead or any entity associated with Whitehead."  *See Purcell*, 967 F.3d at

178.  The warrant is not overbroad, as none of the descriptions are "broader than can be justified

by the probable cause upon which the warrant is based."  *See id.* at 179.

### b.  3314 Phone Location Warrant

On November 23, 2022, a warrant was issued, authorizing the release of historical location information and toll records for the 3314 Phone and a phone believed to be used by Victim-1's son (the "3314 Phone Location Warrant").  The Government sought historical location information from May 1, 2020, through June 15, 2021.  The affidavit supporting the 3314 Phone Location Warrant establishes probable cause that this information would reveal evidence of wire fraud, conspiracy and money laundering, as the affidavit recounts the alleged series of events that led Victim-1 to file her civil suit against Defendant based on interviews with Victim-1 and her son, as well as text messages among the three of them that involved both target phones.

The warrant is sufficiently particularized and not overbroad.  It (1) identifies the "specific offense[s]" for which probable cause is established, as listed above, (2) describes the property to be searched as the 3314 Phone and the phone believed to be used by Victim-1's son and (3) specifies the types of evidence targeted by the warrant -- the historical location information and toll records.  *See Purcell*, 967 F.3d at 178.  The warrant is not overbroad, as it authorizes this information from the time period when Victim-1 conducted her housing search.  *See id.* at 179.

### 3.  Additional Warrants

### a.  October 9839 and 3314 Phone Contents Warrant

On October 6, 2022, a warrant was issued, authorizing the review of ESI contained on the 9839 and 3314 Phones for "evidence, fruits, and instrumentalities of violations of attempts to commit theft of federal funds and wire fraud, and conspiracy to commit the same" (the "October 9839 and 3314 Phone Contents Warrant"), as described in five categories focused on Whitehead's 2021 candidacy for Brooklyn Borough President.  The warrant affidavit establishes

probable cause that this information would reveal evidence of the alleged crimes, as it notes (1) the same verified complaint discussed above alleging that Defendant had defrauded Victim-1, (2) Whitehead's prior criminal conduct, (3) an interview with Victim-1's son that recounts Whitehead's alleged attempt to fraudulently obtain matching funds from the New York City Campaign Finance Board by filing false campaign contribution cards and (4) images of the contents of Victim-1's son's phone that show related communications with Whitehead.

The warrant is sufficiently particularized and not overbroad.  It (1) identifies the "specific offense[s]" for which probable cause is established, as listed above, (2) describes the property to be searched as the 9839 and 3314 Phones and (3) specifies the types of evidence targeted by the ESI review of the iPhones based on the alleged crimes, including "[e]vidence of a scheme by Lamor Whitehead and others to obtain New York City funds based on false claims that he had received certain contributions to his 2021 campaign for the Democratic Party nomination for Brooklyn Borough President" and "[a]ll communications or documents regarding the finances of Lamor Whitehead's 2021 campaign for Democratic Party nomination for Brooklyn Borough President." *See Purcell*, 967 F.3d at 178.  The warrant is not overbroad, as none of the descriptions are "broader than can be justified by the probable cause upon which the warrant is based." *See id.* at 179.

### b.  December Home Warrant

On December 16, 2022, a warrant was issued, authorizing another search of Defendant's residence (the "December Home Warrant").  The December Home Warrant is supported by probable cause, as the supporting affidavit describes the investigation into Whitehead's various alleged crimes up to this point, including his interactions with Victim-1 and Victim-2, and notes Whitehead's submission of an allegedly fraudulent application for a $250,000 business loan for

Anointing Management Services LLC, as well as his use of two bank accounts to funnel Victim-1's $90,000 investment into paying for his personal expenses.  *See Bodnar*, 37 F.4th at 841.

The December Home Warrant is sufficiently particularized and not overbroad.  It (1) identifies the "specific offense[s]" for which probable causes is established -- wire fraud, attempted wire fraud, extortion under color of official right and concealment money laundering, (2) describes the property to be searched as Whitehead's New Jersey residence and (3) specifies the types of evidence targeted by the search based on those alleged crimes, including "[f]inancial records for Lamor Whitehead and any entity controlled by or associated with Lamor Whitehead" and "[e]lectronic devices, including cellphones, laptops, and tablets, owned or used by Lamor Whitehead (hereinafter, the 'Seized Devices')."  *See Purcell*, 967 F.3d at 178.  The warrant also authorizes the search of these devices for evidence of those alleged crimes, as described in nine categories, including "[e]vidence of a scheme by Lamor Whitehead to defraud [Victim-1]," "[e]vidence of Lamor Whitehead's relationship (including nature, scope, and duration) with New York City officials" and "[e]vidence regarding the identity of the owner or user of the Seized Devices at times relevant to the" alleged crimes.  None of the descriptions are "broader than can be justified by the probable cause upon which the warrant is based."  *See id.* at 179.

### 4.  Good-Faith Exception

Even if the warrants were defective, the good-faith exception would apply to each of them because the agents executing the warrants acted "with an objectively reasonable good-faith belief that their conduct [was] lawful."  *See Jones*, 43 F.4th 94 at 111 (2d Cir. 2022).  The nexus of facts in each case justified searches of Whitehead's person, phones, residence and alleged church.  None of the four limitations on the good-faith exception applies, *see Purcell*, 967 F.3d at 179-80, so the "presumption of reasonableness" holds.  *See Clark*, 638 F.3d at 100; *accord Ray*,

541 F. Supp. at 378.  There is no evidence that the issuing judges were "knowingly misled," or that they "wholly abandoned" their judicial roles.  *See Purcell*, 967 F.3d at 179-80.  As discussed above, the supporting affidavits establish probable cause for the warrants, and none of them is "so facially deficient" to render reliance upon them unreasonable.  *See id.*

Defendant argues that certain of the warrant applications unreasonably rely on information from Victim-2, pointing to Victim-2's suggestion to an FBI agent that Victim-2 start a fraudulent company.  However, as is evident from the FBI Form 302 that reports this suggestion, Victim-2 made the proposal as a way to maintain Defendant's interest in doing business with him as a cooperating witness, and not from any desire to engage in illegal conduct.  Thus, no good-faith exception applies.

Defendant also challenges an agent's initial review of Whitehead's two iPhones for evidence of the alleged scheme to defraud Victim-1 of $90,000 based on the Personal Warrant and the June Home Warrant, before the issuance of the September 9839 and 3314 Phone Contents Warrant.  A footnote in the supporting affidavit of the September 9839 and 3314 Phone Contents Warrant explains that an agent had begun reviewing Whitehead's two iPhones for evidence of the allegations in Victim-1's civil complaint, which the agent believed permissible under the previously issued warrants.  Nevertheless, the footnote states the case team was applying for the September 9839 and 3314 Phone Contents Warrant, which focused on Whitehead's alleged scheme to defraud Victim-1, "out of an abundance of caution."

Defendant's challenge fails because both the Personal Warrant and the June Home Warrant authorize the search of the devices for "[e]vidence concerning real estate investments or transactions, whether or not completed" and "[e]vidence concerning the finances of Lamor Whitehead or of any entity that Whitehead owns, manages, operates, or has invested in."  Both

warrants authorize these searches in relation to the crime of wire fraud, which is relevant to the alleged scheme involving Victim-1 and is the charge the Government ultimately brought against Whitehead for this scheme.  As examined in the Personal Warrant and June Home Warrant discussions above, these warrants are not overbroad.  *See Purcell*, 967 F.3d at 179 (stating that "in many cases, the volume of records properly subject to seizure because of their evidentiary value may be vast").  Further, the September 9839 and 3314 Phone Contents Warrant's supporting affidavit explicitly disclaims any reliance on evidence gathered from this initial review.  *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963) (explaining that evidence does not need to be suppressed if obtained "by means sufficiently distinguishable to be purged of the primary taint"); *accord United States v. Asmodeo*, 763 F. App'x 75, 81 (2d Cir. 2019) (summary order) (finding evidence "sufficiently attenuated from the illegal search to permit its admission").  Therefore, Defendant's motion to suppress evidence from both the initial search and subsequent fruits on this basis is denied.

## IV.    MOTION FOR HEARINGS

Defendant seeks both a so-called *Darden* hearing and a *Franks* hearing based on the following statement in six of the warrant affidavits: the Government "is not asking the Court to rely on [Victim-2]'s statements to law enforcement in making its probable cause determination; rather, [Victim-2]'s statements to law enforcement are provided as context for later recorded statements made by Whitehead, on which the Court is asked to rely."  From this statement, Defendant deduces that Victim-2 is unreliable, and that the warrants are potentially tainted as a result.  For the reasons below, the requests for a hearing are denied.

22

### A.   *Darden* Hearing

Defendant seeks a so-called *Darden* hearing to inquire into the reliability of Victim-2.  A *Darden* hearing is a state court procedure in criminal cases where, "when evaluating a motion to suppress, the court may conduct an ex parte, in camera examination of a confidential informant without disclosing the informant's identity to the defendant."  *People v. Cook*, 143 N.E.3d 1065, 1071 (N.Y. 2019) (citing *People v. Darden*, 313 N.E.2d 49 (N.Y. 1974)).  A *Darden* hearing is warranted "where there is insufficient evidence to establish probable cause apart from the testimony of the arresting officer as to communications received from an informer."  *Darden*, 313 N.E.2d at 52.  Defendant's request for a *Darden* hearing is denied, first because it is exclusively available under New York state law, *Grant v. Graham*, No. 8 Civ. 10453, 2009 WL 3401181, at *5 (S.D.N.Y. Oct. 19, 2009), and second because the warrants in question were sufficiently supported by probable cause established by Defendant's own incriminating recorded statements.

### B.   *Franks* Hearing

"A *Franks* hearing permits a criminal defendant to challenge the veracity of a warrant affidavit under certain circumstances."  *McKenzie*, 13 F.4th at 236.  "To trigger the hearing, a defendant must make a 'substantial preliminary showing' that (1) the warrant application contains a false statement, (2) the false statement was included intentionally or recklessly, and (3) the false statement was necessary to the finding of probable cause."  *Id.* at 236 (quoting *Franks v. Delaware*, 438 U.S. 154, 155 (1978)).  "The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant."  *Franks*, 438 U.S. at 171.

"The *Franks* standard is a high one . . . ." *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991); *accord United States v. Hester*, No. S1 19 Crim. 324, 2020 WL 3483702, at *19 (S.D.N.Y. June 26, 2020). "The fruits of the search must be excluded if the allegation of perjury or recklessness is established by a preponderance of the evidence and the affidavit's remaining content with the falsehoods set aside is insufficient to establish probable cause." *McKenzie*, 13 F.4th at 236. To mandate an evidentiary hearing, "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *United States v. Falso*, 544 F.3d 110, 125-26 (2d Cir. 2008); *accord United States v. Reid*, No. 20 Crim. 626, 2023 WL 155472, at *2 (S.D.N.Y. Jan. 11, 2023).

Defendant has not met the standard required for a *Franks* hearing. Defendant has failed to make a "substantial preliminary showing" of any of the three requirements for a hearing. First, Defendant has not identified any false statement by an affiant, much less that an affiant "intentionally or recklessly" included such a statement. Defendant has also failed to make a "substantial preliminary showing" that any affiant's representation of information from Victim-2 was necessary to a finding of probable cause. To the contrary, for each of the six warrants, Defendant's own words, in the form of his recorded conversations, were sufficient to establish probable cause. Under these circumstances, no hearing to challenge the veracity of the search warrant affidavits is warranted. Defendant's request for a *Franks* hearing is denied.

## V.   CONCLUSION

For the foregoing reasons, Defendant's motions for suppression of statements made to law enforcement, suppression of evidence gathered from nine search warrants and hearings regarding the credibility of Victim-2 and the veracity of the warrant affidavits are denied. Defendant's request for oral argument is denied as moot. The Government's request to file a

sur-reply, already submitted as Dkt. No. 75 in response to Defendant's reply to his first motion to suppress, is granted nunc pro tunc.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 70 and 83.

Dated: June 9, 2023
       New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**