UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

LAMOR WHITEHEAD,

               Defendant.

**S1 22 Cr. 692 (LGS)**

**THE GOVERNMENT'S MOTIONS *IN LIMINE***

Damian Williams
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Jessica Greenwood
Jane Kim
Derek Wikstrom
Assistant United States Attorneys
    *Of Counsel*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND ............................................................................................................... 1

   I.    The Charges Against the Defendant ............................................................... 1

   II.   Examples of Trial Evidence ............................................................................ 3

ARGUMENT ................................................................................................................... 6

   I.    THE COURT SHOULD ADMIT EVIDENCE OF THE DEFENDANT'S
       UNCHARGED MISREPRESENTATIONS ABOUT HIS FINANCES, INCLUDING
       HIS USE OF DOCTORED AND FRAUDULENT BANK RECORDS, AS DIRECT
       EVIDENCE, OR ALTERNATIVELY, UNDER RULE 404(B) ...................................... 6

       A.   Relevant Facts ....................................................................................... 6

       B.   Applicable Law ................................................................................... 13

       C.   Discussion ........................................................................................... 18

   II.   THE GOVERNMENT SHOULD BE PERMITTED TO CROSS-EXAMINE THE
       DEFENDANT REGARDING HIS PRIOR FRAUD-RELATED CONVICTIONS AND
       THEIR UNDERLYING DISHONEST CONDUCT, AMONG OTHER
       IMPEACHMENT TOPICS, SHOULD THE DEFENDANT ELECT TO TESTIFY ...... 20

       A.   Relevant Facts ..................................................................................... 21

       B.   Applicable Law ................................................................................... 22

       C.   Discussion ........................................................................................... 23

   III.  THE COURT SHOULD PRECLUDE THE DEFENDANT FROM OFFERING HIS
       OWN PRIOR STATEMENTS ........................................................................ 27

       A.   Applicable Law ................................................................................... 28

       B.   Discussion ........................................................................................... 30

   IV.  THE DEFENSE SHOULD BE PRECLUDED FROM ATTACKING VICTIM-2'S
       CREDIBILITY ............................................................................................ 30

       A.   Applicable Law ................................................................................... 31

       B.   Discussion ........................................................................................... 32

CONCLUSION ................................................................................................................ 34

# TABLE OF AUTHORITIES

**CASES**

*Costantino v. Herzog*,
  203 F.3d 164 (2d Cir. 2000) ................................................................. 17

*Montejo v. Louisiana*,
  556 U.S. 778 (2009) ............................................................................. 29

*Sanders v. Ritz-Carlton Hotel Co., LLC*,
  No. 05 CIV. 6385 (PKL), 2008 WL 4155635 (S.D.N.Y. Sept. 9, 2008) ................................... 25

*United States v. Arline*,
  660 F. App'x 35 (2d Cir. 2016) ............................................................ 33

*United States v. Black*,
  No. 13 Cr. 316 (DLI), 2014 WL 5783067 (E.D.N.Y. Nov. 5, 2014) ................................... 28

*United States v. Bumagin*,
  136 F. Supp. 3d 361 (E.D.N.Y. 2015) ................................................... 26

*United States v. Carboni*,
  204 F.3d 39 (2d Cir. 2000) ................................................................... 13

*United States v. Carlton*,
  534 F.3d 97 (2d Cir. 2008) ................................................................... 16

*United States v. Castro*,
  813 F.2d 571 (2d Cir. 1987) ................................................................. 29

*United States v. Cirillo*,
  468 F.2d 1233 (2d Cir. 1972) ............................................................... 17

*United States v. Coonan*,
  938 F.2d 1553 (2d Cir. 1991) ............................................................... 14

*United States v. Curley*,
  639 F.3d 50 (2d Cir. 2011) ................................................................... 15

*United States v. Dipietro*,
  No. 02 Cr. 1237 (SWK), 2005 WL 1430483 (S.D.N.Y. June 17, 2005) ................................... 32

*United States v. Estrada*,
  430 F.3d 606 (2d Cir. 2005) ................................................................. 22

*United States v. Fernandez,*
    839 F.2d 639 (9th Cir. 1987) ...................................................................... 28

*United States v. Garcia,*
    291 F.3d 127 (2d Cir. 2002) ........................................................................ 23

*United States v. Gelzer,*
    50 F.3d 1133 (2d Cir. 1995) ........................................................................ 17

*United States v. Gilbert,*
    668 F.2d 94 (2d Cir. 1981) .......................................................................... 26

*United States v. Gonzalez,*
    110 F.3d 936 (2d Cir. 1997) ................................................................. 13, 18

*United States v. Gonzalez,*
    399 F. App'x 641 (2d Cir. 2010) ................................................................. 28

*United States v. Guang,*
    511 F.3d 110 (2d Cir. 2007) ........................................................................ 16

*United States v. Harvey,*
    547 F.2d 720 (2d Cir. 1976) ........................................................................ 31

*United States v. Hayes,*
    553 F.2d 824 (2d Cir. 1997) ........................................................................ 23

*United States v. Ilori,*
    No. 21 Cr. 00746 (MKV), 2022 WL 2452258 (S.D.N.Y. July 5, 2022) .......................... 22, 23

*United States v. Johnson,*
    507 F.3d 793 (2d Cir. 2007) ................................................................. 29, 30

*United States v. Klein,*
    340 F.2d 547 (2d Cir. 1965) ................................................................. 15, 19

*United States v. Livoti,*
    196 F.3d 322 (2d Cir. 1999) ........................................................................ 17

*United States v. Marin,*
    669 F.2d 73 (2d Cir. 1982) .......................................................................... 28

*United States v. McGowan,*
    58 F.3d 8 (2d Cir. 1995) ....................................................................... 32, 33

*United States v. Memoli,*

    648 F. App'x 91 (2d Cir. 2016) ...................................................................... 14

*United States v. Meyerson,*

    18 F.3d 153 (2d Cir. 1994) ...................................................................... 15, 20

*United States v. Paulino,*

    445 F.3d 211 (2d Cir. 2006) .................................................................... 14, 32

*United States v. Payton,*

    159 F.3d 49 (2d Cir. 1998) ...................................................................... 23, 26

*United States v. Perez,*

    No. 05 Cr. 441 (PKL), 2005 WL 2709160 (S.D.N.Y. Oct. 20, 2005) ..................... 32

*United States v. Pitre,*

    960 F.2d 1112 (2d Cir. 1992) .......................................................... 14, 17, 20

*United States v. Quinones,*

    511 F.3d 289 (2d Cir. 2007) .......................................................................... 13

*United States v. Rea,*

    958 F.2d 1206 (2d Cir. 1992) ........................................................................ 28

*United States v. Reed,*

    639 F.2d 896 (2d Cir. 1981) .......................................................................... 16

*United States v. Reese,*

    933 F. Supp. 2d 579 (S.D.N.Y. 2013) ............................................................ 15

*United States v. Regan,*

    103 F.3d 1072 (2d Cir. 1997) .................................................................. 32, 33

*United States v. Robbins,*

    340 F.2d 684 (2d Cir. 1965) .......................................................................... 15

*United States v. Roldan-Zapata,*

    916 F.2d 795 (2d Cir. 1990) .......................................................................... 17

*United States v. Romano,*

    No. 12 Cr. 691 (JFK), 2014 WL 69794 (E.D.N.Y. Jan. 8, 2014) ........................ 33

*United States v. Scott,*

    677 F.3d 72 (2d Cir. 2012) ............................................................................ 14

*United States v. Sliker*,

    751 F.2d 477 (2d Cir. 1984)........................................................................ 16

*United States v. Thomas*,

    54 F.3d 73 (2d Cir. 1995) ..................................................................... 15, 20

*United States v. Thompson*,

    359 F.3d 470 (7th Cir. 2004) ................................................................... 17

*United States v. Torres*,

    435 F. Supp. 3d 526 (S.D.N.Y. 2020)...................................................... 28

*United States v. Towne*,

    870 F.2d 880 (2d Cir. 1989)...................................................................... 13

*United States v. Watts*,

    No. S3 09 Cr. 62 (CM), 2011 WL 167627 (S.D.N.Y. Jan. 11, 2011) ............................. passim

*United States v. Williams*,

    930 F.3d 44 (2d Cir. 2019) ........................................................................ 29

*United States v. Yousef*,

    327 F.3d 56 (2d Cir. 2003)......................................................................... 29

*United States v. Zackson*,

    12 F.3d 1178 (2d Cir. 1993)............................................................... 14, 15

**STATUTES**

New York Penal Law § 110 ......................................................................... 21

New York Penal Law § 155.40 .................................................................... 21

New York Penal Law § 165.40 .................................................................... 21

New York Penal Law § 165.50 .................................................................... 21

New York Penal Law § 190.65 .................................................................... 24

New York Penal Law § 190.65(1) ........................................................ 21, 25

New York Penal Law § 190.80(1) ........................................................ 21, 25

# RULES

Fed. R. Evid. 106 ........................................................................................................ 29

Fed. R. Evid. 401 ................................................................................................... 13, 31

Fed. R. Evid. 402 ........................................................................................................ 13

Fed. R. Evid. 403 ................................................................................................... passim

Fed. R. Evid. 404(b) .............................................................................................. passim

Fed. R. Evid. 608 ................................................................................................... 23, 26

Fed. R. Evid. 609 ................................................................................................... passim

Fed. R. Evid. 801 ................................................................................................... 28, 29

Fed. R. Evid. 802 ............................................................................................. 27, 28, 30

Fed. R. Evid. 806 ................................................................................................... 31, 32

Rule 403, Advisory Committee Note............................................................................. 17

# TREATISES

2 McCormick on Evidence § 324.2 (8th ed.)............................................................... 32

Weinstein's Federal Evidence, § 404.20[2][b] ............................................................ 14

<u>**PRELIMINARY STATEMENT**</u>

The Government respectfully submits this memorandum of law in support of its motions *in limine* in connection with the trial against defendant Lamor Whitehead that is scheduled to begin on February 26, 2024. For the reasons that follow, the Government moves *in limine* for orders: (1) permitting the Government to offer evidence of the defendant's uncharged misrepresentations regarding his finances, including his use of doctored and fraudulent bank records, as direct evidence of the crimes charged, or, in the alternative, pursuant to Federal Rule of Evidence 404(b); (2) permitting the Government to cross-examine the defendant regarding his prior fraud-related convictions and their underlying dishonest conduct should he elect to testify; (3) precluding the defendant from introducing his own out-of-court statements; and (4) precluding the defendant from attacking the credibility of a non-testifying victim ("Victim-2").[1]

<u>**BACKGROUND**</u>

**I.      The Charges Against the Defendant**

The defendant is charged in five-count Superseding Indictment S1 22 Cr. 692 (LGS) (Dkt. 63 (the "S1 Indictment")) for his multi-year effort to enrich himself through false representations, false promises, and threats, and his efforts to conceal his schemes to defraud. The defendant

---

[1] As discussed below, the Government conferred with the defense as to its motions *in limine* and understands that the defense does not intend to introduce the defendant's own out-of-court statements, but does plan to attack the credibility of Victim-2 even if Victim-2 does not testify and Victim-2's statements are not offered for their truth. The defense has confirmed that it does not plan to argue or elicit evidence relating to the defendant's suppression motions (*e.g.*, suggesting that the defendant was coerced into making statements to law enforcement or that his electronic devices were improperly seized). The defense has not indicated its position as to the Government's remaining motions. In addition, to the extent disagreements between the parties arise regarding the permissible scope of cross-examination for a particular witness or other evidentiary issues, the Government intends to file supplemental motions *in limine* to permit the timely resolution of those issues by the Court prior to trial.

carried out his schemes by leveraging his position of trust and power as a church leader to exploit at least two parishioners, falsely representing that he would obtain favors and benefits from the New York City government, and doctoring bank records to inflate his alleged assets, among other things.  The defendant also lied to federal agents in order to impede them from obtaining evidence from one of his cellphones.

Specifically, the defendant is charged with: (1) wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 ("Count One"); (2) attempted wire fraud, in violation of 18 U.S.C. §§ 1343, 1349, and 2 ("Count Two"); (3) attempted extortion, in violation of 18 U.S.C. § 1951 ("Count Three"); (4) false statements, in violation of 18 U.S.C. § 1001 ("Count Four"); and (5) another count of wire fraud ("Count Five").  (*Id.*).[2]

Count One relates to the defendant's scheme to defraud a victim and church parishioner (referenced in the S1 Indictment as "Victim-1") and Victim-1's son, also a church parishioner, in or about 2021 and 2022, out of approximately $90,000.  (*Id.* ¶¶ 3, 8).  The defendant defrauded Victim-1 by falsely claiming that he would use Victim-1's money to help her obtain a home, among other things.  (*Id.* ¶ 3).  The defendant obtained approximately $90,000 from Victim-1 and did not use it as promised.  Instead, the defendant used the money to, among other things, buy himself thousands of dollars of luxury goods and clothing.  (*Id.*)  The defendant never helped Victim-1 obtain a home, nor did he return Victim-1's money to her, despite her requests.  (*Id.*).

Count Two relates to the defendant's scheme to defraud a second victim, a Bronx businessman (referenced in the S1 Indictment as "Victim-2"), in or about April and May 2022, in

---

[2] Indictment 22 Cr. 692 (LGS) was filed on December 15, 2022 (Dkt. 2 (the "Indictment")), included Counts One through Four of the S1 Indictment, and was superseded by the S1 Indictment.

a failed attempt to obtain $500,000 from Victim-2 and a stake in certain real estate transactions. (*Id.* ¶¶ 4, 10).  In exchange for Victim-2's money and real estate interests, the defendant falsely represented that he would obtain favorable actions from the New York City government via a specific New York City government official (the "Official"), from which both the defendant and Victim-2 would purportedly financially benefit.  (*Id.* ¶ 4).

Count Three relates to the defendant's attempt to extort money from Victim-2 by using threats of physical harm in or about February 2022.  (*Id.* ¶¶ 5, 12).

Count Four relates to the defendant's false statements to Special Agents of the Federal Bureau of Investigation ("FBI") on or about June 8, 2022, during the execution of a judicially authorized search warrant at the defendant's residence.  (*Id.* ¶¶ 6, 14).  The defendant falsely denied that he possessed more than one cellphone when he, in fact, was using a second cellphone both before and after the execution of the search.  (*Id.* ¶ 6).

Count Five relates to the defendant's scheme to defraud potential lenders and financial institutions by doctoring and creating fake bank statements that misrepresented the finances of Anointing Management Services LLC ("AMS LLC") from at least in or about October 2018 up to and including in or about February 2019.  (*Id.* ¶ 2).  The defendant made false statements in his loan applications in order to obtain, for example, a mortgage in excess of $1.3 million to fund the purchase of his home and a $250,000 business loan for AMS LLC, as discussed in greater detail below.  (*Id.* ¶¶ 2, 16).

## II. Examples of Trial Evidence

At trial, and as relevant to these motions, the Government plans to offer, among other evidence the following: (1) the testimony of several witnesses; (2) electronic communications

between the defendant and/or Victim-1 and Victim-1's son discussing Victim-1's financial situation, the fraudulent real estate deal, and requests to the defendant to give Victim-1 back the $90,000 he fraudulently obtained from her; (3) electronic communications and recorded calls between the defendant and Victim-2, in which the defendant makes misrepresentations to Victim-2 and threatens Victim-2 with harm; and (4) bank and other financial records, including the defendant's loan applications and doctored bank statements of the defendant misrepresenting his assets.

With respect to Counts Two and Three, the Government plans to offer evidence of conversations between the defendant and Victim-2 through recordings and electronic communications. The Government does not intend to call Victim-2 as a trial witness, nor does the Government intend to offer any of Victim-2's statements, in his exchanges with the defendant, for their truth. (Dkt. 53 at 6; Dkt. 58 at 5; Dkt. 108 at 2-3). Instead, to make the defendant's statements intelligible for the jury, the Government plans to offer Victim-2's statements as context, background, and, where appropriate, as the defendant's adoptive admissions, depending on his responses. For example, among many other conversations between the defendant and Victim-2, the Government plans to offer evidence of the following:

- On April 23, 2002, the defendant and Victim-2 had a conversation about the $5,000 the defendant wanted from Victim-2, during which the defendant stated, among other things:

  You playin' with me. I don't get it. I ain't been nothing but nice to you. And you want to sit and tell me you givin' me 5,000. You ain't givin' me nothing. That's what you told me you owe me. That's what you told me you'd give me.

  . . .

  I don't need you. God has been good to me. But one thing Ima tell you homey, nobody's gonna play with me. Nobody's gonna play with me. Nobody's gonna take nothin' from me. And that's what people do. They, oh, you a bishop. Oh, you supposed

4

to be a bishop. No nigga, I will hurt you. Don't play with me. Because of the simple fact I got a family. I got a family. You know what I'm sayin'. Oh, yo, I heard that I'm steppin' to it. You ask Sha about me. Ask Sha. Ask all of them about me. Then tell me something. Sha is scared to tell me about people who talk about me. You wanna know why? Sha knew me over 20 years. He's scared. You like you wanna know why? Because I step to my business.

. . .

That's because I got into a different mindset. Because at the end of the day, at the end of the day, it's about the principle now. My mindset, like I don't need that around me. Like in my church, in my church bro, there's guns in my church. Like I don't play, I don't, there's guns in my church. I don't, I don't, I don't trust none of these people. You come in here, you gonna get shot. You understand what I'm saying. So at the end of the day like, I'm from the streets bro. I do what God tells me to do. I don't got time for no nonsense.

- On or about April 29, 2022, the defendant met with Victim-2 and asserted that he would meet with the Official in the coming weeks and that the Official would "tell [Whitehead] where the money is." The defendant claimed that if he told [the Official] "I'm doin real estate . . . this is what I need," that it was "a done deal." The defendant said that [the Official] would help him obtain permission from the City to operate residential housing as affordable housing—without actually operating as affordable housing—and that the defendant had "the key to the City." But the defendant emphasized that in order to get the Official's assistance, the real estate would need to be in his name.

- On or about May 5, 2022, the defendant and Victim-2 discussed a particular property that Victim-2 was negotiating to purchase, which was subject to a stop-work order. The defendant insisted that if the property were in the defendant's name, he would be able to get the order lifted: "When I go to [the Official], I go, 'Look, I own this right here. I need this up, off.' I can't come to him no other way . . . I got it, I'll take care of it. That's easy. Anything with that, boom." The defendant went on to say that he had to get the property "shifted over to us, and I'll take it from there. I'll deal with the City Council, I'll deal with the Assembly over there, and I'll deal with the Mayor's office. . . . . But we gotta have ownership. I gotta be able to say, 'Yo, yo [nickname for the Official], I own this. This is what's goin on.'"[3]

- In text messages sent in or about May 2022, the defendant repeatedly pressed Victim-2 to wire him $500,000, claiming that the money was urgently needed because "the Meeting

---

[3] The above quotations are draft transcriptions of certain of the defendant's statements made in recorded calls. At trial, the Government plans to provide full transcripts to the defense, the Court, and the jury, of admitted recorded calls as aids to the jury.

has been sent [read: 'set'] for Friday with the [Official] and we are still struggling to get things done! What are we really doing?" The defendant later texted Victim-2, complaining of the failure to wire the $500,000, writing: "I'm preparing for this meeting today so I'm glad that you really wanted to sabotage me and my business," and "One day you will really need me! And the meeting I set up today with you know how! [read: 'who'] What this now!"

## ARGUMENT

### I. THE COURT SHOULD ADMIT EVIDENCE OF THE DEFENDANT'S UNCHARGED MISREPRESENTATIONS ABOUT HIS FINANCES, INCLUDING HIS USE OF DOCTORED AND FRAUDULENT BANK RECORDS, AS DIRECT EVIDENCE, OR ALTERNATIVELY, UNDER RULE 404(B)

#### A. Relevant Facts

The defendant is charged in Count Five with wire fraud in connection with his June 2018 application for a $250,000 business loan in the name of AMS LLC (the "June 2018 Business Loan Application"). (S1 Indictment ¶¶ 2, 15-16). As alleged in the S1 Indictment, the defendant "misrepresented the finances of AMS LLC, including by submitting fabricated bank statements for an AMS LLC account at Bank-1" (*id.* ¶ 2), specifically, a Bank-1 account ending in the last four digits 4078 (the "4078 Account"). The Government anticipates that the trial evidence will show that on or about June 12, 2018, the defendant falsely claimed that AMS LLC's bank account (*i.e.*, the 4078 Account) had an average bank balance of $1,000,000 (when it did not). In support of that false statement, the defendant, using his date of birth, social security number, and other personal identifying information, submitted four doctored bank account statements purportedly from February, March, April, and May 2018, that falsely reflected ending balances for the 4078 Account of between approximately $1.98 million and $3.86 million. Screenshots of two of the defendant's doctored bank statements submitted in connection with the June 2018 Business Loan Application, falsely reflecting balances of $1,985,640.00 (between February 6, 2018, and March

5, 2018), and $3,859,361.67 (between April 25, 2018, and May 23, 2018), are depicted below (highlighting added):

<u>February 2018 Defendant's Doctored/Fraudulent Bank Statement</u>



Account number: ████4078 ■ February 6, 2018 - March 5, 2018 ■ Page 2 of 4

**WELLS FARGO**

## Transaction history

| Date | Check Number | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|------|--------------|-------------|---------------------|---------------------------|----------------------|
| 2/7 | | Wells Fargo Fops Securedcar 180420 S0130075842483 Whitehead, Lamor | | 320.00 | 1,895,438.00 |
| 2/9 | | Purchase authorized on 02/09 Fedexoffice 0001 Brooklyn NY S588111671497624 Card 3604 | | 55.00 | |
| 2/13 | | Purchase authorized on 02/13 T-Mobile #2801 Garden City NY S0058812367038065 Card 3604 | | 310.00 | 1,895,073.00 |
| 2/17 | | Purchase authorized on 02/17 EZPASS prepaid TOLLQPS NY S0046812777175088 Card 3604 | | 158.00 | 1,894,915.00 |
| 2/18 | | Counter Deposit | 5,800.00 | | 1,900,715.00 |
| 2/23 | | Check #1171 | | 680.00 | 1,900,035.00 |
| 2/24 | | Purchase authorized on 02/24 Exxonmobil 9870 Carteret NJ S588111767200112 Card 3604 | | 45.00 | 1,899,990.00 |
| 3/1 | | Counter Deposit | 85,650.00 | | 1,985,640.00 |
| **Ending balance on 3/5** | | | | | 1,985,640.00 |
| **Totals** | | | **$91,450.00** | **$1,568.00** | |

The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.

## April 2018 Defendant's Doctored/Fraudulent Bank Statement



In fact, according to Bank-1's records, the February and March 2018 bank statements were entirely fabricated—the 4078 Account was not even open yet as of those months. Meanwhile, the defendant's actual bank account balances for the 4078 Account in April and May 2018—when the account at least existed—were $4.28 and $5.48, respectively, as depicted below (emphases added).

# Actual April 2018 Bank Statement



## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 4/6 | | Deposit | 25.00 | | 25.00 |
| 4/13 | | Edeposit IN Branch/Store 04/13/18 01:33:13 Pm 463 Broadway New York NY 6494 | 125.00 | | 150.00 |
| 4/16 | | Purchase authorized on 04/12 Apl* Itunes.Com/Bi 866-712-7753 CA S588102646875501 Card 6494 | | 14.14 | |
| 4/16 | | Purchase authorized on 04/15 Quezada Restaurant 718-2820622 NY S468105836065133 Card 6494 | | 9.80 | 126.06 |
| 4/19 | | Purchase authorized on 04/17 Shell Oil 57544102 Brooklyn NY S468109019137949 Card 6494 | | 75.00 | 51.05 |
| 4/23 | | Purchase authorized on 04/19 Apl* Itunes.Com/Bi 866-712-7753 CA S468110121274137 Card 6494 | | 46.77 | 4.28 |
| Ending balance on 4/30 | | | | | 4.28 |
| **Totals** | | | **$150.00** | **$145.72** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

# Actual May 2018 Bank Statement



## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 5/10 | | Edeposit IN Branch/Store 05/10/18 05:57:27 Pm 463 Broadway New York NY 6494 | 95.00 | | 99.28 |
| 5/14 | | Purchase authorized on 05/11 Fuel 4 Grove Stree Jersey City NJ S468131573070586 Card 6494 | | 60.00 | |
| 5/14 | | Purchase authorized on 05/11 Dunkin #344513 New York NY S558131733154339 Card 6494 | | 5.11 | |
| 5/14 | | Purchase authorized on 05/12 Target T- 999 Corporat Westbury NY P00000000437144421 Card 6494 | | 25.70 | 8.47 |
| 5/16 | | Purchase authorized on 05/14 Apl* Itunes.Com/Bi 866-712-7753 CA S308135067462593 Card 6494 | | 2.99 | 5.48 |
| Ending balance on 5/31 | | | | | 5.48 |
| **Totals** | | | **$95.00** | **$93.80** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

The doctored 4078 Account statements submitted by the defendant had other irregularities as well, including listing a different account type, different statement start and end dates, and different account information than those actually reflected in Bank-1's records.

As set forth in the S1 Indictment, the defendant continued to use doctored and fake Bank-1 bank statements (S1 Indictment ¶ 2) through at least in or about May 2022, in order to continue seeking loans and lines of credit through false statements about his and AMS LLC's finances. He doctored records for the 4078 Account, for a second, non-existent Bank-1 account for AMS LLC, and for a third Bank-1 account in his own name. And he used some of the very same fake and doctored bank statements and account balances that he had submitted with his June 2018 Business Loan Application, as charged in Count Five. (*Id.*). For example:

The February 2019 Mortgage Application. In or about February 2019, as described in the S1 Indictment, the defendant obtained an approximately $1.3 million mortgage loan to fund the purchase of his home in Paramus, New Jersey (the "February 2019 Mortgage Application"). (*Id.*). In loan application materials submitted from in or about October 2018 through in or about February 2019, the defendant made a number of material false statements about his finances and the finances of AMS LLC, including by: (1) submitting two altered account statements for the 4078 Account—which he now falsely claimed was in his own name, rather than the name of AMS LLC—reflecting several hundred thousand dollars in the account at the end of two months when the ending balances were in fact $18.80 and $1,000.77 respectively; (2) submitting a years' worth of fake bank account statements for a second, made-up account at Bank-1 purportedly in the name of AMS LCC and ending in the last four digits 4060 (the "Fake 4060 Account"); and (3) submitting copies of fake checks purportedly verifying the source of funds that were deposited into the Fake 4060 Account.

(*See id.*).  The Fake 4060 Account statements, which were dated December 2017 to November 2018, falsely represented that AMS LLC had an average monthly ending balance of nearly $2.5 million, when in fact the account did not even exist.

Notably, in creating the Fake 4060 Account statements, the defendant reused the very same fabricated bank account statements at issue in Count Five.  For example, he took the monthly account ending balances he had previously claimed in the June 2018 Business Loan Application were from the 4078 Account and re-used those exact dollar amounts (or, for one month, a slightly altered dollar amount) on four account statements he now claimed were from the Fake 4060 Account.

The October 2021 Home Equity Line of Credit Application.  In or about October 2021, the defendant applied for an approximately $900,000 to $1 million home equity line of credit on his home in Paramus, New Jersey (the "October 2021 HELOC Application").  The October 2021 HELOC Application was ultimately denied.  In support of this application, the defendant again made materially false statements about his personal and corporate finances, including by submitting false Bank-1 account statements.  The defendant submitted August and September 2021 account statements for a Bank-1 account ending in the last four digits 7250 (the "7250 Account"), which he claimed was in his individual name and had an account balance in excess of $400,000. In fact, according to Bank-1 records, the 7250 Account was in the name of an LLC owned by the defendant and had less than $13,000 and $1,500 in the account at the ends of August and September 2021 respectively.  At least one false account balance used by the defendant in connection with this credit application had been recycled from a prior fraudulent submission. Specifically, the September 2021 ending balance for the 7250 Account was the same exact dollar

amount the defendant claimed in the February 2019 Mortgage Application had been the November 2018 ending balance of the 4078 Account.

The November 2021 Commercial Loan Application. In or about November 2021, the defendant obtained a commercial loan of at least $4.15 million on a multi-family property in Hartford, Connecticut (the "November 2021 Commercial Loan Application"). In applying for that loan, the defendant submitted an entity financial statement claiming a corporate bank account balance of $3.8 million. The defendant also submitted two fabricated account statements from the Fake 4060 Account purportedly in the name of AMS LLC, which claimed to show monthly ending balances of $3.9 million and $3.8 million in October and November 2021, respectively. In fabricating these account statements—which post-date the Fake 4060 Account statements described above—the defendant reused information from account statements he had fabricated and used fraudulently in connection with prior loan applications. For example, (1) for October 2021, the defendant re-used an ending balance that he had used at least twice before—once in the May 2018 account statement for the 4078 Account, which he submitted as part of the June 2018 Business Loan Application charged in Count Five, and once in the October 2018 Fake 4060 Account statement, which he submitted as part of the February 2019 Mortgage Application; and (2) for November 2021, he re-used the monthly ending balance for the November 2018 Fake 4060 Account statement, which he submitted as part of the February 2019 Mortgage Application.

The May 2022 Proof of Funds Email. In or about May 2022, in connection with another application for a home equity line of credit, the defendant sent an email attaching proof of funds to a private money lender specializing in real estate debt and private equity investments (the "May 2022 Proof of Funds Email"). Specifically, the defendant sent what purported to be an April 30,

2022 account statement for the 4078 Account in the name of AMS LLC reflecting an ending balance of $17,001,348,47—with a comma rather than a period before the "47" cents. According to Bank-1, the actual ending balance for the 4078 Account that month was just under $350—not $17 million. The application was identified as fraudulent and ultimately denied.

**B.      Applicable Law**

**1.      Direct and Intrinsic Evidence**

If evidence is relevant to a charged offense, it is generally admissible at trial. Fed. R. Evid. 402. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

The Second Circuit has repeatedly held that evidence of uncharged criminal activity that is intrinsic or direct proof of a charged crime is admissible. Direct evidence of a crime is not limited to "that which directly establishes an element of the crime." *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997). Rather, direct evidence includes evidence that (1) "arose out of the same transaction or series of transactions as the charged offense"; (2) "is inextricably intertwined with the evidence regarding the charged offense"; or (3) "is necessary to complete the story of the crime on trial." *Id.* at 942. Intrinsic evidence is that which is "inextricably intertwined with the evidence regarding the charged offense." *United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989). "In such circumstances, the uncharged crime evidence is necessary to complete the story of the crime on trial, and, thus, appropriately treated as part of the very act charged, or, at least, proof of that act." *United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007) (internal quotation marks and citations omitted); *see also, e.g.*, *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (same);

*United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991) (even if the evidence does not directly establish an element of the offense charged, it can be admitted "in order to provide background for the events alleged in the indictment" (citation omitted)) ; Weinstein's Federal Evidence, § 404.20[2][b] (noting that evidence of other wrongs is admissible without regard to Rule 404(b) where those wrongs "were necessary preliminaries to the crime charged").

### 2.  "Other Acts" Evidence Under Rule 404(b)

Extrinsic evidence of uncharged criminal activity or other acts may be admissible under Federal Rule of Evidence 404(b).  Federal Rule of Evidence 404(b) provides, in relevant part, that:

> Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. . . . This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

It is well-established that evidence of "other acts" is admissible under Rule 404(b) if the evidence (1) is advanced for a proper purpose; (2) is relevant to an issue in the case; (3) has probative value that is not substantially outweighed by any unfair prejudicial effect, and (4) if requested, is admitted with limiting instructions to the jury.  *See United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012); *United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993); *United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992).

The Second Circuit "has long adopted an 'inclusionary' approach to the admission of uncharged crime evidence, under which evidence of prior crimes, wrongs, or acts is admissible for any purpose other than to show a defendant's criminal propensity." *United States v. Paulino*, 445 F.3d 211, 221 (2d Cir. 2006) (internal quotation marks omitted); *see also United States v. Memoli*, 648 F. App'x 91, 93 (2d Cir. 2016) (quoting *Scott*, 677 F.3d at 79) (same); *United States v. Curley*,

639 F.3d 50, 56 (2d Cir. 2011) (same). Applying this approach, the Second Circuit has routinely approved the admission of "other acts" evidence with respect to knowledge, intent, and/or motive. *See, e.g.*, *United States v. Thomas*, 54 F.3d 73, 81-82 (2d Cir. 1995); *United States v. Meyerson*, 18 F.3d 153, 166-67 (2d Cir. 1994); *see also United States v. Watts*, No. S3 09 Cr. 62 (CM), 2011 WL 167627, at *6 (S.D.N.Y. Jan. 11, 2011) ("Evidence of a defendant's participation in other, similar fraud is routinely admissible pursuant to Rule 404(b) to show knowledge and intent."). Where the defendant claims his conduct has an innocent explanation, the admission of such evidence of prior acts is particularly appropriate. *See, e.g.*, *Zackson*, 12 F.3d at 1182 ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged.").

In fraud cases in particular, courts routinely admit evidence of a defendant's participation in other, similar frauds pursuant to Rule 404(b) to show knowledge and intent. As the Second Circuit explained in *United States v. Klein*, 340 F.2d 547 (2d Cir. 1965), "the rule which permits the introduction of evidence respecting similar offenses for this limited purpose is based on the sound recognition that when there exists a pattern of misrepresentations, closely related in time and subject matter, it is reasonable to believe that they were not made innocently." *Id.* at 549 (quoting *United States v. Robbins*, 340 F.2d 684, 688 (2d Cir. 1965)); *see also Thomas*, 54 F.3d at 82 (upholding admission of prior fraud conviction in order to prove knowledge and intent with respect to possession of stolen money orders); *United States v. Reese*, 933 F. Supp. 2d 579, 582 (S.D.N.Y. 2013) (allowing admission of multiple prior convictions because "each prior conviction involves [the defendant] engaging in fraudulent practices to gain money"); *Watts*, 2011 WL

167627, at *6 ("Evidence of a defendant's participation in other, similar frauds is routinely admissible pursuant to Rule 404(b) to show knowledge and intent in fraud cases.").

It is also well-established that evidence of a *modus operandi* to show a common scheme, plan, or identity is admissible under Rule 404(b). *See, e.g.*, *United States v. Carlton*, 534 F.3d 97, 101-02 (2d Cir. 2008) (holding that district court did not err in admitting evidence of defendant's three prior convictions for bank robbery to show identity because the prior robberies were similar in location, takeover style, and use of a getaway car); *United States v. Sliker*, 751 F.2d 477, 486-87 (2d Cir. 1984) ("The similarity sufficient to admit evidence of past acts to establish a recurring *modus operandi* need not be complete; it is enough that the characteristics relied upon are sufficiently idiosyncratic to permit a fair inference of a pattern's existence."); *United States v. Reed,* 639 F.2d 896, 906 (2d Cir. 1981) ("[E]vidence of the [other] transactions was . . . admissible to show a common scheme or plan.").

Ultimately, trial courts have broad latitude in determining whether to admit evidence pursuant to Rule 404(b), and their rulings will be reviewed for abuse of discretion. *See United States v. Guang*, 511 F.3d 110, 121 (2d Cir. 2007).

### 3.    Rule 403

Finally, regardless of whether the evidence is admitted as direct evidence or as other acts evidence under Rule 404(b), the evidence is, like all other evidence, admissible under Federal Rule of Evidence 403 only if its probative value is not substantially outweighed by the danger of unfair prejudice. Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

evidence." Fed. R. Evid. 403.  The prejudice that Rule 403 refers to is *unfair* prejudice because, by definition, "any proof highly probative of guilt is prejudicial to the interests of [the] defendant," whereas evidence is inadmissible only if it is prejudicial for some reason beyond just proving "the fact or issue that justified its admission into evidence."  *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (citation omitted); *see* Rule 403 advisory committee note ("'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis commonly, though not necessarily, an emotional one."); *Costantino v. Herzog*, 203 F.3d 164, 174 (2d Cir. 2000) ("[B]ecause virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be unfair.").  The Second Circuit has found admission appropriate where the offered evidence "'did not involve conduct any more sensational or disturbing than the crimes with which [the defendants were] charged.'" *Pitre,* 960 F.2d at 1120 (quoting *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990)); *see also United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999) (evidence of uncharged act properly admitted where it "did not involve conduct more inflammatory than the charged crime"); *United States v. Thompson*, 359 F.3d 470, 479 (7th Cir. 2004) ("Evidence is unfairly prejudicial if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case." (citation and internal quotation marks omitted)).  The fact that evidence may be damning does not render it inadmissible. *See United States v. Cirillo*, 468 F.2d 1233, 1240 (2d Cir. 1972).

## C.       Discussion

Evidence of the defendant's uncharged misrepresentations regarding his personal and corporate finances, including his repeated use of fake and fraudulent Bank-1 account records in attempts to obtain loans or lines of credit, is admissible for several reasons.

First, such evidence is direct proof of the conduct charged in Count Five. Each of the attempted frauds described above (*i.e.*, the February 2019 Mortgage Application, the October 2021 HELOC Application, the November 2021 Commercial Loan Application, and the May 2022 Proof of Funds Email), as well as the June 2018 Business Loan Application, is part of the defendant's same scheme to defraud lenders and financial institutions using the same or similar misrepresentations about his and AMC LLC's finances. The defendant's repeated lies are part of a "series of transactions"—or, in other words, the defendant's ongoing course of conduct—in which he repeatedly used fake and doctored Bank-1 statements and balances in attempts to obtain money (*i.e.*, loans and lines of credit). *See Gonzalez*, 110 F.3d at 942. His repeated submission of a common set of fake and doctored Bank-1 statements across at least four applications about his and/or AMC LLC's finances, and his repeated alteration of Bank-1 records to obtain money are thus "inextricably intertwined" and "necessary to complete the story" of the offense charged in Count Five. *See id.*

In the alternative, such evidence is plainly admissible as under Rule 404(b) as proof of the defendant's motive, intent, preparation, plan knowledge, identity, absence of mistake, and lack of accident—as to the charges contained in Count Five, as well as Counts One, Two, and Four, all of which pertain to misrepresentations the defendant made. The defendant's repeated use and revision of the same set of fraudulent bank records—including records with account balances that

he recycled across multiple fraudulent submissions—proves that when the defendant submitted those same records as part of the June 2018 Business Loan Application charged in Count Five, he did so knowingly and with intent to defraud and not because of some accident or mistake. In other words, the evidence of the defendant's multiple uses of the same fake documents when seeking loans demonstrates "a pattern of misrepresentations, closely related in time and subject matter," and "it is reasonable to believe that they were not made innocently." *Klein*, 340 F.2d at 549. This "[e]vidence of [the] defendant's participation in other, similar frauds" is precisely the type of evidence that "is routinely admissible pursuant to Rule 404(b) to show knowledge and intent." *Watts*, 2011 WL 167627, at *6.

Moreover, that the June 2018 Business Loan Application used the same or similar altered records also tends to identify the defendant as the source of those misrepresentations to Bank-1, and tends to prove his plan, preparation, and opportunity to defraud Bank-1 through the use of doctored records. The defendant employed the same pattern or *modus operandi* in submitting fraudulent documents and representations to lenders and financial institutions by doctoring bank statements purportedly from the same bank (*i.e.*, Bank-1). His repeated use of the same or similar fraudulent bank records to attempt frauds similar to that charged in Count Five proves his identity as the source of the fraudulent documents at issue in that count. Such proof of the means and methods of a scheme are, on their face, evidence of the existence of the scheme and the knowledge and intent of its perpetrators. Such proof is particularly probative of identity here, where the fraudulent submission charged in Count Five was made online, whereas the uncharged frauds include paper loan applications signed by the defendant or loan proceeds actually disbursed to the defendant, including in connection with a mortgage on the defendant's own home. The above

evidence also proves that the defendant planned, prepared, and had the opportunity to commit the charged crime by, among other things, creating and revising fraudulent bank documents for submission to multiple lenders over time.

Because this "other acts" evidence is relevant to the several non-propensity purposes discussed above, it is admissible under Rule 404(b). *See, e.g.*, *Thomas*, 54 F.3d at 81-82; *Meyerson*, 18 F.3d at 166-67; *see also Watts*, 2011 WL 167627, at *6 ("Evidence of a defendant's participation in other, similar fraud is routinely admissible pursuant to Rule 404(b) to show knowledge and intent."). Further, none of the foregoing evidence would be unfairly prejudicial under Rule 403. As described above, evidence of the defendant's uncharged misrepresentations is highly probative of the defendant's knowledge, intent, opportunity, motive, preparation, plan, and absence of mistake or accident relating to the instant charges. The evidence is not unduly prejudicial because it is of the same nature as the conduct charged in Count Five (not to mention the remaining fraud counts), and is no more sensational, disturbing, or inflammatory than the charges themselves, and none of it would cause the jury to render a verdict based on emotions or other improper considerations. *See Pitre,* 960 F.2d at 1120. Accordingly, the evidence and testimony discussed herein easily pass Rule 403's balancing test and should be admitted at trial.

## II. THE GOVERNMENT SHOULD BE PERMITTED TO CROSS-EXAMINE THE DEFENDANT REGARDING HIS PRIOR FRAUD-RELATED CONVICTIONS AND THEIR UNDERLYING DISHONEST CONDUCT, AMONG OTHER IMPEACHMENT TOPICS, SHOULD THE DEFENDANT ELECT TO TESTIFY

Should the defendant elect to testify, the Government should be permitted to cross-examine him regarding his prior fraud convictions, the defendant's dishonest conduct underlying these convictions, other acts that are probative of truthfulness, and/or other conduct that calls into question the defendant's explanation for the charged conduct.

## A.    Relevant Facts

On or about April 1, 2008, the defendant was convicted following a jury trial in the Supreme Court of Suffolk County, New York, in connection with his submission of fraudulent loan applications using personal identifying information that he had stolen from numerous victims. *See People v. Whitehead*, No. 539-07, Cert. of Disp. (N.Y. Sup. Ct. 2008).[4]  Specifically, the defendant was convicted of: one count of scheme to defraud in the first degree, in violation of New York Penal Law § 190.65(1); and 15 counts of identity theft in the first degree, in violation of N.Y.P.L. § 190.80(1) (the "Prior Convictions").[5]  *See id.*; *see also Whitehead v. Haggett*, No. 12 Civ. 04946 (AMD), 2017 WL 491651, at *1 (E.D.N.Y. Feb. 3, 2016) (memorandum decision and order denying habeas petition by defendant, describing his underlying conviction, investigation, and trial evidence).  The defendant's Prior Convictions arose out of a "fraudulent loan scheme." *Whitehead*, 2017 WL 491651, at *1.

> The trial established that the petitioner exploited his former girlfriend . . . who had access to personal identifying information through a computer credit check program at a . . . car dealership, where she worked.  The scheme

---

[4] The defendant has additional prior convictions that the Government is not currently seeking to admit at trial, including an October 2002 conviction upon a plea of guilty in New York County Criminal Court for criminal possession of stolen property in the fifth degree, in violation of New York Penal Law § 165.40, for which the defendant was sentenced to three years' probation, and an October 2006 conviction in New York County Supreme Court following a jury trial for criminal possession of stolen property in the third degree, in violation of New York Penal Law § 165.50, involving the defendant's criminal possession of a 2004 Range Rover evidenced in part by the presence of falsified documents in a car being driven by the defendant, for which he was sentenced to a term of imprisonment of one year.  If, however, the defendant makes any statements during his testimony that render them more probative than prejudicial thereby opening the door to their admission, such as for example by suggesting that he has always been a law-abiding citizen, then the Government intends to seek permission to raise these convictions on cross-examination as well.

[5] The defendant was also convicted of one count of attempted grand larceny in the second degree, in violation of N.Y.P.L. §§ 110, 155.40.

> involved creating fake email accounts and voicemail boxes using stolen identifying information, filling out fraudulent loan applications, and using these loans to obtain vehicles.

*Id.* As noted by the state sentencing judge, the defendant's fraudulent use of the identities of numerous victims and caused serious harm to their credit and in some cases took years to resolve. *See, e.g.*, *Whitehead*, No. 539-07, Sentencing Tr. at 87 (N.Y. Sup. Ct. June 30, 2008). For the above convictions, the defendant was sentenced to an indeterminate term of 10 to 20 years' imprisonment. *Id.* at 78. The defendant served approximately five years in custody and was released in or about 2013.

## B. Applicable Law

Under Rule 609, evidence of a testifying defendant's prior convictions may be admitted for impeachment purposes, subject to certain limitations. Fed. R. Evid. 609. As a general matter, criminal convictions punishable "by imprisonment for more than one year . . . must be admitted in a criminal case in which the witness is a defendant if the probative value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 609(a)(1)(B). Criminal convictions requiring "proof of a dishonest act or false statement," regardless of their punishment, "must be admitted." Fed. R. Evid. 609(a)(2). In other words, "[p]rior convictions involving crimes of dishonesty or false representation"—whether felonies or misdemeanors—"are automatically admissible under Rule 609(a)(2) as they bear on a witness's propensity to testify truthfully." *United States v. Ilori*, No. 21 Cr. 00746 (MKV), 2022 WL 2452258, at *7 (S.D.N.Y. July 5, 2022) (citing *United States v. Estrada*, 430 F.3d 606, 615 (2d Cir. 2005)). "In fact, the Court has no discretion to exclude convictions involving false statements because such convictions are inherently more probative than prejudicial as to the witness's capacity for truthfulness." *Id.* (citing

*United States v. Hayes*, 553 F.2d 824, 827 (2d Cir. 1997) ("[E]vidence of conviction of a certain type of crime—one involving 'dishonesty or false statement'—must be admitted, with the trial court having no discretion, regardless of the seriousness of the offense or its prejudice to the defendant.")).

When more than ten years have passed "since the [defendant's] conviction or release from confinement for it, whichever is later," evidence of the conviction is admissible only if "(1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." Fed. R. Evid. 609(b). The District Court must make an on-the-record finding based on "specific facts and circumstances" that the probative value of the evidence substantially outweighs the danger of unfair prejudice in light of: (1) the impeachment value of the conviction, *see United States v. Payton*, 159 F.3d 49, 57 (2d Cir. 1998); (2) "the centrality of the credibility issue," *see id.* at 58; (3) the length of time since the conviction, *see United States v. Garcia*, 291 F.3d 127, 138 (2d Cir. 2002); and (4) the similarity of the prior conviction to the alleged crime, *see id.* *See also Ilori*, 2022 WL 2452258, at *7.

In addition, under Rule 608, on cross-examination, "specific instances of a witness's conduct . . . may be inquired into if they are probative of the character of the truthfulness or untruthfulness of . . . the witness." Fed. R. Evid. 608.

## C.    Discussion

If the defendant testifies at trial, the Government is entitled to impeach his credibility— and should be permitted under Rule 609 to cross-examine him about, among other things, his Prior Convictions. Under Rule 609(b), the Prior Convictions should be admitted on cross-examination

of the defendant because their probative value substantially outweighs their prejudicial effect, and the Government has, through this motion, provided the defense reasonable notice of intent to use the evidence and the defendant has a fair opportunity to contest the Government's motion. Fed. R. Evid. 609(b)(1)-(2).

The Prior Convictions plainly have significant probative value. The Prior Convictions relate to the defendant's fraudulent submission of loan applications—and, here too, the defendant is presently charged in connection with submitting a fraudulent loan application in Count Five of the S1 Indictment. The similarities between the manner in which the defendant committed the crimes underlying the Prior Convictions and those underlying Count Five, as well as Counts One through Three, are highly probative of the defendant's intent and motive. The Prior Convictions and Counts One, Two, Four, and Five, each also involve the defendant's false or fraudulent representations for a common purpose: money. And each of the Prior Convictions involved dishonesty and/or false statements and is therefore *per se* probative of credibility (and would have been admitted under Rule 609(a)(2) if the defendant had served his full sentence). Fed. R. Evid. 609(a)(2).[6] *See United States v. Watts*, 934 F. Supp. 2d 451, 490 (E.D.N.Y. 2013) ("Rule 609(a)(2)

---

[6] The defendant's scheme to defraud conviction, in violation of New York Penal Law § 190.65, required the jury to find beyond a reasonable doubt that the defendant:

(a) engage[d] in a scheme constituting a systematic ongoing course of conduct with intent to defraud ten or more persons or to obtain property from ten or more persons by false or fraudulent pretenses, representations or promises, and so obtains property from one or more of such persons;  or (b) engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud more than one person or to obtain property from more than one person by false or fraudulent pretenses, representations or promises, and so obtains property with a value in excess of one thousand dollars from one or more such persons;  or (c) engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud more than one person, more than one of whom is a vulnerable elderly person . . . or to obtain property from more than one person, more than one of whom is a vulnerable

mandates admission of Dupree's prior convictions for bank fraud, conspiracy to commit bank fraud, and false statements, all offenses involving dishonesty or false statements."); *Sanders v. Ritz-Carlton Hotel Co., LLC*, No. 05 Civ. 6385 (PKL), 2008 WL 4155635, at *3 (S.D.N.Y. Sept. 9, 2008) (conviction for tax evasion based upon plaintiff's false statements to the government, constituted a conviction involving dishonesty or false statement as required by Rule 609(a)(2)).

The impeachment value of the Prior Convictions, which consist of no fewer than 16 fraud offenses, is significant, and the Government expects that the defendant's credibility will be a central issue at trial if he testifies. Although these crimes involved fraud and thus bear some similarity to the charges on trial, they involved completely different means and methods, including identity theft, the creation of fake email accounts and voicemail boxes, and the use of those identities to obtain car loans. Here, by contrast, the defendant used his own identity, did not obtain or misuse the personal identifying information of another person, and sought loans for property and lines of credit rather than vehicles. The Prior Convictions are thus sufficiently dissimilar to the conduct charged in the S1 Indictment to avoid creating a prejudicial inference of propensity.

---

elderly person . . . by false or fraudulent pretenses, representations or promises, and so obtains property from one or more such persons.

N.Y.P.L. § 190.65(1). The defendant's 15 convictions for identity theft, in violation of New York Penal Law § 190.80(1), required the jury to find beyond a reasonable doubt that the defendant:

knowingly and with intent to defraud assumes the identity of another person by presenting himself or herself as that other person, or by acting as that other person or by using personal identifying information of that other person, and thereby . . . obtains goods, money, property or services or uses credit in the name of such other person in an aggregate amount that exceeds two thousand dollars; or . . . causes financial loss to such person or to another person or persons in an aggregate amount that exceeds two thousand dollars . . . .

N.Y.P.L. § 190.80(1).

Indeed, the Government would not seek to use the Prior Convictions as proof that the defendant committed the charged offenses here; rather, the Government would use these Prior Convictions to challenge the defendant's credibility as a witness. Further, approximately 11 years have passed since the defendant was fully released following the Prior Convictions, placing them just outside of the 10-year window under Rule 609. If the defendant had served his full sentence for the Prior Convictions, their admission would be mandatory under Rule 609(a)(2), thus further highlighting their limited prejudicial effect.

The foregoing specific facts and circumstances establish that the probative value of the Prior Convictions substantially outweighs their prejudicial effect, and they should be admitted for impeachment purposes under Rule 609. *See, e.g.*, *United States v. Bumagin*, 136 F. Supp. 3d 361, 376 (E.D.N.Y. 2015) (admitting 1999 fraud conviction in 2015 trial and noting "the impeachment value of a fraud conviction [is] high," (quoting *United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981) (alteration in original)); *United States v. Payton*, 159 F.3d 49, 57-58 (2d Cir. 1998) (affirming trial court's admission of defense witness's 13-year-old false statements and larceny convictions on cross-examination).

Even if the Court declines to admit the fact of defendant's criminal convictions, the Government should still be permitted to cross-examine the defendant regarding the underlying fraudulent conduct without referencing his resulting arrest, prosecution, and conviction. *See* Fed. R. Evid. 608(b)(1) (permitting cross-examination regarding "specific instances of a witness's conduct in order to attack . . . the witness's character for truthfulness" where "they are probative of the character for truthfulness or untruthfulness of the witness"). The defendant's orchestration of a complex scheme using the identities of multiple third parties to submit false car loans bear

directly on his credibility as a witness and demonstrate his character for untruthfulness. Thus, even if the convictions themselves are not admitted—which they should be for the reasons above—the Court should still permit cross-examination regarding the underlying dishonest conduct.

Finally, depending on the nature of the defendant's testimony on direct examination, the Government reserves the right to impeach the defendant through questions regarding his credibility generally—including by inquiring into prior conduct not generally probative of truthfulness—in order to rebut claims of an innocent explanation for his conduct  Likewise, the Government reserves the right in its cross-examination of the defendant or through a rebuttal case to address areas to which the defendant may open the door and that were not otherwise admissible during the Government's case-in-chief.

## III.    THE COURT SHOULD PRECLUDE THE DEFENDANT FROM OFFERING HIS OWN PRIOR STATEMENTS

The Court should preclude the defendant from introducing any of his own statements—including his text messages, statements he made to Victim-2 and to law enforcement, and statements he has publicly posted online relating to the instant charges and any other charges—as inadmissible hearsay. As discussed below, the defendant is not permitted to offer his own prior statements for their truth, whether these statements take the form of false exculpatory statements, false denials of wrongdoing, or false justifications for his conduct. Such self-serving out-of-court statements are classic hearsay and should be precluded under Rule 802.[7]

---

[7] As noted above, the Government understands that the defendant does not plan to offer his out-of-court statements and does not oppose this motion, which the Government submits for purposes of the record.

## A.     Applicable Law

Hearsay is inadmissible without an appropriate exception.  Fed. R. Evid. 802.  Hearsay includes an out-of-court statement by any declarant that is offered for its truth.  Fed. R. Evid. 801. A defendant's self-serving out-of-court statements, including false exculpatory statements, are classic hearsay under Rule 802.  "When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982); *see also, e.g.*, *United States v. Gonzalez*, 399 F. App'x 641, 645 (2d Cir. 2010) ("[The defendant's] self-serving exculpatory statement would be inadmissible hearsay."); *United States v. Rea*, 958 F.2d 1206, 1225 (2d Cir. 1992) (similar); *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1987) (per curiam) ("[D]efense counsel wished to place [the defendant's] statement . . . before the jury without subjecting [the defendant] to cross-examination, precisely what the hearsay rule forbids."); *United States v. Torres*, 435 F. Supp. 3d 526, 538 (S.D.N.Y. 2020) ("Finally, the Court agrees with the Government that, in the event evidence of his flight is admitted, Torres may not automatically admit his alternative explanation for his flight, insofar as he wishes to bring in his out-of-court statements to others on social media or to prison officials."); *United States v. Black*, No. 13 Cr. 316 (DLI), 2014 WL 5783067, at *1 (E.D.N.Y. Nov. 5, 2014) ("[S]elf-serving and exculpatory statements are inadmissible hearsay and may not be introduced by the defendant at trial.").

A defendant thus may not offer his own statement into evidence without subjecting himself to cross-examination.  While the Government may introduce the defendant's statements as statements of an opposing party under Rule 801(d)(2)(A), the Federal Rules contain no parallel provision for the defendant to introduce his own statements.  *See Marin*, 669 F.2d at 84; *see* Fed.

R. Evid. 801(d)(2)(A) (defining as "not hearsay" a statement "offered against an opposing party" and "made by the party").  Instead, if the defendant wishes to place his own statements before the jury, he must testify so the Government may cross-examine him.  *See United States v. Yousef*, 327 F.3d 56, 153 (2d Cir. 2003) (holding that defendant "could have testified to everything asserted in his statement, [but] he could not offer the document itself for the truth of the matter asserted"), *overruled on other grounds by Montejo v. Louisiana*, 556 U.S. 778 (2009).

Notwithstanding the hearsay bar, a defendant may in limited circumstances invoke the so-called "rule of completeness" to require the introduction of additional portions of his or her own out-of-court statement when the Government offers excerpts of it.  *See* Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time.").  "Under this principle, even though a statement may be hearsay, an 'omitted portion of [the] statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion.'"  *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007) (alteration in original) (quoting *United States v. Castro*, 813 F.2d 571, 575-76 (2d Cir. 1987)).  But this doctrine "has never required the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages."  *United States v. Williams*, 930 F.3d 44, 58 (2d Cir. 2019) (internal quotation marks and alterations omitted); *see id.* at 61 ("[T]he rule of completeness does not *require* the admission of self-serving exculpatory statements in all circumstances." (emphasis in original)).  This rule is strictly applied, leading the Second Circuit to hold, for example, that a defendant could not introduce a portion of his

confession relating "to the execution of [a] robbery," where the portion introduced by the Government concerned only "plans to execute the robbery." *Johnson*, 507 F.3d at 796 (emphasis in original).

## B.    Discussion

The defendant has made many false exculpatory statements, including to Victim-1, Victim-1's son, and in public statements and postings, with respect to the offense conduct in this case, as well as to certain other criminal charges against him, prior convictions, and complaints. These self-serving prior statements are a classic form of inadmissible hearsay, and should be excluded pursuant to Rule 802. And unless they accomplish the narrow function of the rule of completeness, the Court should preclude them. Given the limited admissibility of such statements, and to avoid mid-trial delays, the Government requests that (1) to the extent the defense seeks to admit such evidence during the Government's case-in-chief through cross-examination of witnesses, the defense preview with the Government and the Court prior to each trial day any statement of the defendant it intends to admit, so that any evidentiary issues can be addressed outside of the trial day; and (2) that the defendant be required to mark any such statements that he intends to offer during his case-in-chief at the time of his Rule 26.2 disclosures.

## IV.   THE DEFENSE SHOULD BE PRECLUDED FROM ATTACKING VICTIM-2'S CREDIBILITY

The defendant attempted to defraud and extort money from Victim-2 through a series of communications, including phone calls, as charged in Counts Two and Three. As discussed above, the Government plans to offer audio and video recordings of Victim-2's conversations with the defendant, as well as certain electronic communications in connection with these charges. The statements made by the defendant to Victim-2 are critical evidence of the defendant's scheme to

defraud and extort Victim-2. As the Government has previously advised (Dkt. 53 at 6; Dkt. 58 at 5; Dkt. 108 at 2-3), it does not intend to call Victim-2 as a trial witness, nor does the Government intend to rely on any of Victim-2's statements for their truth. Instead, Victim-2's statements will be offered as context—to make the defendant's fraudulent and extortionate statements intelligible—and as background. As a result, Victim-2's credibility is irrelevant. The Government anticipates, however, that the defendant will attempt to attack Victim-2's credibility even if Victim-2 does not testify at trial. (*See, e.g.*, Dkt. 45 (defense motion seeking pretrial production of impeachment evidence relating to Victim-2); Dkt. 106 (defense motion seeking materials relating to Victim-2)). That would be impermissible. It is well-settled that the credibility of individuals who do not testify at trial is irrelevant and unfairly prejudicial under Rules 401 and 403, and the defense should be precluded from offering evidence, asking questions, and making arguments about Victim-2's credibility unless Victim-2 testifies or his statements are offered for their truth.[8]

### A. Applicable Law

An "essential safeguard" of a fair trial is the "right to place the witness in his proper setting and put the weight of his testimony and his credibility to a test." *United States v. Harvey*, 547 F.2d 720, 723 (2d Cir. 1976) (internal quotation marks and citation omitted). Accordingly, the Federal Rules of Evidence contain extensive provisions governing the impeachment of witnesses. Fed. R. Evid. 607-13. Rule 806 also authorizes attacks on the credibility of hearsay declarants, agents,

---

[8] As noted above, the Government understands that even if Victim-2 does not testify and Victim-2's statements are not offered for their truth, the defense still plans to attack Victim-2's credibility at trial, and will oppose this motion.

and co-conspirators when those individual's statements have been admitted into evidence. Fed. R. Evid. 806. This rule "effectively treats the hearsay declarant as a witness for impeachment and rehabilitation purposes." 2 McCormick on Evidence § 324.2 (8th ed.).

For individuals who are not witnesses or hearsay declarants, however, none of those rules apply. Instead, those non-witnesses' "credibility [was] irrelevant." *United States v. McGowan*, 58 F.3d 8, 15-16 (2d Cir. 1995). The Second Circuit has "clearly established . . . the principle that a statement not offered to prove the truth of the matter asserted may not be impeached under Rule 806." *Paulino*, 445 F.3d at 217; *see United States v. Dipietro*, No. 02 Cr. 1237 (SWK), 2005 WL 1430483, at *1 (S.D.N.Y. June 17, 2005) ("It has long been the case in the Second Circuit that it is proper to preclude cross-examination of an individual whose statements are not admitted for their truth."). Even if the individual is a "'central figure'" in the case, "a district court need not allow impeachment" if the individual's "out-of-court statements were not admitted for their truth." *United States v. Regan*, 103 F.3d 1072, 1083 (2d Cir. 1997) (quoting *McGowan*, 58 F.3d at 15-16); *see United States v. Perez*, No. 05 Cr. 441 (PKL), 2005 WL 2709160, at *3 (S.D.N.Y. Oct. 20, 2005) ("Because the informant's statements are not hearsay, and because the government will not call the informant as a witness at trial, it follows that defendant may not impeach the credibility of the informant.").

## B.  Discussion

Consistent with the above case law and the Rules of Evidence, the defendant should be precluded from challenging Victim-2's credibility. At trial, the Government plans to offer recorded exchanges between the defendant and Victim-2 to prove the defendant's attempts to defraud and extort money from Victim-2. In those exchanges, the defendant's statements will be

directly relevant; Victim-2's statements will be offered solely to place the defendant's words into context, or to the extent they were implicitly or explicitly adopted by the defendant. *See, e.g.*, *United States v. Arline*, 660 F. App'x 35, 41 (2d Cir. 2016) (affirming admission of informant statements as context for defendant's statements, not for their truth). Victim-2's credibility will therefore be "irrelevant." *McGowan*, 58 F.3d at 15-16. To permit the defendant to nevertheless challenge Victim-2's credibility would allow an unnecessary and confusing trial within a trial, in violation of Rule 403.

Under identical circumstances, the Second Circuit and district courts have recognized that credibility attacks are improper. In *McGowan*, the defendant sought to challenge the credibility of a Government informant, but the Second Circuit held that the defendant's claim was "without merit" because the informant "was not a witness at trial, and his out-of-court statements were not admitted for their truth." *McGowan*, 58 F.3d at 15. As a result, despite the defendant's argument that the informant "was a central figure" at trial, the Second Circuit affirmed the exclusion of impeachment evidence about him. *Id.* at 15-16; *see also Regan*, 103 F.3d at 1082 (where court informed jury that certain out-of-court statements were not offered for their truth, but instead as "background evidence," the court "correctly deemed the credibility of the [declarants] irrelevant to the issues before the jury and properly excluded evidence impeaching them"); *United States v. Romano*, No. 12 Cr. 691 (JFK), 2014 WL 69794, at *1 (E.D.N.Y. Jan. 8, 2014) (where Government informant's out-of-court statements were offered "to provide context for Defendant's responses and remarks during the recording," they were "not being offered for their truth," so "[informant's] credibility is not relevant and, unless he testifies at trial, there is no valid basis for the defense to call his credibility into question").

Here, as In *McGowan*, *Regan*, and *Romano*, Victim-2's statements will not be offered for their truth.  As a result, impeachment evidence against Victim-2 is irrelevant, will create an unnecessary and immaterial trial within a trial that will confuse the jury, and should be excluded.

## **CONCLUSION**

For the foregoing reasons, the Court should: (1) permit the Government to offer evidence of the defendant's uncharged misrepresentations regarding his finances, including his use of doctored and fraudulent bank records, as direct evidence of the crimes charged, or, in the alternative, pursuant to Federal Rule of Evidence 404(b); (2) permit the Government to cross-examine the defendant on his prior fraud-related convictions and their underlying dishonest conduct should he testify; (3) preclude the defendant from introducing his own out-of-court statements; and (4) preclude the defendant from attacking the credibility of a non-testifying victim.

Dated: New York, New York
     January 12, 2024

          Respectfully submitted,

          DAMIAN WILLIAMS
          United States Attorney for the
          Southern District of New York


By: /s_____
          Jane Kim
          Jessica Greenwood
          Derek Wikstrom
          Assistant United States Attorneys
          Tel.: 212-637-2038 / 1090 / 1085