

**Rachel F. Strom**
(212) 489-8230 tel
(212) 489-8340 fax

rachelstrom@dwt.com

February 19, 2024

**BY ECF**
Hon. Lorna G. Schofield
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:    *USA v.* **Whitehead, 1:22-cr-00692-LGS; Nonparty Lach's Motion to Quash**

Dear Judge Schofield:

  This firm represents non-party Eric Lach ("Lach"), a *New Yorker* journalist. Pursuant to the Court's February 16 Order, Dkt. 140, Lach respectfully moves to quash the trial subpoena served by the Government on February 15, 2024 ("Subpoena," attached hereto as **Exhibit A**.)

### INTRODUCTION

  In violation of the Department of Justice's own guidelines, the Government seeks to compel the testimony of a journalist to authenticate a generic, run-of-the mill denial made by Defendant Lamor Whitehead ("Defendant") after he knew he was the target of a government investigation. The Subpoena is highly invasive, would expose the journalist to cross-examination (potentially putting other confidential sources at risk), and make the journalist effectively an arm of law enforcement. At the same time, the Government seeks to preclude Defendant from introducing his own statements, mostly because it has accused him of lying (Dkt. 110; Strom Decl. ¶ 5). In essence, the Government is trying to have it both ways: it is asking the Court to block statements from Defendant that it believes are false, while insisting that a journalist vouch for the accuracy of statements made by Defendant that the Government wants to use as if they are true. And to top it off, the Government has not demonstrated it has exhausted other sources for the information. In fact, the Government has gone as far as to reject out-of-hand the journalist's offer to provide an affidavit confirming the accuracy of the Article. This type of cherry-picking is woefully insufficient to overcome Lach's journalist privilege and calls into question the relevance of the very statement the Government seeks to introduce. The Subpoena should be quashed.

  Specifically, the Government cannot overcome Lach's journalist privilege. This Circuit recognizes a qualified privilege for newsgathering information. It is designed to safeguard a robust, independent press, and to protect reporters from being emmeshed in the proceedings they cover. The Government seeks to invade the privilege for the flimsiest of reasons: it wants Lach to authenticate Defendant's vague statement, published in a *New Yorker* article, that Whitehead is close with the Mayor of New York but does not have a "fiduciary experience" with him. The Government claims Whitehead's denial is somehow a truthful *admission* and, thus, Whitehead

DWT.COM

Anchorage | Bellevue | Los Angeles | New York
Portland | San Francisco | Seattle | Washington, D.C.
4880-3926-3654v.5 0050033-005133
4890-3736-5158v.1 0050033-005133

Hon. Lorna G. Schofield
February 19, 2024
Page 2

lied when he told Victim-2 (seven months earlier) that he could leverage his close relationships in City Hall.

To force Lach's testimony, at the very least, the Government must overcome the privilege for non-confidential newsgathering information by establishing that Lach's testimony is likely relevant to a significant issue in the case, and that the information is not available from other sources. Authenticating the Defendant's vague statement about his relationship with the Mayor, made *after* Defendant knew the Government was investigating him over his professed relationship with the Mayor, and *after* the Government alleged Defendant was already lying about his allegedly criminal conduct, cannot meet this standard. Indeed, the Government believes Whitehead's other statements to Lach, published in the very same article, are lies, which wholly undercuts its claim that Whitehead's statement about the Mayor to Lach were truthful – let alone an admission.

But that is not the end of the Government's burden. Even if direct examination is limited, Defendant is entitled to cross-examine Lach, which will likely reveal unpublished newsgathering. Defendant could even seek to elicit information about Lach's *confidential* sources for the Article, but that questioning is prohibited unless there is a clear and specific showing that the information sought is highly material and relevant, necessary, or critical to the maintenance of the claim and unavailable from other sources. The Government has not even attempted to meet that standard. Thus, any cross into confidential sourcing is not allowed, leaving Whitehead free to claim his Confrontation Clause rights were violated. In these circumstances, where a "district court . . . believe[s] that [a defendant] could not fully exercise his Confrontation Clause rights because of [a journalist's] assertion of the privilege, it ought to. . . grant[ the journalist]'s motion to quash." *U.S. v. Treacy*, 639 F.3d 32, 45 (2d Cir. 2011). That is just the case here.

Just last week, the DOJ reinforced its policy that the Government should compel evidence from the press only in the most limited circumstances, using the "least intrusive means possible."[1] By contrast, the Government rejected Lach's offer to provide an authenticating affidavit, *i.e.*, the "least intrusive means." Forcing Lach's testimony will chill future investigative reporting; it would mean that the most basic interview with a potential defendant could result in the reporter being forced to give evidence in court. What source would talk to a journalist if they knew their comments could be used against them at trial? If the Subpoena is not quashed, Lach's ability to function as an impartial journalist will be severely hampered, particularly with respect to his ability to cover this proceeding. This motion should be granted.

## BACKGROUND[2]

Lach is a staff writer for *The New Yorker*, the nearly century-old magazine, world-renowned for its rigorous journalism and commentary. Lach Decl. ¶ 1. *The New Yorker* was the first magazine to win a Pulitzer Prize when magazines became eligible in 2016, and has won six Pulitzer Prizes in total, and over 50 National Magazine Awards for its journalism, commentary, and art. Lach covers politics and reports extensively on judicial proceedings. *Id.* ¶¶ 1- 2.

---

[1] Hanna Rabinowitz, *Justice Department issues new guidelines for when federal investigators try to access journalists' records,* CNN, (Feb. 14, 2024), available at https://www.cnn.com/2024/02/14/politics/doj-guidelines-journalists-records/index.html; 28 C.F.R. § 50.10.

[2] The facts relevant to this motion are set forth in the accompanying declarations of Eric Lach ("Lach Decl."), attached hereto as **Exhibit B**, and of Rachel F. Strom ("Strom Decl."), attached hereto as **Exhibit C**.

In June 2022, a personal warrant was served on Defendant and his phones were seized. Dkt. 92 at 3. The affidavit supporting the warrant detailed the investigation into Defendant, "including multiple recorded phone conversations with Victim-2 in which Defendant discussed leveraging his relations with New York state and local officials for monetary gain . . . ." *Id.* at 10. Defendant read the warrant and then, according to the government, immediately began lying — forming the basis for a false statements charge in the indictment. *Id.* at 6.

On January 14, 2023, *The New Yorker* published "The Mayor and the Con Man" (the "Article"). *See* Strom Decl. Ex. 1. For the Article, Lach spoke with Defendant in December 2022, regarding his purported relationship with Mayor Eric Adams. Lach. Decl. ¶ 6. Lach also spoke with a number of sources on the express condition that their identities would remain confidential. *Id.* ¶ 11. The Article includes Defendant's denial that he ever promised he could broker a meeting with Mayor Adams in exchange for a "kickback" ("Meeting Denial"), and also included the quote: "'Everybody is trying to connect me and the Mayor with some fiduciary experience,' Whitehead told me, a few weeks ago. 'We don't talk about real estate. We don't talk about stocks. We don't talk about none of that. We talk about life,'" ("Fiduciary Denial"). *Id.* ¶ 8.

Last month, the Government sought to *preclude* Defendant from introducing his own out-of-court public statements. Dkt. 110. But then on February 14, the Government notified *The New Yorker* that it would issue a trial subpoena to Lach to authenticate one of Defendant's out-of-court public statements. Strom Decl. ¶ 3. The Government explained it wants Lach to authenticate the Fiduciary Denial to establish that Defendant was telling the truth to Lach that Defendant did not have a "fiduciary experience" with the Mayor, which will somehow show that Defendant was lying when he told Victim-2, months before that, that Defendant could influence City Hall. *Id.* ¶ 4. The Government admitted, however, that it did not want Lach to authenticate the Meeting Denial because the Government believes Defendant was lying to Lach in that instance. *Id.* ¶ 5. The Government further rejected an offer by Lach's counsel to provide an authenticating affidavit in lieu of testimony. *Id.* ¶ 8. Finally, the Government admitted that it had a "number of ways" to prove that Defendant was lying to Victim-2 about his connections to City Hall. *Id.* ¶ 6.

## THE SUBPOENA VIOLATES MR. LACH'S REPORTER'S PRIVILEGE

The Second Circuit recognizes a journalist's privilege that protects reporters against "the compelled disclosure of even nonconfidential materials" *Treacy*, 639 F. 3d at 42. This protection is necessary because of the burden compelled disclosure places on the press, from the "heavy costs of subpoena compliance" and otherwise "impair[ing the press'] ability to perform its duties—particularly if potential sources were deterred from speaking to the press, or insisted on remaining anonymous." *Chevron Corp. v. Berlinger*, 629 F. 3d 297, 307 (2d Cir. 2011) (quotation omitted). Compliance also "risk[s] the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties." *Id.* "[T]he important social interests in the free flow of information that are protected by the reporter's qualified privilege are particularly compelling in criminal cases. Reporters are to be encouraged to investigate and expose, free from unnecessary government intrusion, evidence of criminal wrongdoing." *U.S. v. Burke*, 700 F.2d 70, 77 (2d Cir. 1983).

Thus, the Government cannot force Lach to testify in this case unless it can establish that "the materials at issue are of likely relevance to a significant issue in the case, and are not reasonably obtainable from other available sources." *Treacy*, 639 F.3d at 42. Further "even if" the

Government's proposed questioning is limited, this Court must now also consider "the nature of the cross-examination that would inevitably follow." *Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 110 (2d Cir. 2012). Forcing Lach to testify to "authenticate" Defendant's published statements exposes him to cross-examination on Lach's unpublished newsgathering material. Indeed, because Lach spoke to a number of confidential sources for the Article, that cross-examination could seek confidential information which no party is entitled to without making a "clear and specific showing that the information is (1) ***highly material*** and relevant, (2) ***necessary or critical*** to the maintenance of the claim, and (3) not obtainable from other available sources." *Treacy*, 639 F. 3d at 42 (emphasis added) (internal marks omitted).

The Second Circuit has made clear that the Government cannot simply claim its direct exam will be limited and ignore the potential scope of the cross. *Baker*, 669 F.3d at 110 (testimony confirming accuracy of published statement "cannot be divorced" from questions on cross). Rather, the Government must overcome that heightened privilege *now* before possibly subjecting Lach to cross that could delve into confidential sources. *See also Cannin v. Revoir*, 220 A.D. 3d 16, 21 n.2 (3d Dep't 2023) (quashing subpoena to journalist because "Confrontation Clause prohibits a restriction on [a defendant's] ability to cross-examine the witness to only published material."). The Government has not even attempted to do so here. The *Treacy* court gave this Court the path forward: if Defendant is unable to "fully exercise his Confrontation Clause rights because of [Lach's] assertion of the [reporter's] privilege," the Court can and should quash the Subpoena. *Treacy*, 639 F. 3d at 45.[3]

**<u>Lach's Testimony Has No Likely Relevance To Any Significant Issue.</u>** Even if this Court determined it could prohibit inquiry into Lach's confidential sources (as no party has met that burden) and still force Lach to take the stand, the Government has not established that any inquiry into Lach's non-confidential newsgathering is likely relevant to a significant issue. Indeed, testimony about the Fiduciary Denial is barely (if at all) relevant for at least four separate reasons.

*First*, Defendant's Fiduciary Denial is ambiguous at best. Even if the jury were to assume that Defendant was trying to say that he has a personal relationship with the Mayor, but they do not discuss "real estate" and "stocks," that is not probative of whether Defendant believed he could leverage his close personal ties with the Mayor to "obtain favorable actions from City Hall," which is what Defendant apparently told Victim-2. Thus, even if Defendant were telling the truth about his relationship with the Mayor to Lach, it does not necessarily follow that Defendant knew he was lying about that relationship when he talked to Victim-2.

*Second*, the Government's position in this case is that Defendant is a liar – and that Defendant lied to Lach specifically (about the Meeting Denial) and lied generally after he knew he was under investigation. Strom Decl. ¶ 5. The fact that Defendant learned in June 2022 that he was the target of a criminal investigation based on his own statements about his relationship with the Mayor, Dkt. 92 at 3, makes it all the more likely that the Fiduciary Denial is simply another (potentially false) denial from a criminal defendant about the charges levelled against him. Indeed, Count 4 (False Statements) is literally based on Defendant's alleged lies after finding out he was

---

[3] Although the DOJ's internal regulations permit compulsory legal process for the purpose of obtaining information from a reporter to authenticate information that has been "published," 28 C.F.R. § 50.10(c)(1), this is not such a case since, as explained above, cross will inevitably seek Lach's unpublished information. The Subpoena in this context, therefore, violates the DOJ's own guidelines.

under investigation. Thus, the Government's own position about Whitehead's alleged propensity to lie calls into question the reliability of his "admission" to Lach and makes the requested testimony all the more irrelevant.

*Third*, even if Defendant's statement to Lach in December 2022 could be construed as an admission, it strains credulity to infer that this "admission" – again, after he knew he was being investigated – shows he was lying when he said *seven months earlier* (in April or May 2022) that he had pull with City Hall. *See* Superseding Indictment ¶ 4 (Dkt. 63).

*Fourth*, the information sought from Lach is duplicative and cumulative. *See Schoolcraft v. City of New* York, 2014 WL 1621480, at *3 (S.D.N.Y. April 22, 2014) ("relevancy requirement is not met if the information sought in the subpoena is merely duplicative"). The Government admits that it has a "number of ways" to prove that Defendant lied to Victim-2 about his connections to City Hall. Strom Decl. ¶ 6. And both parties have represented to the Court that they plan to offer into evidence a plethora of text messages between Defendant and Victim-2, and between Defendant and "EA" (presumably Eric Adams). Surely these contemporaneous communications between the relevant parties have greater probative value than statements the Defendant made to the press seven months later, in the midst of a criminal probe.

The Government is likely to rely on *Treacy,* where the Second Circuit confirmed that a reporter could be called to testify about a published statement a criminal defendant made to him. But the circumstances in *Treacy* were materially different. *First*, the *Treacy* court took pains to note that there was no confidential source information at issue there. "On the contrary, not only was [the journalist] not protecting any confidential material or source, he sought to withhold evidence that his source himself (Treacy) desired be disclosed." *Treacy*, 639 F.3d at 42. That is not the case here. Lach does have confidential sources for the Article – and those sources have asked Lach not to disclose their information.

*Second,* in *Treacy*, the defendant did not dispute that his statements were accurately reported. *Id.,* 639 F.3d at 39. By contrast, Defendant has made clear he will contest the accuracy of the statements he made to Lach. *See* Dkt. 115 at 6 (claiming Article is inaccurate); Strom Decl. ¶ 9, Ex. 1 ¶ 3-4 (Defendant's allegation that the Fiduciary Denial Statement is false). Defendant has further indicated that if statements from the Article are admitted, he will also seek to admit "certain statements for context." Dkt. 115 at 6. Thus, if Lach is forced to take the stand, Defendant's cross-examination could become "a general attack on credibility," which the Second Circuit has held to be out of bounds. *Treacy,* 639 F.3d at 44-45. And, as noted above, Defendant could seek to uncover Lach's confidential sources, but no one has made the showing allowing for that type of inquiry, which leaves Defendant free to argue his confrontation rights were violated.

Further, as detailed above, the relevance of Lach's testimony here is significantly more attenuated than in *Treacy*. There, the defendant's statements (made before any criminal investigation into his conduct) amounted to "false exculpatory statements evidencing consciousness of guilt," and statements in furtherance of a conspiracy to commit securities fraud. *Treacy*, 639 F.3d at 39, 43. Here, Defendant's statement denying a "fiduciary experience" with the Mayor is *inculpatory* insofar as it is consistent with the allegation that he overstated his relationship with the Mayor. And it's an "admission" the Government wants to include from the same Defendant the Government claims was lying about nearly everything else. Moreover, Defendant's statement was not made in furtherance of a conspiracy since the alleged crime occurred seven

months prior. *See also U.S. v. Markiewicz*, 732 F. Supp. 316, 317, 319 (N.D.N.Y. 1990) (government overcame privilege to present incriminating statements defendant made prior to alleged crime); *S.E.C. v. Seahawk Deep Ocean Tech., Inc.*, 166 F.R.D 268, 271 (D. Conn. 1996) ("defendants made false statements to reporters in order to manipulate the price of Seahawk stock"). The relevance of Lach's testimony is far less relevant than in *Treacy*, but the potential cross could be far more extensive. As the *Treacy* court predicted in a case such as this, the Court should quash the Subpoena. *Id.* 639 F. 3d at 45.

**<u>The Information Sought Is Available From Other Sources.</u>** The Government has not and cannot show that the information sought is unobtainable from other sources. For starters, Lach's testimony would clearly be unnecessary if Defendant testifies. But even if he chooses not to testify, the relevant legal inquiry is not whether the government can get the Article admitted through another witness. Rather, the question is whether the *information* sought from a reporter's newsgathering materials (i.e., Defendant's belief as to whether he could obtain favorable outcomes from City Hall) is available from another source. *See In re McCray, Richardson, Santana, Wise, and Salaam Litigation,* 928 F. Supp. 2d 748, 758 (S.D.N.Y. 2013). The Government must demonstrate that it has "ma[d]e reasonable efforts through discovery to obtain the information from alternative sources." *Schoolcraft v. City of New York*, 2014 WL 1621480, at *3 (S.D.N.Y. Apr. 22, 2014); *Breaking Media v. Jowers*, 2021 WL 1299108, at *5 (S.D.N.Y. Apr. 7, 2021); *Lebowitz v. City of New York*, 948 F. Supp. 2d 392, 395–96 (S.D.N.Y. 2013). Here, the Government admits it has a "number of ways" to prove that Defendant was lying to Victim-2 about his connections to "City Hall," Strom Decl. ¶ 6, and the exhibit list supports that representation. *See* Dkt. 145. Compelling a reporter to discuss his or her reportorial and editorial processes should be used as a last resort — not the first.[4]

* * *

For the foregoing reasons, the Government has failed to present this Court with "a concern so compelling as to override the precious rights of freedom of speech and the press" the reporter's privilege seeks to ensure. *McCray*, 928 F. Supp. 2d at 759 (quotation omitted). Lach respectfully requests that the Court issue an order quashing the Subpoena, awarding costs and attorneys' fees for making the present motion, and granting such other relief as this Court deems appropriate.

                                              Respectfully Submitted,

                                              <u>/s/ Rachel F. Strom</u>
                                              Rachel F. Strom
                                              Adam I. Rich

cc:      All counsel of record (via ECF)

---

[4] All of the foregoing reasons also support quashing the subpoena under Fed. Crim. Pro. 17(c). If the Court nonetheless determines that Lach must take the stand, this Court should allow counsel to be present to make objections to ensure that Defendant adheres "to ordinary rules regarding the scope of direct and relevance," and that any testimony is struck if it intrudes upon the privilege applicable to non-published material and/or confidential information. *Treacy*, 639 F. 3d at 44-45 (citing Fed. R. Evid. 611(b)).