# EXHIBIT B
# DECLARATION OF ERIC LACH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

UNITED STATES OF AMERICA,

          - against -

LAMOR WHITEHEAD,

               Defendant.

-------------------------------------------------------- x

                      22 Cr. 692 (LGS)

## DECLARATION OF ERIC LACH

Non-party Eric Lach declares under penalty of perjury that the following is true and correct:

1.      I am a professional journalist, and I have been since I earned a Bachelor's degree from Wesleyan University in 2008. I am currently a staff writer for *The New Yorker*, where I have worked as an editor and reporter for the last nine years. I generally cover New York City and national politics, and I have reported extensively on judicial proceedings. I have reported for *The New Yorker* regularly on the administration of Mayor Eric Adams, as well as on the civil trials against former president Donald Trump; on the allegations against former Representative George Santos; the city's migrant crisis, and other matters. Prior to working at *The New Yorker*, I was a political reporter for *Talking Points Memo*.

2.      *The New Yorker* is a weekly magazine that was founded in 1925. It is well-known for its commentaries on current events and culture. *The New Yorker* was the first magazine to win a Pulitzer Prize when magazines became eligible in 2016, and has won six Pulitzer Prizes in total, and over 50 National Magazine Awards for its journalism, commentary, and art. *The New Yorker* also maintains a website, newyorker.com, which is a daily source of news and cultural coverage, and which includes many of the same articles that appear in the magazine.

3.      In 2022, I became interested in Bishop Lamor Whitehead, the Defendant in this case, and Whitehead's relationship with New York City Mayor Eric Adams.  In particular, I began investigating allegations of improper or illegal conduct that several people had made against Whitehead, including that he bragged about his ties to the Mayor.

4.      At all times during my reporting and investigation into Whitehead, my sole purpose was journalistic: *i.e.*, to gather information for the purpose of disseminating it to the public, by publishing an article in *The New Yorker*.

5.      In or around December 2022, as part of my reporting, I had several conversations with Whitehead before his arrest for the charges at issue in this proceeding.

6.      On January 14, 2023, *The New Yorker* published my article about Whitehead (the "Article") on newyorker.com (it also appeared in the January 20, 2023 issue of the magazine). The title of the article is "The Mayor and the Con Man."  The sub-heading is: "Eric Adams's friends and allies have puzzled over his relationship with Lamor Whitehead, a fraudster Brooklyn church leader."

7.      In the Article, I reported on some of the statements that Whitehead made to Brandon Belmonte, who I understand to be "Victim-2" in the Indictment in this case. Specifically, I reported that Whitehead told Belmonte that he could broker a meeting between Belmonte and Mayor Adams.  I also reported that "Whitehead, through his lawyer, denied this and other accounts of his actions described in this article."

8.      The Article also accurately reported the following statements that Whitehead made to me:

   •      "Everybody is trying to connect me and the Mayor with some fiduciary experience," Whitehead told me, a few weeks ago. "We don't talk about real estate. We don't talk about stocks. We don't talk about none of that. We talk about life."

2

- "I want you to know, when you ask me about the Mayor, I want you to understand that there is nothing," he said. "He was a mentor. He's helped me as a man. And that's it."

9.     I intend to report on any newsworthy developments that may emerge from this trial, but my ability to do so will be substantially impaired if I am compelled to testify as a witness, since it is my understanding that criminal defendants are often barred from speaking to witnesses at their trial (and vice versa).  In addition, other sources who are not part of this trial may decline to speak to me in the future if they believe I am effectively an arm of law enforcement, or that I may at some point be called to testify about their statements to me.  Thus, I could legally be prohibited from doing an integral part of my job.

10.     The prospect of being forced to testify in court about my news reporting is, frankly, chilling.  I often speak to criminal defendants as part of my reporting, and I am confident that criminal defendants – and other sources – will be less willing to speak to me as part of my reporting if they understand that I may be called to testify against them in their trial.  That is particularly true here, where the Government seeks for me to authenticate a run-of-the mill denial that is similar to countless denials that criminal defendants make after they are aware they are under criminal investigation.  If sources refuse to speak to me, even on a confidential basis, because they have legitimate concerns that I may be forced to testify regarding what they told me, I will be unable to do my job.  This chilling effect will inevitably harm the public's ability to be informed about matters of public concern, and about criminal proceedings in particular.  Further, if I am called to testify anytime the Government wants me to authenticate a denial that was made to me, the time I would have to devote to testifying and/or complying with subpoenas would take away from the time I should be spending on my actual job.

3

11.     If I am forced to act as a witness for the Government, I am also concerned here with the potential scope of the cross-examination, which will undoubtably seek information about my unpublished newsgathering, including confidential sources.  For example, in reporting the Article, I spoke with a number of sources on the express condition that those sources would remain confidential.  The more I am forced to divulge about my reporting process, the more concern I have that sources will be less likely to talk to me as part of my job.  Thus, forcing me to testify in this case will have a detrimental impact on my job as a journalist.

Dated:  February 19, 2024

                                      Eric Lach

4