

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

February 26, 2024

**BY ECF**

The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   **United States v. Whitehead**, S1 22 Cr. 692 (LGS)

Dear Judge Schofield:

The Government respectfully submits this letter in response to the Court's order from this evening, which has not yet been docketed.

As the Government has previously noted, the testimony it seeks from Mr. Lach relates to on-the-record statements that were made to Mr. Lach by the defendant and published by *The New Yorker*. And the Second Circuit has made clear that "where the prosecution seeks to introduce nonconfidential materials," the "likely relevance" test set forth in *Gonzales v. NBC*, 194 F.3d 29 (2d Cir. 1999), applies. *United States v. Treacy*, 639 F.3d 32, 43 (2d Cir. 2011). *Treacy* also makes clear that where there is *some* information as to which the Government can satisfy the *Gonzales* test, the appropriate response to a motion to quash is *not* to quash the subpoena but instead to "restrict[] the questions the Government could ask on direct examination," in order to "protect[] the privilege, tailoring the questions to the showing of relevance and necessity made by the Government." *Id.* And if the district court concludes that information sought *by the Government* can "overcome the *Gonzales* privilege," it "will generally be the case that the defense can satisfy the *Gonzales* test on cross-examination to the extent that it seeks to challenge a reporter's credibility about specific content of his direct testimony." *Id.* at 44.

Nevertheless, to the extent the Court's question is whether the Government can instead make the showing required by *United States v. Cutler*, 6 F.3d 67, 71 (2d Cir. 1993), to obtain Mr. Lach's testimony about Whitehead's statements—though the Government disputes that Whitehead is a "confidential source," even as to statements he might have made off the record—the answer is "yes." If, counterfactually, Whitehead was a confidential source, instead of a source of published, on-the-record statements, his statements—published and not—would still be sufficiently relevant to overcome the qualified journalist's privilege.

The standard articulated in *Cutler* is that the information sought must be (1) "highly material and relevant," (2) "necessary or critical to the maintenance of the claim," and (3) "not obtainable from other available sources." *See id.* The published statements the Government seeks to elicit from Mr. Lach readily meet that standard: the defendant admitted facts that directly

contradict the representations on which the fraud claim in Count Two is based. It almost goes without saying that a defendant's own statements, directly or indirectly admitting a crime, are highly relevant. *E.g. United States v. Falls*, 543 F. App'x 54, 59 (2d Cir. 2013) (defendant's statements, as "the most direct evidence tying the guns to the drugs," were "highly relevant" in a narcotics and firearms case); *United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010) (defendant's statement implicitly admitting to the commission of a crime was "highly probative of his commission of the charged crime"); *United States v. Quinones*, 511 F.3d 289, 310 (2d Cir. 2007) (evidence of defendant's admissions to a murder "was highly probative of the charged capital crimes"). And it is frequently the case that a defendant's direct admission of a crime represents "critical" evidence. *See, e.g.*, *United States v. Taylor*, 745 F.3d 15, 27 (2d Cir. 2014) (admission of involuntary confession was not harmless error, as the defendant's confession was "a critical part of the prosecution's case"). So too here. To be sure, the Government also has other evidence, so this evidence is not strictly "necessary." But *Cutler*'s language is disjunctive: "necessary *or* critical." *Cutler*, 6 F.3d at 71 (emphasis added). It is hard to do better, in a fraud case, than an admission that directly contradicts the alleged false statements. The defendant's admission to Mr. Lach is critical evidence. Finally, as the Government has already explained, because the defendant himself possesses a Fifth Amendment right, Mr. Lach is the only source for statements the defendant made in a conversation between the two of them.

And to the extent the defendant would seek to question Mr. Lach about the defendant's *own* statements—even if they are unpublished and confidential—on cross-examination, he could readily make the showing required to do so. *Cutler* itself makes that clear. That case arose from a criminal contempt proceeding against Bruce Cutler, an attorney for John Gotti who was alleged to have made public statements about a prosecution of Gotti in violation of applicable rules. 6 F.3d at 69. The prosecutors handling the case against Cutler intended to introduce published press statements Cutler had made, and Cutler sought the disclosure of unpublished materials, such as outtakes from recorded interviews. *Id.* at 69-70. The Second Circuit held that Cutler was entitled to this material: the reporters were witnesses to evidence of criminal conduct, and his published statements were admissible. As a result, Cutler was "clearly entitled to examine the Reporters regarding the context, background, and content of those statements, *and to scrutinize their relevant unpublished notes that relate to these matters*, as well as the [unpublished] Outtakes in the possession of the TV Stations, to defend against the charge that his statements were criminally contemptuous." *Id.* at 73 (emphasis added). Thus, under *Cutler*, to the extent the defendant seeks to cross-examine about his own statements—published or not, and confidential or not—the qualified privilege must yield.

To the extent the Court's question is, instead, whether the Government (or the defense, for cross-examination) can make the *Cutler* showing as to information from confidential sources *other than the defendant*, the Government does not have enough information to answer. The Government is not seeking any information from confidential sources on direct examination, and is not aware of any basis—consistent with the hearsay and scope-of-direct rules—for the defense to inquire about information from confidential sources, other than the defendant himself, on cross-examination.[1] And, tellingly, the defense has not proffered any potential cross-examination of the

---

[1] The Government is tilting at windmills trying to guess what possible cross-examination might necessitate the revelation of confidential source information. But here is an illustrative

extremely limited direct testimony that the Government is seeking. Because the Government does not know any confidential-source information that was not published in Mr. Lach's article, the Government by definition cannot evaluate either the relevance or alternative availability of such information.

Nor does any case known to the Government require that. The Government notes that *Baker*, relied on by Mr. Lach, is not such a case: there, a party in civil litigation sought a wide-ranging deposition of a reporter, about the accuracy, writ large, of two articles that contained confidential-source reporting. The Second Circuit affirmed an order quashing the subpoena, noting the doubtful relevance of the testimony to the case, and holding that *both* direct and cross would implicate confidential source information subject to New York State's shield law. *Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 109-11 (2d Cir. 2012). *Baker*, despite recognizing that cross-examination must be considered, does not overrule *Treacy*, which is near-identical to this case factually, and which clearly permits the testimony sought by the Government—and any corresponding cross-examination—here. The Motion to Quash should be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s/
Jessica Greenwood / Jane Kim / Derek Wikstrom
Assistant United States Attorneys
Tel.: (212) 637-1090 / 2038 / 1085

---

hypothetical: suppose that a confidential source confirmed to Mr. Lach on background, while he was reporting the story about the defendant, that Whitehead made *different* statements, contradicting those quoted in the article. That confidential source information would not necessitate quashing the subpoena, because it would be inadmissible: as classic hearsay under Fed. R. Evid. 802; as outside of the scope of direct examination, which would be limited to whether the defendant made the quoted statements directly to Mr. Lach; and as utterly irrelevant to Mr. Lach's credibility.