UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
UNITED STATES OF AMERICA,                                     :
                                                              :
                -against-                                  :   22 Crim. 692 (LGS)
                                                              :
LAMOR WHITEHEAD,                                              :   **OPINION & ORDER**
                                   Defendant.   :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Non-party Eric Lach moves to quash a subpoena served by the Government to compel his testimony at trial. The Government opposes Lach's motion. For the reasons below, Lach's motion is granted.

## I. BACKGROUND

Eric Lach is a journalist for *The New Yorker*. On January 14, 2023, *The New Yorker* published an article by Lach titled, "The Mayor and the Con Man."[1] The article reports on Defendant's relationship with New York City Mayor Eric Adams and allegations of Defendant's improper or illegal conduct. As part of Lach's investigation and reporting for the article, he had several conversations with Defendant. The article contains on-the-record statements made by Defendant to Lach during those conversations. Lach also spoke with confidential sources as part of his reporting, on the express condition that those sources would remain confidential.

On February 15, 2024, the Government served a subpoena on Lach to compel him to testify at trial. The subpoena states that it is limited to "testimony necessary to authenticate on-the-record statements made by [Defendant] to [] Lach that were subsequently quoted in the article." Lach moves to quash the subpoena on the basis of the journalist's privilege.

---

[1] The article is available at https://www.newyorker.com/news/our-local-correspondents/how-eric-adams-started-mentoring-a-con-man, https://perma.cc/RM6N-YBPV.

On February 26, 2024, with the consent of Lach and the Government and without objection from Defendant, the Court held an *ex parte*, *in camera* proceeding with Lach and his counsel to determine the likelihood that his direct and/or cross-examination would elicit confidential information. Upon invitation from the Court, the Government filed a supplemental letter brief to address whether the Government can satisfy the standard that governs the disclosure of confidential information.

II. APPLICABLE LAW

The Second Circuit "has long recognized the existence of a qualified privilege for journalistic information." *Gonzales v. Nat'l Broad. Co.,* 194 F.3d 29, 32 (2d Cir. 1999).[2] When a journalist is called to testify, he may assert this qualified privilege to protect disclosure of his confidential and non-confidential reporting materials. *Id.* at 32. The showing needed to overcome an assertion of privilege is more demanding for confidential materials than for non-confidential materials. *See United States v. Treacy*, 639 F.3d 32, 42 (2d Cir. 2011). For non-confidential materials, the litigant seeking to overcome the privilege must show only that the information is "of likely relevance to a significant issue in the case, and [is] not reasonably obtainable from other available sources." *Id.* For confidential information, the litigant must make a "clear and specific showing" that the information is "[1] highly material and relevant, [2] necessary or critical to the maintenance of the claim, and [3] not obtainable from other available sources." *Gonzales*, 194 F.3d at 33.

In criminal cases, "once the prosecution has overcome the claim of [journalist's] privilege and conducted its desired direct examination, the [Sixth Amendment's] Confrontation

---

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

Clause requires that the usual cross-examination as to credibility and matters within the scope of the direct examination be allowed." *Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 111 (2d Cir. 2012) (citing *Treacy*, 639 F.3d at 44-45).[3] The Confrontation Clause guarantees criminal defendants the right to be confronted with the witnesses against them, including the right "to delve into the witness' story to test the witness' perceptions and memory" and to impeach the witness. *Treacy*, 639 F.3d at 44. If a defendant "could not fully exercise his Confrontation Clause rights because of [the] assertion of the privilege," a district court should quash the trial subpoena or strike the direct testimony. *Id.* at 45.

## III. DISCUSSION

The motion to quash is granted because Lach's assertion of privilege will prevent Defendant from fully exercising his Confrontation Clause rights.

### A. Standard

The heightened standard governing the disclosure of confidential information applies in this case. The evidence provided during the *ex parte*, *in camera* proceeding with Lach demonstrates that his cross-examination would elicit confidential source information. Federal Rule of Evidence 601(b) states that the scope of cross-examination should not go beyond the subject matter of direct examination. Without divulging any confidences, it is well known that *The New Yorker* conducts rigorous fact checks. Because the Government seeks to offer Defendant's statements to Lach for their truth, cross-examination fairly could cover any efforts

---

[3] The Government incorrectly argues that *Baker* is inapposite. While *Baker* concerns the New York Shield Law, N.Y. Civ. Rights Law § 79-h, the Second Circuit has stated that the standard for journalist's privilege is identical to the New York Shield Law. *See In re Application to Quash Subpoena to Nat. Broad. Co.*, 79 F.3d 346, 353 (2d Cir. 1996). Courts in this district apply *Baker* in cases concerning the privilege. *See, e.g.*, *Sines v. Yiannopoulos*, No. 20 Misc. 241, 2020 WL 6058279, at *5-6 (S.D.N.Y. Oct. 14, 2020).

3

by Lach to determine the veracity of the statements, his decision to include the statements in the article and his choices on how to present the statements in light of the other information he knew. These questions could implicate confidential information or confidential sources.

The Government is incorrect that the weaker standard applies because the direct examination will elicit only non-confidential materials. Even if the Government correctly predicts that confidential information will not be elicited on direct examination, the Government still must satisfy the higher standard that will apply on cross-examination. *See Baker*, 669 F.3d at 111 ("The burden of overcoming the privilege, once asserted, is on the party seeking direct testimony, but that procedure does not divorce direct and cross-examination."). Because confidential source information is within the scope of the potential cross-examination, the heightened standard controls here.

**B. Application**

The Government cannot satisfy the heightened standard necessary to compel the disclosure of confidential information. Regardless of whether the requested information is "highly material and relevant," the Government has not shown clearly and specifically that the information is "necessary or critical" or that it is "not obtainable from other available sources." *Gonzales*, 194 F.3d at 33.

The statements the Government seeks to introduce relate to Count Two of the Indictment, which charges Defendant with attempted wire fraud. The Indictment alleges that Defendant made materially false representations to Victim-2 about Defendant's purported influence with Mayor Adams to convince Victim-2 to transfer money and other property to Defendant. The allegedly false statements include the following:

- In April 2022, Defendant said to Victim-2 that if Defendant told Mayor Adams "I'm doin' real estate . . . this is what I needed" that it was "a done deal."

4

- At a meeting in May 2022, Defendant said to Victim-2 that he could get a stop-work order lifted on Victim-2's property but needed the property "shifted over to us, and I, I'll take it from there . . . . I'll deal with the Mayor's office . . . . I gotta be able to say, 'yo, yo, E [Eric Adams], I own this . . . . This is what's goin on.'"

- In text messages from May 2022, Defendant said to Victim-2 that money was needed because "[t]he Meeting has been [set] for Friday with the Mayor and we are still struggling to get things done!"

The Government seeks to introduce Defendant's statements to Lach to establish that Defendant was misrepresenting his relationship with Mayor Adams to Victim-2. Those statements from Lach's article are as follows:

- "Everybody is trying to connect me and the Mayor with some fiduciary experience. We don't talk about real estate. We don't talk about stocks. We don't talk about none of that. We talk about life."

- "I want you to know, when you ask me about the Mayor, I want you to understand that there is nothing. He was a mentor. He's helped me as a man. And that's it."

First, the Government has not shown that Defendant's statements to Lach are "necessary or critical to the maintenance of the [Government's] claim" against Defendant. *Gonzales*, 194 F.3d at 33. The Government concedes that Defendant's statements to Lach are not strictly necessary because it can rely on other circumstantial evidence to show Defendant's fraudulent intent. Nevertheless, the Government argues that the statements are critical because they are the only direct evidence of Defendant's intent. The phrase "necessary or critical" requires a showing that the claim "virtually rises or falls with the admission or exclusion of the proffered evidence." *In re Application to Quash Subpoena to Nat. Broad. Co.*, 79 F.3d 346, 351 (2d Cir. 1996); *accord Sines*, 2020 WL 6058279, at *6. "The test is not merely that the material be helpful or probative, but whether or not the defense of the action may be presented without it." *Fowler v. Vary*, No. 20 Civ. 9586, 2022 WL 3211638, at *12 (S.D.N.Y. Aug. 9, 2022).

The Government's case does not "virtually rise[] or fall[]" with the inclusion of Defendant's statements to Lach. *See In re Application to Quash*, 79 F.3d at 351. As the

5

Government recognizes, Defendant's statements to Lach are cumulative of other evidence the Government intends to present to prove fraudulent intent. *See United States v. Burke*, 700 F.2d 70, 77-78 (2d Cir. 1983) (finding materials not "necessary or critical" because they were cumulative); *cf. United States v. Cutler*, 6 F.3d 67, 73 (2d Cir. 1993) (compelling testimony because it was "probably the *only* significant proof regarding [the defendant's] assertedly criminal behavior"). In addition, although Defendant's statements are direct evidence, they were not statements against self-interest and do not have meaningful indicia of reliability. Defendant made the statements after he knew he was under investigation and made them to a reporter who was publishing an article about allegations against Defendant. It is unclear that Defendant's statements to Lach are a truthful reflection of Defendant's understanding of his relationship with the Mayor, or even are inconsistent with Defendant's statements to Victim-2.

The Government argues that *United States v. Treacy* requires Lach's testimony here. But *Treacy* considered the privilege asserted over non-confidential information. *See* 639 F.3d at 42. To the extent *Treacy* contemplated this situation -- where the privilege protecting confidential information would prevent Defendant from exercising his Confrontation Clause rights on cross-examination -- the decision states that the subpoena should be quashed. "[I]f the district court had believed that [the defendant] could not fully exercise his Confrontation Clause rights because of [the journalist's] assertion of the privilege, it ought to have granted [the journalist's] motion to quash or subsequently stricken his testimony." *Id*. at 45.

Second, the Government has not made a clear and specific showing that the information from Defendant's statements to Lach is not obtainable from other sources, i.e., that there are no alternative sources. *See Cutler*, 6 F.3d at 71; *accord Sines*, 2020 WL 6058279, at *7. One relevant fact is whether the party attempted to obtain the information from any other sources.

6

*See In re Application to Quash*, 79 F.3d at 353.  A "prediction" that pursuing those other sources would not yield evidence "does not insulate" the party from its "duty to exhaust all reasonable alternatives."  *Burke*, 700 F.2d at 77 n.8.  While Lach may be the only source who heard Defendant's statements to Lach besides Defendant himself, the Government has not attempted to identify other sources who could attest to other statements made by Defendant about his relationship with the Mayor.  Nor has the Government attempted to identify other sources who have first-hand knowledge about the relationship between Defendant and Mayor Adams -- for example, the Mayor himself, or others who are privy first-hand to their dealings.

Because the Government has not made a clear and convincing showing of two of the three necessary elements to satisfy the heightened standard, Lach's assertion of privilege cannot be overcome.  As a result, Defendant would be unable to exercise fully his Confrontation Clause right when cross-examining Lach, and the subpoena must be quashed.  *See Treacy*, 639 F.3d at 45.

IV. **CONCLUSION**

For the foregoing reasons, non-party Eric Lach's motion to quash the trial subpoena is **GRANTED**.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 147.

Dated: March 4, 2024
       New York, New York

_____
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE