

*U.S. Department of Justice*

*United States Attorney
Southern District of New York*

*The Jacob K. Javits Federal Building
26 Federal Plaza, 37th Floor
New York, New York 10278*

May 1, 2024

**BY ECF**
The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    <u>United States v. Whitehead</u>, S1 22 Cr. 692 (LGS)

Dear Judge Schofield:

      The Government respectfully writes in response to the Court's May 1, 2024 Order. (Dkt. 197). In addition to the allegations contained in the email the Court docketed, the Government has learned that defendant Lamor Whitehead has been publicizing confidential disclosure materials that are subject to the Protective Order this Court entered regarding discovery. (Dkt. 24). The defendant's dissemination of discovery materials is a flagrant violation of the Protective Order, and is punishable as contempt, 18 U.S.C. § 401(3). Based on that conduct, which violates the term of Whitehead's release prohibiting him from committing new federal crimes, the Government moves for the defendant's immediate remand under 18 U.S.C. § 3148(b), and respectfully requests that the Court accelerate the May 20, 2024 status conference in this case to the earliest date on which the Court is available.

**I.  Background**

    **A.  Procedural History**

      Defendant Lamor Whitehead was initially arrested in this case on December 19, 2022. That day, he was released after signing a personal recognizance bond in the amount of $500,000. The bond imposed various conditions of Whitehead's release—among other things, Whitehead was and is prohibited from committing any new crimes or having any contact with victims or witnesses. (*See* Dkt. 8).[1]

      On December 30, 2022, the Court entered a Protective Order governing discovery in this case. (Dkt. 24). The defendant had previously consented to the entry of the Order. (Dkt. 22). The Protective Order provides, among other things, that materials disclosed in discovery by the

---

[1] The background is recounted only briefly, given the Court's familiarity with the procedural history of this case. "Tr." refers to the transcript of the March 2024 trial in this case, and "Dkt." refers to entries on the Court's docket. Unless otherwise noted, case text quotations omit internal quotation marks, citations, alterations, and footnotes.

Government could only be used "for purposes of defending this action," and could not otherwise be publicly posted or disclosed by the defendant. (*See* Dkt. 24 at 2).

On March 7, 2023, Whitehead was charged in a five-count Superseding Indictment with two counts of wire fraud, one count of attempted wire fraud, one count of attempted extortion, and one count of making false statements to FBI agents. (Dkt. 63). A multi-week jury trial on that Superseding Indictment began on February 26, 2024.

The trial evidence established the defendant's volatility, and the frequency and ease with which he threatens others. For example, the Court saw the defendant's threats to harm Pauline and Rasheed Anderson, and to retaliate against them when they asked for Ms. Anderson's money back. And the Court saw the defendant's threats to harm Brandon Belmonte, which were the basis for the defendant's extortion conviction. At trial, the defendant also took the stand and repeatedly and brazenly lied before the Court and the jury.

On March 11, 2024, Whitehead was convicted on all five counts. (Dkt. 180). After the verdict, the Court continued the terms of the defendant's release on bail pending sentencing. (Tr. 1365-66).

B.  **The Defendant's Disclosure of Materials Subject to the Protective Order**

The defendant's response to the jury verdict has been continued defiance, which recently escalated into violations of this Court's Protective Order. To be clear, the defendant is, of course, entitled to continue to deny the charges and profess his innocence and fight his case. What he cannot do—under the terms of his release pending sentencing and under federal criminal law—is violate the Court's orders, or lob accusations at witnesses that will have the (presumably intended) effect of tampering with or retaliating against witnesses. But that is exactly what Whitehead has done. Since the verdict, Whitehead has made multiple false statements and violated a court order, while on a press tour during which he has appeared on podcasts and started his own video podcast to talk about his case.

In an episode of the "Jamal Bryant Podcast: Let's Be Clear" (the "Bryant Podcast"),[2] posted on April 18, 2024, Whitehead criticized Rasheed Anderson as a "disgruntled" former member of his ministry and claimed that Pauline Anderson's fraud allegation against him was an FBI setup: "the FBI didn't have nothing on me. And what they had to do was make it look like a scheme. So this is why they needed Pauline Anderson." (Bryant Podcast at 40:00-42:30).

Then, on April 30, 2024, Whitehead posted a video to YouTube entitled "Fight for Justice: Bishop Whitehead Exposes Alleged FBI Misconduct" (the "Video").[3] In the Video, a screenshot of which is included below, Whitehead speaks for about an hour and a half about how he is not guilty of the crimes for which he was convicted.

---

[2] Available at https://www.youtube.com/watch?v=cBHWWnmaRRA.

[3] Available at https://www.youtube.com/watch?v=b_6IYI3Pt2E.



*Screenshot of Defendant Lamor Whitehead holding up an FBI 302 stamped on the lower left-hand corner with a Protective Order designation.*

During the Video, Whitehead reads from and waves around multiple documents that were produced in discovery subject to the Protective Order in this case. For example, about 18 and a half minutes into the Video, Whitehead extensively reads from an FBI 302 documenting an interview with one of Whitehead's victims. And approximately 25 minutes into the Video, Whitehead reads from another 302 of an interview of the victim. There were other documents, including search warrants and other law enforcement documents, that Whitehead likewise waved around and directly quoted from during the video. The two example documents mentioned above were produced in discovery as both "Attorney's Possession Only" or "APO" Material and Sealed Material, bearing Bates stamps USAO_00009919 and USAO_00009914. They were reproduced as "Sealed Material" (but not APO) shortly before trial, with "3600" stamps. Under the protective order, whether the defendant was using the versions that were APO or the versions that were merely "Sealed Material," the defense, including the defendant, were prohibited from using the documents for any purpose other than to defend the case, and were not permitted to publicly disclose them on YouTube. (Dkt. 24).

And Whitehead's remarks in the Video suggest that he understands that the documents could not be permissibly disclosed. While waving around the second document referenced above, he said: "The jury could not get this at all. You guys could not get this at all. This is *exclusive paperwork*." (Video at 27:20). Whitehead also indicated that he intended to make the discovery materials from which he was reading available for purchase online: "And all of this paperwork,

we will have it on the Patreon,[4] Bishop's Patreon, where you can go on and you'll be able to see the paperwork. So what I'm showing you, the media—not the Daily News, not the New York Times, not NBC, not CBS, not World News, not CNN—nobody has this paperwork. And this paperwork is going to be the reason why this case will be reversed and overturned, right? And you guys have been destroying my life because the jury was not able to see this paperwork."[5] (*Id.* at 14:25).

## II. Argument

### A. Applicable Law

#### 1. 18 U.S.C. § 3148

A defendant's release must be revoked if, after a hearing: (1) the Court finds that there is either (a) probable cause to believe that the defendant has committed a federal, state, or local crime while on release, or (b) clear and convincing evidence that the person has violated any other condition of release; and (2) the Court finds by a preponderance of the evidence that either (a) there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, or (b) that the defendant is unlikely to abide by any condition or combination of conditions of release. 18 U.S.C. § 3148(b); *United States v. Gotti*, 794 F.2d 773, 777-78 (2d Cir. 1986). Moreover, where there is probable cause to believe that the defendant committed a new crime while on release, "a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148(b).

#### 2. Contempt

The Court has the "power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as," among other things, "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3). The elements of criminal contempt are that "(1) the court entered a reasonably specific order; (2) defendant knew of that order; (3) defendant violated that order; and (4) his violation was willful." *United States v. Cutler*, 58 F.3d 825, 834 (2d Cir. 1995).

### B. Discussion

The Court's Protective Order placed strict limitations on the use and dissemination of documents like the ones discussed above. The materials could "not be disclosed by the defendant or defense counsel…other than as set forth" in the order, and could "be used by the defense solely for purposes of defending this action." The order prohibited the "defense," a defined term that included both the defendant and his counsel, from "post[ing] any Disclosure Material on any

---

[4] Patreon is a website that allows online "content creators" to charge for subscriptions and products, and could be used to sell documents.

[5] Similar remarks appear elsewhere in the Video. (*See e.g.* Video at 17:40 ("This is his statement, and this will be posted, alright? And like I said, no other media outlet has this.")).

Internet site or network site, including any social media," and from disclosing Disclosure Material to the media. (Dt. 24 at 2). The Video Whitehead posted establishes in no uncertain terms that he violated those prohibitions.

That conduct establishes probable cause to believe that Whitehead committed contempt. The Court's Protective Order was specific, the defendant knew about it, and the Video contains clear and repeated willful violations of the Order. Unsurprisingly, courts recognize that willful dissemination of discovery materials in violation of a Protective Order constitutes contempt under Section 401(3). *See, e.g.*, *Doe v. Maywood Housing Auth.*, 71 F.3d 1294, 1297-98 (7th Cir. 1995); *United States v. Schulte*, 578 F. Supp. 3d 596, 618 (S.D.N.Y. 2021); *see also United States v. Pettway*, No. 12 Cr. 103, 2017 WL 3431402, at *1 (W.D.N.Y. Aug. 10, 2017) (denying motion to reconsider after bail was revoked based on a finding of probable cause that defendant violated Section 401(3) by violating protective order).

The record before the Court also demonstrates by at least a preponderance of the evidence that Whitehead is unlikely to abide by conditions of release and poses a danger to his victims through his public attacks on them. *See* 18 U.S.C. § 3148(b). The Bryant Podcast and the Video corroborate some of the allegations made in the concerning email the Court recently docketed, which asserted that the defendant has been "making false accusations against the prosecutors, the Anderson family [*i.e.* victims and witnesses against him], and the FBI." (Dkt. 197 at 1). That email asserts that Whitehead's public relations blitz has resulted in "distress" or "threats" to victims (*id.*), and whether that is true or not, it certainly appears that one aim of the defendant's conduct is to place witnesses at risk, or to dissuade them from continuing to participate in the Government's ongoing prosecution of him. That is improper. *See* 18 U.S.C. § 1512(d) (prohibiting harassment of a person to persuade them not to assist in a prosecution); *id.* § 1513(e) (prohibiting witness retaliation by "tak[ing] any action harmful to" a witness). That conduct, in addition to potentially constituting additional new federal crimes, shows that Whitehead is a danger to the witnesses against him.

The defendant's post-conviction conduct warrants remand. Because it constitutes new criminal conduct, it gives rise to a presumption that no conditions can adequately ensure that Whitehead "will not pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148(b)(2). Whitehead will not be able to rebut that presumption, because, coupled with his history of threatening the victims in this case as proven at trial, the defendant's recent conduct shows concretely that he presents a danger and will disregard Court-ordered conditions. Given the defendant's previous history of threats, his flagrant and repeated disregard for the law, and his willingness to casually commit additional crimes as part of his media tour, the Court should order him detained pending sentencing.

For these reasons, the Government moves for the revocation of the defendant's release pending sentencing, and respectfully requests that a hearing on that motion be held as soon as possible.

        Respectfully submitted,

        DAMIAN WILLIAMS
        United States Attorney

By: /s/
    Jessica Greenwood
    Jane Kim
    Derek Wikstrom
    Assistant United States Attorneys
    Tel.: (212) 637-1090 / 2038 / 1085