UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                   :

UNITED STATES OF AMERICA,          :

                                                   :         22 Crim. 692 (LGS)

              -against-                   :

                                                   :        **OPINION & ORDER**

LAMOR WHITEHEAD,                  :

                                     Defendant.   :

------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

After a seven-day jury trial, Defendant Lamor Whitehead was convicted of two counts of wire fraud, one count of attempted wire fraud, one count of attempted extortion and one count of making false statements to federal law enforcement officials. Defendant moves for a judgment of acquittal and for a new trial pursuant to Federal Rules of Criminal Procedure 29(c) and 33 respectively. The Government opposes Defendant's motion. For the reasons below, the motion is denied.

**I.    BACKGROUND**

Trial began on February 26, 2024. A jury of twelve jurors and three alternates was impaneled. At trial, the Government called twelve witnesses and introduced more than 350 exhibits. The Government's witnesses were (1) Bradley Thornton, senior manager of sales operations at NerdWallet (Fundera); (2) Matthew Talley, fraud operations manager for the business loans product area at PayPal; (3) Philip Schild, general counsel and chief compliance officer at Homebridge Financial Services; (4) Jeffrey Burris, fraud and claims operations consultant at Wells Fargo; (5) Pauline Anderson, the victim of the wire fraud charged in Count 1; (6) Zachary Chromiak, vice president, consumer resolution associate at Bank of America N.A.; (7) Rasheed Anderson, Pauline Anderson's son; (8) Alexander Loizias, a special agent with the Federal Bureau of Investigation ("FBI"); (9) Angel Fernandez, a livery driver; (10) Micah

Friedman, a special agent with the FBI; (11) Richard Busick, a special agent with the FBI; and (12) DeLeassa Penland, a special agent with the U.S. Attorney's Office in the Southern District of New York.  On March 7, 2024, the Government rested its case.

The defense elected to present a case and called Defendant who testified as a witness. Defendant also sought to call Brandon Belmonte, the victim of the attempted wire fraud and attempted extortion charged in Counts 2 and 3 respectively.  The Government moved to preclude Mr. Belmonte from testifying in front of the jury based on the belief that he would invoke his privilege against self-incrimination.  On March 5, 2024, Mr. Belmonte testified outside the presence of the jury.  On the basis of Mr. Belmonte's testimony -- which was an invocation of his Fifth Amendment right not to incriminate himself to all substantive questions -- Mr. Belmonte was not permitted to testify before the jury.

At the final pretrial conference, Defendant stated his intention to call six witnesses in addition to Mr. Belmonte.  The Court granted the Government's motion to exclude two of the witnesses on grounds of relevance, including Dino Tomassetti, who is discussed below, and denied without prejudice the Government's motion to exclude two others subject to Defendant's stating his actual intention to call them and providing the Government a proffer.  A fifth -- Marc Kaplan, who is discussed below -- was precluded under Federal Rule of Evidence ("FRE") 403 because his putative testimony lacked sufficient probative value to outweigh the risk of wasting time or confusing the jury and under FRE 608(b) as improper extrinsic evidence offered for impeachment.  The morning of trial, Defendant clarified that he did not intend to call the sixth witness.  On March 7, 2024, Defendant rested.

On March 11, 2024, the Government and Defendant delivered their summations, and the Government delivered a rebuttal summation.  After several hours' deliberation, the jury reached

a verdict.  Defendant was found guilty on all counts.  On March 25, 2024, Defendant filed the present motion.

## II.   DISCUSSION

### A.  Rule 29 Motion

Defendant argues that a verdict of acquittal should be entered on all counts because the evidence at trial does not sufficiently support the jury's verdict.  The motion is denied because the evidence was sufficient.

#### 1.  Legal Standard

Rule 29 allows a defendant to move for a judgment of acquittal after verdict based on the insufficiency of the evidence.  Fed. R. Crim. P. 29(c).  "A defendant challenging the sufficiency of the evidence bears a heavy burden.  [The court] must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt."  *United States v. Landesman*, 17 F.4th 298, 319 (2d Cir. 2021).[1]  This determination requires the court to view the evidence in its totality, draw all permissible inferences in favor of the Government, and does not require the Government to "negate every theory of innocence."  *Id.*  "The verdict must . . . be upheld if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.*

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

### 2. Application

### i. Count 1

The evidence was sufficient on Count 1.  Count 1 charged Defendant with wire fraud related to a purported real estate investment on behalf of Pauline Anderson when Defendant in fact intended to use the money in whole or in part for his own personal purposes.  *See* Superseding Indictment, *United States v. Whitehead*, Dkt. 63 at 4-5 (S.D.N.Y. Mar. 7, 2023). "The elements of wire fraud are: (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the wires to further the scheme."  *United States v. Jabar*, 19 F.4th 66, 76 (2d Cir. 2021).

At trial, the Government introduced evidence sufficient to show each of these elements beyond a reasonable doubt.  Ms. Anderson testified to the following: Defendant joined her on a phone call with her bank regarding a potential withdrawal of money from her retirement account to fund a down payment on a home.  He pushed her to withdraw $100,000 instead of $50,000. He later referred her to two potential lenders, neither of whom agreed to offer her a mortgage loan.  Defendant then promised her that, if she gave him the money, he would use it to buy a house for her.  Ms. Anderson gave Defendant $90,000 based on this promise and never received a house or $85,000 of the money she gave Defendant.  The Government introduced evidence to support Ms. Anderson's testimony, including her son's testimony, financial records, phone records and text messages.  The Government also introduced evidence of Defendant's bank deposits, withdrawals and credit card purchases from which a reasonable jury could conclude that Defendant had spent Ms. Anderson's money on personal items.

Defendant argues that the evidence was insufficient to show Defendant's intent to defraud because "there is evidence that Lamor Whitehead acted in good faith regarding this

investment, up until the point that Ms. Anderson threatened legal action, and after a lawsuit which pre-dated the one year end term of the agreement." This argument is unavailing. Defendant presented this interpretation of events to the jurors, and they rejected it in favor of the Government's evidence. The Court is required to defer to the jury's assessment of the credibility of witnesses and the jury's choice of competing inferences. *Landesman*, 17 F.4th at 320.

"Fraudulent intent may be inferred when the necessary result of the actor's scheme is to injure others. Intent may also be proven through circumstantial evidence . . . ." *Jabar*, 19 F.4th at 76. The Government introduced sufficient evidence of fraudulent intent -- namely, that Defendant pushed Ms. Anderson to withdraw a larger sum of money than she originally contemplated; Defendant introduced Ms. Anderson to mortgage brokers who would not provide her a loan; Defendant took no meaningful steps to spend Ms. Anderson's money on a house for her and instead, almost immediately, spent tens of thousands of dollars on unrelated personal purchases; Defendant refused to return the money when asked, instead resorting to excuses and threats; he lied about having invested the money and about a contractual bar to returning the money; and he never returned $85,000 of the $90,000 she provided him.

Defendant's attempt to rely on *United States v. Nordlicht*, 16 Crim. 640, 2023 WL 4490615 (E.D.N.Y. July 12, 2023), and *Ciminelli v. United States*, 598 U.S. 306 (2023), to show a lack of intent is misplaced; both cases concern the now-discredited right-to-control theory of wire fraud, which was not implicated here. The right-to-control theory interpreted the wire fraud statute to include schemes to deprive victims of intangible interests. In *Ciminelli*, the Supreme Court held that money or property must be the object of an actionable wire fraud scheme. *See* 598 U.S. at 312, 316. Count 1 charged Defendant with lying to obtain money and therefore does not implicate the right-to-control theory.

Defendant also argues that the evidence was insufficient to show a material misstatement because "there was no evidence presented that Lamor Whitehead personally made the alleged material misstatements."  However, the jury was entitled to credit Ms. Anderson's testimony that Defendant stated to her that "he was going to help [her] get the house" and that "he had a conversation with [her] on the phone . . . and he spoke to using the $90,000 as an investment to buy a house for [her] that [she] could live in and then return the unused portion to [her]."  The Court must "defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence." *Landesman*, 17 F.4th at 320.

Finally, Defendant argues that the Government's evidence of venue was insufficient. Unlike the elements of a charged crime, the Government is required to prove venue only by a preponderance of the evidence.  *United States v. Tzolov*, 642 F.3d 314, 318 (2d Cir. 2007); *accord United States v. Liu*, No. 22-1082, 2022 WL 14177192, at *4 (2d Cir. Oct. 25, 2022) (summary order).  For a wire fraud charge, venue is established by showing that the defendant used or caused others to use a wire to communicate with others in the Southern District of New York and did so in furtherance of the scheme.  *See United States v. Percoco*, 13 F.4th 158, 173 (2d Cir. 2021), *rev'd and remanded on other grounds by Kaloyeros v. United States*, 143 S. Ct. 2490 (2023).  Here, the Government introduced evidence that Defendant communicated via text and telephone with Rasheed Anderson when he was in this district in furtherance of the scheme to defraud Ms. Anderson.  Those electronic communications are sufficient to establish venue for the wire fraud charge.  *See, e.g.*, *Percoco*, 13 F.4th at 173-74 (finding venue sufficient for wire fraud charge based on emails to individuals located in Manhattan).

ii.    **Count 2**

The evidence was sufficient on Count 2, which charged attempted wire fraud.  *See* Superseding Indictment, Dkt. 63 at 5.  As stated above, "[t]he elements of wire fraud are: (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the wires to further the scheme."  *Jabar*, 19 F.4th at 76.  "A conviction for attempt requires proof that a defendant (a) had the intent to commit the object crime and (b) engaged in conduct amounting to a substantial step towards its commission."  *United States v. Farhane*, 634 F.3d 127, 145 (2d Cir. 2011); *accord United States v. Hossain*, 579 F. Supp. 3d 477, 480 (S.D.N.Y. 2022).

The Government's evidence was sufficient to show that Defendant committed attempted wire fraud by making materially false representations to Brandon Belmonte about Defendant's purported influence with the mayor of New York to convince Mr. Belmonte to transfer money and other property to Defendant.  The Government introduced recordings of statements by Defendant to Mr. Belmonte that the mayor was "gonna do whatever [Defendant] need[s]"; that the mayor was "gonna tell [Defendant] where the money is"; "when [Defendant] sit[s] wit' [the mayor] . . . [i]t's a done deal"; and that Defendant had "got the key to the city."  The Government introduced evidence that these statements were false -- for example, a text message from Defendant to the mayor dated February 16, 2022, approximately two months before the charged conduct began, in which Defendant complained that he had "been calling [the mayor] for over 2 months now trying to meet with [the mayor] however [the mayor was] meeting with everyone else but [Defendant]," a message to which the mayor did not respond.  The Government introduced other evidence showing that Defendant had assured Mr. Belmonte that Defendant could use his influence to get city funding grants and lift stop-work orders and that

Mr. Belmonte needed to transfer property and money to Defendant in order to reap these benefits.

Defendant argues that he did not make a material misstatement because the evidence did not show that he claimed he could get "improper favors" or "anything improper" from a government official.  This argument misses the point that the alleged fraudulent misstatements were Defendant's false assurances about his supposed influence with the mayor, including his supposed ability to obtain favorable actions from the city government, not his ability to obtain improper action.  *See* Superseding Indictment, Dkt. 63 at 3.  The jury was entitled to credit the evidence that Defendant stated he had influence with the mayor -- including to get city funding grants and lift stop-work orders -- when he in fact did not have such influence.  The Court is required to "defer to the jury's determination of the weight of the evidence" and "to the jury's choice of the competing inferences that can be drawn from the evidence."  *Landesman*, 17 F.4th at 320.

Defendant argues that "there was no fraud" because the money transfer was "a high interest hard money loan," and no evidence showed he did not intend to repay the loan.  Defendant's argument is unavailing because wire fraud criminalizes lying in an effort to obtain money or property, regardless of whether Defendant intended to keep or return the money or property.  "The requirement under [18 U.S.C.] § 1343 that the defendant devise a scheme or artifice for obtaining money or property is satisfied where a defendant fraudulently obtains the *use* of another person's money or property for a period of time, using it for his own personal profit, and depriving the owner of the ability to do so."  *United States v. Males*, 459 F.3d 154, 158-59 (2d Cir. 2006); *accord United States v. Tournant*, 22 Crim. 276, 2023 WL 8649893, at *9 (S.D.N.Y. Dec. 13, 2023).  Accordingly, "the requirement of contemplated harm or injury does

not require that [the defendant] intended to permanently deprive the victim's money or property." *See Males*, 459 F.3d at 159.  Even if a rational juror credited Defendant's argument that he eventually would have repaid the funds, the jury still could reach the same verdict because depriving Mr. Belmonte of the use of his money, even temporarily, is sufficient under the wire fraud statute.  In addition, Defendant's arguments based on *Nordlicht* are unavailing for the same reasons described regarding Count 1.

Defendant argues that "[t]he only way the Jury could have [convicted] is if the Jury took Brandon Belmonte's statements for their truth . . . ."  However, a reasonable jury could find Defendant guilty of Count 2 by crediting Defendant's own statements representing his influence with the mayor described above, without relying on the truth of Mr. Belmonte's statements, which the jury was expressly instructed not to do.  "[J]uries are presumed to follow their instructions." *Zafiro v. United States*, 506 U.S. 534, 540 (1993); *accord United States v. Pinto-Thomaz*, 18 Crim. 579, 2019 WL 1460613, at *4 (S.D.N.Y. Jan. 15, 2019).  Before the Government presented Mr. Belmonte's statements, which were all in conversation with Defendant, the Court instructed the jury:

> So, ladies and gentlemen, you're about to hear records -- recordings of conversations between [Defendant] and Brandon Belmonte, recordings of conversations between them and text messages between them are admitted in evidence.  The statements made by Belmonte on the recordings and in the text messages are not to be considered for their truth.  Instead, they're being admitted to provide context for statements made by [Defendant], for their effect as on [Defendant] as a listener to or the recipient of Belmonte's statements, or the statement [Defendant] adopted based on his response or lack of objection or response.  You should consider Belmonte's statements only for these purposes and should not consider them for the truth of the matters asserted in the statements.

In the final jury instructions, the jury again received a limiting instruction directing it not to consider Mr. Belmonte's statements for the truth of the matters asserted.  Defendant has not identified any basis to believe that the jury disregarded these instructions.  In addition, in light of

the exclusion of Mr. Belmonte's testimony, based on his consistently invoking his Fifth

Amendment rights, the parties agreed to, and the Court approved of, the Government's asking

"some leading questions of Agent Loizias to ensure that [the Government did] not elicit[] from

him for the truth, statements made by Mr. Belmonte to the FBI outside of the recordings that are

being offered."  Limiting the evidence of Mr. Belmonte's statements to those made in dialogue

with Defendant, coupled with the Court's limiting instructions, is sufficient to prevent the jury's

reliance on Mr. Belmonte's statements for the truth of the matters asserted.  *See, e.g.*, *United*

*States v. Green*, 16 Crim. 281, 2021 WL 2667129, at *7 (S.D.N.Y. June 29, 2021), *aff'd sub*

*nom. United States v. Johnson*, No. 21-1896, 2024 WL 254118 (2d Cir. Jan. 24, 2024) (rejecting

reconsideration of Rule 29 ruling where court instructed jury because "it is well-settled that

juries are presumed to follow the instructions they are given" and "there is no basis here to find

these presumptions inapplicable").

### iii.   Count 3

The evidence was sufficient to support the jury's guilty verdict on Count 3.  Count 3

charged Defendant with attempted extortion by using threats of force to attempt to obtain $5,000

from a business owned by Brandon Belmonte.  *See* Superseding Indictment, Dkt. 63 at 6.

"Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any

article or commodity in commerce, by . . . extortion or attempts or conspires so to do, or commits

or threatens physical violence to any person or property in furtherance of a plan or purpose to do

anything in violation of this section" violates federal law.  18 U.S.C. § 1951(a).  Extortion

requires "the obtaining of property from another, with his consent, induced by wrongful use of

actual or threatened force, violence or fear or under color of official right."  *Id.* § 1951(b)(2).  As

stated above, attempt "requires proof that a defendant (a) had the intent to commit the object

crime and (b) engaged in conduct amounting to a substantial step towards its commission."
*Farhane*, 634 F.3d at 145.

The Government introduced sufficient evidence to prove each of these elements beyond a reasonable doubt.  The Government introduced evidence that Defendant claimed Mr. Belmonte owed him $5,000 and made violent threats to collect the money in dispute.  Angel Fernandez testified that he saw a "heated argument" between Defendant and Mr. Belmonte during which Mr. Fernandez "thought . . . that [Defendant] was gonna jump [Mr. Belmonte] or hit him" based on Mr. Fernandez's observations that Defendant "was all over" Mr. Belmonte and "very heated."  The Government also introduced recordings of a conversation between Defendant and Mr. Belmonte about the money, during which Defendant made statements such as: "the reason why I'm tellin' you gimme, gimme the money [is] cause the principle" and "Nobody's gonna take nothin' from me.  And that's what people do.  They, oh, you a bishop.  Oh, you're supposed to be a bishop.  No n[****], I will hurt you.  Don't play with me."

Defendant argues that the evidence was insufficient to show that Defendant "took a substantial step towards attempting to obtain the $5,000 from" Mr. Belmonte "through the use or threat of force or fear" because "[n]o witness testified that there was any kind of fear, or any attempt at creating fear."  For attempted extortion, it is "not necessary to prove the victims' actual fear of retaliation, but only an attempt to instill fear."  *United States v. Salerno*, 868 F.2d 524, 531 (2d Cir. 1989).  Defendant argues that "the only witness testimony on the issue came from Lamor Whitehead, [which] was that he did not attempt to instill fear."  However, the jury reasonably could credit Defendant's recorded statements to Mr. Belmonte and Mr. Fernandez's testimony to conclude that Defendant attempted to instill fear in Mr. Belmonte to induce him to transfer $5,000.  Defendant's argument that conviction was possible only if the jury took Mr.

Belmonte's statements for their truth is therefore factually incorrect.  The argument is also legally incorrect in light of the Court's limiting instructions discussed above.

Despite Defendant's argument to the contrary, even if Defendant believed the money was owed to him, and even if the jury credited that belief, the jury could reach the same verdict because a defendant's claim to the property is immaterial to a conviction for attempted extortion. "Congress meant to punish as extortion any effort to obtain property by inherently wrongful means, such as force or threats of force or criminal prosecution, regardless of the defendant's claim of right to the property."  *United States v. Zappola*, 677 F.2d 264, 269 (2d Cir. 1982); *see United States v. Ray*, 583 F. Supp. 3d 518, 538 (S.D.N.Y. 2022) ("[W]hether or not [defendant] believed that the alleged victims actually poisoned him or injured his property and that they therefore owed him something to compensate for that harm is irrelevant to the ultimate question of if he committed extortion.").

### iv.   Count 4

The evidence was sufficient on Count 4.  Count 4 charged Defendant with falsely stating to federal officers during the execution of a search warrant for Defendant's cell phone(s) that he owned only the cell phone on his person when he knew that he owned and used at least one other cell phone.  *See* Superseding Indictment, Dkt. 63 at 7.  To prove a false statement in violation of 18 U.S.C. § 1001, the Government must show that a defendant knowingly and willfully made a materially false, fictitious or fraudulent statement in relation to a matter within the jurisdiction of a department or agency of the United States with knowledge that the statement was false, fictitious or fraudulent.  *See United States v. Litvak*, 808 F.3d 160, 170 (2d Cir. 2015); *accord United States v. Reyes-Batista*, 844 F. App'x 404, 410 (2d Cir. 2021) (summary order).

The Government's evidence was sufficient to show each of these elements beyond a reasonable doubt.  Special Agent Loizias testified that the FBI executed a search warrant at Defendant's house for cell phones that belonged to Defendant.  Special Agent Loizias testified, "I recalled that Special Agent Ford asked [Defendant] if he had a cellphone that he could get in touch with him"; Defendant "advised that he did not"; "Special Agent Ford ask[ed] him [on] more than several occasions if [Defendant] had a phone that he could get ahold of him, and [Defendant] advised that he did not, and that he was using his daughter's phone within the residence" to make calls.  Special Agent Loizias testified, "[i]f we knew that he had another phone, then we would make an attempt to seize those phones as well."

Special Agent Friedman also testified about the search warrant execution: "ultimately Agent Ford asked [Defendant] if he had another phone, and [Defendant] said no.  Agent Ford asked whose phone he was using when he went inside, and he said he was using his daughter's phone."  Special Agent Friedman testified that Special Agent Ford asked Defendant if he had any other cell phones "approximately three times," using "different wording" each time.  The Government introduced evidence that Defendant had an account for a second cell phone, which was used the morning of the search.  Cell site location evidence showed that this second cell phone was in the vicinity of Defendant's house during the search.

Defendant's argument that he did not make a false statement because he did have a second phone, but not one that the FBI agents "could call him on" is unavailing.  As stated in the June 9, 2023, Opinion denying Defendant's motion to suppress, the determination of whether to credit that argument was an issue for the jury.  *See United States v. Whitehead*, 22 Crim. 692, 2023 WL 3934667, at *3 (S.D.N.Y. June 9, 2023).  At trial, Defendant repeatedly made this argument, including during his counsel's opening statement and summation, the direct

examination of Defendant and cross-examinations of Special Agents Friedman and Loizias. The jury reasonably could decline to accept Defendant's argument and instead credit the testimonies of Special Agents Friedman and Loizias. *See, e.g.*, *United States v. Khamrokulov*, No. 22-3153, 2024 WL 2207056, at *3 (2d Cir. May 16, 2024) (summary order) (rejecting Rule 29 and 33 challenge because "defense counsel raised these arguments for the jury's consideration" and the court "lack[s] a valid basis on which to intrude on the jury's judgment where, as here, the evidence was neither nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt."). In addition, and contrary to his argument, Defendant fails to show how any questions related to Special Agent Thomas Ford's credibility could justify a judgment of acquittal when Special Agent Ford did not testify.

Finally, Defendant asserts that the Government failed to prove venue for Count 4. The evidence at trial satisfies the venue requirement. As noted above, the Government must prove venue only by a preponderance of the evidence. *See Liu*, 2022 WL 14177192, at *4. Where a false statement is made in one jurisdiction and relied upon in another, "the materiality requirement proves dispositive with respect to venue." *United States v. Coplan*, 703 F.3d 46, 79 (2d Cir. 2012). "[A] statement is material if it has a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed, or if it is capable of distracting government investigators' attention away from a critical matter." *United States v. Adekanbi*, 675 F.3d 178, 182 (2d Cir. 2012). The Government introduced evidence that Manhattan-based agents and prosecutors had to obtain a second search warrant to seize the phone that was not recovered in the first search due to Defendant's statement. That evidence sufficiently shows that venue is proper; Defendant's false statement influenced decisions of Government investigators in the Southern District of New York. *See, e.g.*, *United*

14

*States v. Wilson*, 512 F. App'x 75, 78 (2d Cir. 2013) (summary order) (venue proper where defendant's false statements in New Jersey concealing her identity and directing agents 150 miles away to arrest her "were capable of distracting government investigators' attention away from a critical matter in the Southern District of New York, where they undertook to decide what steps to take to execute the arrest warrant.").

### v.    Count 5

The evidence was sufficient on Count 5.  Count 5 charged Defendant with wire fraud by making material false representations about the finances of his business entity, Anointing Management Services LLC ("Anointing"), in efforts to obtain a $250,000 business loan and electronically transmitting those misrepresentations through interstate wires as part of a loan application.  *See* Superseding Indictment, Dkt. 63 at 8.  As described above, "[t]he elements of wire fraud are: (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the wires to further the scheme."  *Jabar*, 19 F.4th at 76.

At trial, the Government introduced sufficient evidence to satisfy each of these elements. The Government introduced evidence that Defendant submitted a fraudulent business loan application on behalf of Anointing to a loan broker, Fundera, which then sent Defendant's loan application to a lender, PayPal.  The evidence included (1) Defendant's loan application, which stated that Anointing earned $6,000,000 in annual revenue and had an average bank balance of $1,000,000, and which included four Wells Fargo bank statements stating that the company account contained multiple millions of dollars; (2) bank statements from Wells Fargo showing that the bank account had not yet been opened for two of the four months represented by the statements submitted with the loan application, and that the underlying bank account contained

less than $10 during the other two months; and (3) the testimony of a Wells Fargo fraud and claims operations consultant, stating that the four statements were fraudulent.

Defendant argues that the evidence was insufficient to prove identity, i.e., that he was the perpetrator of the fraud.  However, the Government introduced sufficient evidence for the jury to conclude that Defendant submitted the fraudulent loan application.  "Identity can be inferred through circumstantial evidence." *United States v. Kwong*, 14 F.3d 189, 193 (2d Cir.1994); *accord United States v. Chambers*, 113 F. Supp. 3d 729, 739 (S.D.N.Y. 2015).  The Government introduced testimony and records showing that (1) the application contained extensive personal information about Defendant, such as his social security number, his personal emails and phone numbers and identification numbers for his company; (2) a call lasting at least two minutes occurred between Fundera and Defendant's personal cell phone during the month the alleged wire fraud took place; (3) fraudulent Wells Fargo statements like those used to defraud Fundera and PayPal were found in Defendant's emails and on Defendant's electronic devices; and (4) the Fundera application followed a common pattern of Defendant's submitting false documents to other lenders, including for loans he testified that he received and for his mortgage application for his home, which he signed in front of a notary at closing.

Defendant argues that the evidence of similar acts was improperly admitted as propensity evidence.  However, the evidence was properly admitted under FRE 404(b) to show identity. Under FRE 404(b), "[e]vidence of any other crime, wrong or act . . . may be admissible for another purpose, such as proving . . . identity . . . ."  Any risk of prejudice can be cured through "an appropriate limiting instruction" to the jury.  *United States v. Blake*, 195 F. Supp. 3d 605, 612 (S.D.N.Y. 2016).  The jury properly received a limiting instruction following the introduction of the similar loan applications and again as part of the final jury charge.

Defendant also argues that the Government cannot show intent to defraud because the borrower declined pre-qualification for loans from other lenders.  That Defendant declined other loan pre-qualification does not render insufficient the evidence introduced by the Government.

**B.  Rule 33 Motion**

In his Rule 33 motion, Defendant argues that a new trial is justified based on (1) the lack of sufficient evidence at trial, (2) the lack of evidence of chain of custody of recordings made by Brandon Belmonte, (3) the denial of the ability to call Brandon Belmonte as a witness, (4) the denial of the ability to call Marc Kaplan as a witness, (5) the denial of the ability to call Dino Tomassetti as a witness, (6) the denial of the motion for a mistrial and (7) the denial of the opportunity to re-argue the motion to suppress, also called a "motion to controvert."  The Rule 33 motion is denied because none of the proffered reasons justifies a new trial.

**1.  Legal Standard**

Rule 33 allows a defendant to move to vacate the judgment and grant a new trial if the interest of justice so requires.  Fed. R. Crim. P. 33(a).  A Rule 33 motion should be granted "only in the most extraordinary circumstances."  *Landesman*, 17 F.4th at 330.  District courts must ensure that "competent, satisfactory and sufficient evidence in the record supports the jury verdict" and may "grant a new trial if the evidence does not support the verdict."  *Id.*  However, a district court "must take care not to usurp the role of the jury" and "should generally defer to the jury's resolution of conflicting evidence and assessment of witness credibility" even if the court "feels some other result would be more reasonable."  *Id.* at 330-31.  "[A]bsent a situation in which, for example, the evidence was patently incredible or defied physical realities, where an evidentiary or instructional error compromised the reliability of the verdict, or where the

government's case depends upon strained inferences drawn from uncorroborated testimony, a district court must defer to the jury's resolution of conflicting evidence." *Id.* at 331.

### 2. Application

#### i. Insufficient Evidence

Defendant argues that the evidence is insufficient under Rule 33. Defendant's argument is unavailing. A court "may not grant a Rule 33 motion based on the weight of the evidence alone unless the evidence preponderates heavily against the verdict to such an extent that it would be manifest injustice to let the verdict stand." *United States v. Archer*, 977 F.3d 181, 188 (2d Cir. 2020). For the reasons discussed above, the evidence is sufficient on each count.

#### ii. Chain of Custody

Defendant argues that a new trial should be granted based on alleged chain-of-custody issues regarding the recordings of calls between Mr. Belmonte and Defendant. Defendant's argument fails to justify a new trial because the recordings' authenticity was properly established.

FRE 901(b) states that the requirement to authenticate or identify an item of evidence is satisfied by "[a]n opinion identifying a person's voice -- whether heard firsthand or through mechanical or electronic transmission or recording -- based on hearing the voice at any time under circumstances that connect it with the alleged speaker." The Second Circuit has "adopted a general standard, namely, that the [proponent] produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of" recorded evidence. *United States v. Ruggiero*, 928 F 2d 1289, 1303 (2d Cir. 1991). Special Agent Loizias testified that he was "completely confident" the voices on the recordings are Mr. Belmonte and Defendant and that the images in the videos are Mr. Belmonte and Defendant, based on his personal experiences

with both parties in relation to this case.  Special Agent Loizias also testified about text messages exchanged by Defendant and Mr. Belmonte near in time to the recordings that support the conclusion that the recordings are authentic.  The recordings were admitted as authentic under FRE 901(b) on that basis.  Defendant is incorrect that only Mr. Belmonte or Special Agent Ford could authenticate the recordings.  Once the recordings were admitted, the jury had the ability to assess for itself whether it was Defendant who appeared and spoke on the videos, as he testified live and at length on the defense case and sat in the courtroom throughout the trial.

Defendant also incorrectly argues that the possibility of tampering due to the alleged "serious chain of custody issue" rendered the recordings inadmissible.  Any "allegations of tampering [go] to the weight of the evidence rather than to its admissibility" and therefore are left to the jury to determine.  *United States v. Sovie*, 122 F.3d 122, 127 (2d Cir. 1997); *accord United States v. Reid*, 650 F. Supp. 3d 182, 196 (S.D.N.Y. 2023); *see also United States v. Tropeano*, 252 F.3d 653, 661 (2d Cir. 2001) ("Authentication of course merely renders the tapes admissible, leaving the issue of their ultimate reliability to the jury.").  Defendant challenged the reliability of the recordings before the jury -- both during a *voir dire* of Special Agent Loizias before the recordings were admitted, and during Special Agent Loizias's cross-examination regarding his inability to confirm whether the recordings had been altered before being turned over to the FBI or were "deepfakes."  The jury reasonably could choose to accept the reliability of the recordings despite Defendant's arguments at trial.  *See, e.g.*, *Khamrokulov*, 2024 WL 2207056, at *3 (rejecting Rule 29 and 33 challenge because "defense counsel raised these arguments for the jury's consideration").

### iii.    Brandon Belmonte

Defendant argues that a new trial should be granted because Defendant was precluded from calling Brandon Belmonte as a witness.  Defendant's argument is unavailing because Mr. Belmonte testified outside the presence of the jury and, as explained below, indicated that he would provide no probative testimony on account of his Fifth Amendment right not to incriminate himself.

"[A] district court has the discretion to prevent a party from calling a witness solely to have [that witness] invoke the privilege against self-incrimination in front of the jury." *United States v. Deutsch*, 987 F.2d 878, 883 (2d Cir. 1993); *accord United States v. Cavigliano*, 659 F. App'x 65, 67 (2d Cir. 2016) (summary order).  When deciding whether to exclude the witness, a district court must weigh whether the probative value of the proffered evidence is substantially outweighed by the danger of unfair prejudice in accordance with FRE 403.  *See Deutsch*, 987 F.2d at 884.  FRE 403 states that a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  To aid in the determination under FRE 403, a district court may hear the witness's testimony outside the presence of the jury to determine whether the testimony has any probative value or consists only of the invocation of the witness's privilege against self-incrimination.  *See Deutsch*, 987 F.2d at 884.

Defendant sought to call Mr. Belmonte as a witness to give "context of a number of the statements that are made on the recordings" and because Mr. Belmonte is the victim of the conduct charged in Counts 2 and 3.  The Government moved to preclude Mr. Belmonte's testimony because Mr. Belmonte, through counsel, had stated his intention to invoke his Fifth

Amendment privilege against self-incrimination.  On March 5, 2024, Mr. Belmonte testified

outside the presence of the jury in order to determine whether the probative value of Mr.

Belmonte's testimony was substantially outweighed by its potential for unfair prejudice.

Defense counsel conducted a direct examination of Mr. Belmonte.  Mr. Belmonte invoked his

Fifth Amendment right to every question except his age, the state in which he lives and whether

he knows Defendant.  On cross-examination, the Government asked, "with respect to your

interactions with [Defendant], are there any substantive questions to which you would not invoke

your Fifth Amendment rights?"  Mr. Belmonte answered no.

On the basis of Mr. Belmonte's testimony outside the presence of the jury, Defendant

was precluded from calling Mr. Belmonte to testify in front of the jury because "Mr. Belmonte's

relevant testimony consists only of the invocation of the privilege" and "[a]ccordingly, any

probative value is substantially outweighed by the danger of unfair prejudice."  That

determination was proper.  *See, e.g.*, *Deutsch*, 987 F.2d at 884 (upholding district court's

preclusion of defense witness testimony "[a]fter determining that [the witness's] testimony

would consist only of irrelevant information and the invocation of his privilege against self-

incrimination"); *United States v. Guzman*, 332 F. App'x 665, 666-67 (2d Cir. 2009) (summary

order) (same).

Defendant nevertheless argues that "[t]he preclusion of calling Brandon Belmonte

prevented Lamor Whitehead from being able to confront his accuser, the witness against him, as

guaranteed by the Sixth Amendment confrontation clause."  Defendant's confrontation clause

rights were not violated.  A criminal defendant's Sixth Amendment right does not confer "an

unrestricted right to compel the presence of any and all witnesses he may choose.  Rather, the

defendant who complains that his right to call witnesses has been violated must at least make

some plausible showing of how their testimony would have been both material and favorable to his defense." *United States v. Scopo*, 861 F.2d 339, 345 (2d Cir. 1988); *accord United States v. Dey*, 409 F. App'x 372, 374-75 (2d Cir. 2010) (summary order).  Defendant cannot do so because Mr. Belmonte's testimony outside the presence of the jury established that his answers to relevant questions consisted only of the invocation of his privilege.  *See, e.g.*, *Dey*, 409 App'x at 374-75 ("[Defendants] cannot show that their Sixth Amendment right to compulsory process was violated" "when the district court indicated that it would quash a subpoena for [witness testimony]" because "these witnesses would invoke their Fifth Amendment privilege against self-incrimination" and therefore "defendants cannot demonstrate that they were deprived of the opportunity to present a witness who would have provided testimony that was both material and favorable to their defense.").

Defendant also renews his argument that the jury "could not have convicted unless they took Brandon Belmonte's words for the truth of the matter asserted."  This argument is unavailing for the reasons described above.

Finally, Defendant in his reply brief "asks for a new trial [to] allow Mr. Belmonte's testimony after the Court grants [him] a use immunity in exchange for his testimony . . . ."  The cases Defendant cites fail to justify a new trial.  Defendant relies on *Simmons v. United States*, 390 U.S. 377 (1968), and *United States v. Bryser*, 95 F.3d 182 (2d Cir. 1996), to argue that use immunity should be extended to Mr. Belmonte because his testimony "is central to the case against Mr. Whitehead."  *Simmons* held that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection."  390 U.S. at 394.  In *Bryser*, the Second Circuit expressly "decline[d] to extend *Simmons* to afford use immunity for

testimony concerning crimes other than those charged in the underlying criminal proceeding." 95 F.3d at 187. *Bryser* drew "a crucial distinction" between a defendant's testimony being used against him at a subsequent stage of that same proceeding and being used "to prosecute other crimes." *Id.* at 186-87. The Second Circuit explained, "*Simmons* in no way leads to the absurd result that incriminating statements may not be used as evidence because they were made otherwise in aid, or under the umbrella, of a constitutional right." *Id.* at 187. Mr. Belmonte -- a non-party -- asserted his privilege against self-incrimination for crimes other than those charged in this case. *Simmons* and *Bryser* are inapplicable here.

### iv.    Marc Kaplan

Defendant argues a new trial should be granted because Defendant was precluded from calling Marc Kaplan -- the broker for Ms. Anderson's son's purchase of his home. Defendant's argument is unavailing because Mr. Kaplan's testimony was properly precluded under FRE 403 as lacking sufficient probative value to outweigh the risk of wasting time or confusing the jury and under FRE 608(b) as improper extrinsic evidence offered for impeachment.

As explained above, FRE 403 empowers a trial court to exclude evidence if its probative value is substantially outweighed by considerations such as a danger of confusing the issues, misleading the jury, undue delay or wasting time. "While the Defendant is entitled to a defense, he is not entitled to present evidence that is irrelevant or misleading." *United States v. Cueto*, 18 Crim. 00048, 2018 WL 6727105, at *3 (E.D.N.Y. Dec. 21, 2018), *aff'd sub nom. United States v. Gonzalez Cueto*, 803 F. App'x 552 (2d Cir. 2020). Defendant represented that Mr. Kaplan would testify about "Rasheed Anderson's mortgage and Pauleen Anderson's involvement with it." However, Mr. Kaplan had told the Government in an interview that "he does not have any specific recollection about his conversations with Rasheed or Pauline Anderson in connection

with [Rasheed Anderson's] loan" and "that he does not have any recollection of any conversations with Pauline Anderson after the closing of Rasheed Anderson's loan."  Defendant made no contrary assertion and provided no further explanation of how Mr. Kaplan's testimony would be probative of the alleged misrepresentation between Defendant and Pauline Anderson. Any minimal probative value was substantially outweighed by a danger of wasting time or confusing the jury with testimony about a loan and a property not at issue in the Superseding Indictment.

To the extent Mr. Kaplan would have testified about the purported breach of the terms of Mr. Anderson's home loan, which Pauline Anderson cosigned, such testimony was properly excluded as extrinsic evidence offered for impeachment.  Under FRE 608(b), "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness."  A witness may be "impeached by extrinsic proof of a prior inconsistent statement only as to matters which are not collateral, i.e., as to those matters which are relevant to the issues in the case and could be independently proven."  *United States v. Rivera*, 273 F. App'x 55, 58 (2d Cir. 2008) (summary order); *accord Bermudez v. City of N.Y.*, 2019 WL 136633, at *18 (E.D.N.Y. Jan. 9, 2019).  The purported breach of the terms of Mr. Anderson's home loan was a collateral issue because it was immaterial to whether Defendant was guilty of the charges against him.  Therefore, extrinsic evidence offered to impeach Pauline and Rasheed Anderson on that issue was properly excluded.

Defendant also extensively cross-examined both Pauline and Rasheed Anderson regarding their credibility generally and related to Mr. Anderson's home loan specifically. "[C]ross-examination is generally the proper mechanism by which to test an adverse witness's

credibility," not "extrinsic evidence to further pursue questions posed on cross-examination." *United States v. Shoreline Motors*, 413 F. App'x 322, 329 (2d Cir. 2011) (summary order).

Defendant now argues for a new trial because Mr. Kaplan "would have provided vital context to the events described," "is a fact witness present for a number of matters which were brought out by the Government" and "would have gone beyond impeachment and credibility, as [his testimony] could have shown bias on the part of Rasheed and Pauleen Anderson, and bias is never collateral." Defendant fails to include any detail regarding how Mr. Kaplan's testimony would have shown "bias," rather than merely impeach witnesses on a collateral issue. Without more, Defendant cannot show that preclusion was improper or satisfies the high standard for a new trial under Rule 33.

### v.   Dino Tomassetti

Defendant argues a new trial should be granted because "Defendant was precluded from calling Dino Tomassetti as a witness." Defendant's argument is unavailing because Mr. Tomassetti's testimony was properly precluded.

Defendant sought to call Mr. Tomassetti to testify about the property that Count 2 alleges Defendant fraudulently attempted to convince Mr. Belmonte to transfer to him. *See* Superseding Indictment, Dkt. 63 at 5. Defendant stated that Mr. Tomassetti would testify that Mr. Tomassetti, and not Mr. Belmonte, is the actual owner of that property. Such testimony properly was excluded as not relevant or probative under FRE 401. As stated in the February 23, 2024, Order precluding Mr. Tomassetti from testifying, Mr. Belmonte's actual ownership of the properties was irrelevant to the charge and lacked any probative value, including to support a defense of factual impossibility, which was unavailable to Defendant here. *See United States v. Gagliardi*, 506 F.3d 140, 146 (2d Cir. 2007) ("[F]actual impossibility is not a defense to a charge

of attempt in substantive criminal law."); *accord United States v. Martinez*, 20 Crim. 98, 2023 WL 6292567, at *2 (E.D.N.Y. Sept. 27, 2023).  The Order permitted Defendant to provide notice that Mr. Tomassetti would testify in support of a defense of entrapment, upon which the preclusion order would be reconsidered.  Defendant never provided such notice and did not present an entrapment defense.

Defendant now argues that "Tomassetti would have provided vital context to the events described, and would have given the Jury critical context that could have materially impacted their decision as to Count Two and Count Three, especially given that Brandon Belmonte did not testify."  As with the challenge to the exclusion of Mr. Kaplan's testimony, Defendant fails to provide any detail about Mr. Tomassetti's putative testimony that would justify a new trial.

### vi.   Alleged Jury Influence

Defendant argues a new trial is warranted based on alleged third-party influence of jurors. This argument is unavailing because the Court conducted a sufficient inquiry, which revealed that no third party had communicated with any juror about this action.

"When faced with a credible allegation of juror misconduct during trial, a court has an obligation to investigate and, if necessary, correct the problem."  *United States v. Aiyer*, 33 F.4th 97, 127 (2d Cir. 2022).  "[D]ecisions as to when to question jurors and the manner of that inquiry are generally left to the trial judge's broad discretion."  *Ruggiero*, 928 F.2d at 1301.  On March 10, 2024, Defendant moved for a mistrial based on alleged jury interference and requested that the person allegedly responsible for the interference be banned from the courtroom and the courthouse.  The motion states that an individual who was a "podcaster and Youtuber" previously attended trial proceedings and posted a video on Instagram on March 7, 2024, in which she claims to have shouted at jurors that Defendant was guilty.  On March 11, 2024, the

Court conducted an inquiry to determine whether any juror heard her remark.  Specifically, the Court asked whether any juror had "heard any statements or opinions about this case outside of the courtroom at any point since the trial started," including "an individual who may have talked to you, anything on social media, anything on the news, anything anywhere."  No juror responded affirmatively.  On the basis of the inquiry, Defendant's mistrial motion was denied.  Defendant's motion to ban the podcaster was granted to bar her from the courtroom but not the courthouse.  Further action was unnecessary because the inquiry showed that no juror was improperly influenced.  *See, e.g.*, *United States v. Stewart*, 433 F.3d 273, 303 (2d Cir. 2006) ("The inquiry should end whenever it becomes apparent to the trial judge that reasonable grounds to suspect prejudicial jury impropriety do not exist.").

Defendant argues that "[t]here is no way to know if [the podcaster] had made threats or statements to a juror to ensure their silence about her tampering."  However, Defendant provides no basis to believe that the podcaster engaged in secret jury tampering, particularly where the alleged interference was posted publicly on a social media site.  In light of the jurors' negative response to the Court's inquiry, the alleged jury interference does not warrant a new trial.

### vii.    Motion to Controvert

Defendant argues that a new trial should be granted because he was denied the ability to re-argue his motion to controvert certain search warrants.  The denial of Defendant's motion fails to justify a new trial because the motion was untimely and because the motion did not make the showing necessary to justify a suppression hearing.

On March 15, 2023, and May 1, 2023, Defendant filed motions to controvert search warrants on grounds of lack of probable cause, lack of particularity and overbreadth, and also argued that he had made a showing sufficient to require a suppression hearing.  An Opinion &

Order dated June 9, 2023, denied Defendant's motions.  On February 14, 2024, Defendant

moved "for leave to file a motion to controvert and/or to reopen the motion to controvert."

Defendant's motion purported to be "based upon newly acquired evidence, specifically the

transcripts of call recordings," that showed that certain warrant affidavits falsely stated that "the

FBI recorded a FaceTime exchange" on May 5, 2022, between Mr. Belmonte and Defendant

("May 5 Recording"), when the exchange was in fact recorded by Mr. Belmonte.  The

Government responded that the statement in the affidavits was "an inadvertent error" and argued

that Defendant's motion was untimely and failed on the merits.  On February 16, 2024,

Defendant's motion was denied "on two independent grounds" -- that the motion was untimely

and that Defendant had not made a substantial preliminary showing that the inaccurate

statements were necessary to the finding of probable cause.  At the final pretrial conference,

Defendant sought to "put on the record" his request to "reopen" the motion to controvert.  The

request was construed as a motion for reconsideration of the February 16, 2024, Order itself and

was denied.

        "Although the Federal Rules of Criminal Procedure do not specifically recognize motions

for reconsideration, such motions have traditionally been allowed within the Second Circuit," in

which district courts "apply the applicable civil standard for motions for reconsideration in the

criminal context."  *United States v. Bimbow*, 21 Crim. 48, 2022 WL 715359, at *2 (S.D.N.Y.

Mar. 10, 2022).  "A party may move for reconsideration and obtain relief only when the party

identifies an intervening change of controlling law, the availability of new evidence, or the need

to correct a clear error or prevent manifest injustice."  *Cho v. Blackberry Ltd*., 991 F.3d 155, 170

(2d Cir. 2021).  "Parties may not use a motion for reconsideration to raise new arguments for the

first time when they were free to raise them during the original briefing." *Bimbow*, 2022 WL 715359, at *3.

Defendant did not satisfy the high standard for reconsideration, either when he moved to reopen his original motion or challenge the resulting denial. Neither motion was based on newly acquired evidence; Defendant long had the May 5 Recording, which was the proper basis for any motion. Defendant argues that the argument became available only once he received a transcript of the recording in the lead-up to trial, not when he received the recording itself. This statement is incorrect. It is apparent from *watching* (but not *listening* to) the May 5 Recording that Mr. Belmonte was holding the recording device himself. Thus, no information from the transcript was necessary or even useful to Defendant to make his argument. The transcript does not contain any new information absent from the recording or its metadata; the list of "participants" on the cover page merely lists those who speak on the recording, which is apparent from the recording itself, and not necessarily, as Defendant argues, the "parties present."

On the merits, Defendant failed to make the showing necessary to justify a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). A *Franks* hearing permits a criminal defendant to challenge the veracity of a warrant affidavit under certain circumstances. "The *Franks* standard is a high one . . . ." *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991); *accord United States v. Hester*, S1 19 Crim. 324, 2020 WL 3483702, at *19 (S.D.N.Y. June 26, 2020). "The fruits of the search must be excluded if the allegation of perjury or recklessness is established by a preponderance of the evidence and the affidavit's remaining content with the falsehoods set aside is insufficient to establish probable cause." *United States v. McKenzie*, 13 F.4th 223, 236 (2d Cir. 2021). "To trigger the hearing, a defendant must make a 'substantial preliminary showing' that (1) the warrant application contains a false statement, (2) the false statement was

included intentionally or recklessly, *and* (3) the false statement was necessary to the finding of probable cause." *Id.* (emphasis added). "[T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *United States v. Falso*, 544 F.3d 110, 125-26 (2d Cir. 2008); *accord Reid*, 650 F. Supp. at 190. The Government concedes that the warrant affidavits contain an incorrect statement. However, Defendant failed to satisfy either of the additional two requirements to trigger a hearing.

First, Defendant made no "substantial preliminary showing" that the affiant "intentionally or recklessly" made the false statement. *See McKenzie*, 13 F.4th at 236. Defendant provided no basis to believe that the statement that "the FBI recorded a FaceTime exchange" -- rather than that Mr. Belmonte recorded the exchange -- was intentional or reckless. The evidence suggests it was a simple mix-up, which was copied in successive affidavits. Many of the affidavits reference three types of recordings -- those made by the FBI, those made by Mr. Belmonte independently and those made by Mr. Belmonte with an FBI recording device. That the affidavits include references to other recordings made by Mr. Belmonte independently suggests that the affiant was not attempting to hide who made the May 5 Recording. In addition, it appears that the FBI did make a recording in this case that same day, May 5, 2022. Without any evidence of intention or recklessness, and in light of the evidence to the contrary, Defendant failed to justify a hearing.

Second, Defendant made no "substantial preliminary showing" that the affiant's misstatement that the FBI, and not Mr. Belmonte, made the May 5 Recording was necessary to a finding of probable cause in any of the seven challenged affidavits. *See id.* To the contrary, each affidavit provides sufficient probable cause independent of the misstatement. To determine whether misstatements are material to probable cause, the alleged misstatement "should be set

aside and the remaining portions of the affidavit should be reviewed to determine if probable cause still exists.  If after doing so, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required."  *United States v. Sandalo*, 70 F.4th 77, 85 (2d Cir. 2023).  Setting aside the statement that "the FBI recorded" the exchange, probable cause exists based on the remaining portions of the affidavits. *Cf. United States v. Messalas*, 612 F. Supp. 3d 93, 98, 103 (E.D.N.Y. 2020) (finding probable cause for wiretap in investigation "that relied heavily on recordings made by the [cooperating witness ('CW')]" where "the Affidavit primarily relies on physical evidence -- i.e., recordings of conversations between the CW and the suspected conspirators -- and not the CW's say-so").  As noted above, many of the affidavits include references to other recordings made independently by Mr. Belmonte.

Even setting aside the disputed May 5 Recording entirely, each affidavit provides sufficient facts to establish probable cause.  All but one of the affidavits relies on Defendant's own words in undisputed recordings, in addition to other evidence.  The single exception was a warrant for information related to Defendant's second phone, which relies on the May 5 Recording only because Defendant shows a second phone in his possession while on the video call.  That affidavit provides other factual support that is sufficient to establish that Defendant had a second phone -- such as a text message from Defendant's first phone to a third party identifying the target phone as his second phone number, and a saved contact in Defendant's first phone that lists the target phone as "My Phone."  Because each warrant contains a sufficient independent basis for probable cause, no hearing to challenge the veracity of the search warrant affidavits was warranted.  Defendant's request for a *Franks* hearing properly was denied.

Defendant argues that the misstatements about the provenance of the May 5 Recording are material to probable cause because references to the statements appear in the June 9, 2023, Opinion denying Defendant's initial motions to suppress.  That the Opinion quoted the warrant affidavits, including the statements at issue here, does not on its own demonstrate that the misstatements were material to probable cause.

Finally, to the extent Defendant argues that the misstatement about the provenance of the May 5 Recording in the warrant affidavits calls into question the authenticity or completeness of the recording itself, that argument is unavailing for the reasons described above in Section II.B.2.ii.

## III.     CONCLUSION

For the foregoing reasons, Defendant's motion for a judgment of acquittal and for a new trial is **DENIED**.

Dated: June 21, 2024
   New York, New York

         **LORNA G. SCHOFIELD**
        **UNITED STATES DISTRICT JUDGE**